UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| SHIRDENIA BRYANT, et al., : | Case No. C-1-02-006 |
| : | (Judge Spiegel) |
| Plaintiffs, : | |
| : | |
| -vs- : | |
| : | PLAINTIFFS' MEMORANDUM IN |
| PRESCOTT BIGELOW, IV, et al., : | OPPOSITION TO DEFENDANTS' |
| : | SUPPLEMENTAL MOTION TO |
| Defendants. : | DISMISS ALL CLAIMS OF PLAINTIFF |
| : | HARRY CURTIS |

On August 28, 2003, Defendant Prescott Bigelow, IV ("Bigelow") filed his motion to dismiss "all claims of Plaintiff Harry Curtis." (Doc. 35) Bigelow purports to rely on Fed.R.Civ.P. 12(b)(1) for his motion, as he contends this Court lacks subject matter jurisdiction over Mr. Curtis' claims.

Bigelow's motion is wholly without merit. It reflects, on its face, a fundamental misapprehension of subject matter jurisdiction. Indeed, Bigelow's motion papers fail even to mention the jurisdictional statutes specified in the Amended and Supplemental Complaint. (Doc. 14) Bigelow does not discuss any statutes at all which relate to subject matter jurisdiction. When examined, the motion does not appear to have anything to do with subject matter jurisdiction at all. Instead, Bigelow raises compulsory counterclaim and *res judicata* contentions, the latter having been interposed as an affirmative defense through ¶62 of Defendants' Answer. (Doc. 22) Beyond the motion-to-dismiss rubric, Bigelow's papers bear some earmarks of a summary judgment motion. Documents,

1

albeit unsworn and uncertified ones, are attached to Bigelow's motion, and the motion raises the merits of an affirmative defense, often the gist of summary judgment proceedings.

Section A, below, addresses Bigelow's purported basis for the motion, *i.e.*, subject matter jurisdiction. Section B, on the other hand, deals with the substance of arguments presented by Bigelow, *i.e.*, his *res judicata* and "compulsory" counterclaim contentions.

### A. Congress Has Granted Jurisdiction to Hear Civil RICO Claims to the Federal District Courts.

Article III, Section 2 of the Constitution states that the "judicial Power" of our federal courts extends to nine classes cases, including those arising under the "Laws of the United States." The Constitution also makes plain that federal courts are courts of special, not general jurisdiction. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 372 (1978). As a result, the power of a federal court to adjudicate a claim is limited to that conferred by a specific constitutional or statutory grant of jurisdiction. Apart from Constitution-vested jurisdiction, *e.g.*, admiralty cases, "[f]or federal jurisdiction to exist, unless citizenship is diverse, a plaintiff's well-pleaded complaint must raise an issue "arising under" the laws of the United States . . . ." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1252 (6th Cir. 1996).

Plaintiffs Bryant and Curtis have asserted in their pleadings that, through 18 U.S.C. §1864 and 28 U.S.C. §1331, Congress granted federal district courts jurisdiction to entertain civil RICO claims. Amended & Supplemental Complaint (Doc. 14), at ¶5.

18 U.S.C. §1964(c) provides:

2

> (c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor <u>in any appropriate United States district court</u> and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . .

(Emphasis supplied.) In addition, the Plaintiffs point to the general "federal question" jurisdictional statute, which provides:

> The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

28 U.S.C. §1331. 28 USC §1367, also invoked at ¶5 of the Amended and Supplemental Complaint, provides for this Court's supplemental jurisdiction over the pendent fraud-related claims:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

Simply stated, Bigelow's argument - that this Court lacks subject matter jurisdiction over the claims asserted by Curtis in the amended complaint - does not even have facial merit.[1] Bigelow's Rule 12(b)(1) supplemental motion to dismiss should be denied for this reason alone.

---

[1] Curtis and Bryant have made essentially the same substantive allegations in their complaint. Curiously, Bigelow raises subject matter jurisdiction as to Curtis but not as to Bryant.

3

B.  **Curtis' Claims in this Action Were Not Previously Decided Nor Could They Have Been Decided by the Hamilton County Municipal Court or Any Other State Court.**

1. **Factual and Procedural Background.**

On Friday, July 30, 1999, the Hamilton County Treasurer (represented in court by the Hamilton County Prosecutor's Office) initiated a tax foreclosure lawsuit in Hamilton County Common Pleas Court against Harry and Patricia Curtis and others. *See* Certified Docket Sheet appended under Tab A. On the following morning, Saturday, July 31, Harry Curtis discovered Defendant Christian roaming through the first floor of his home at 1966 Fairfax Avenue. Curtis Deposition, at 86 (pertinent excerpts from this deposition are appended under Tab B). He confronted Christian, who said she thought no one was living in the house; and, holding what appeared to be lawsuit papers in her hand, she told Curtis that "the property was getting ready to get foreclosed on". *Id.*, at 88. But, according to Christian, she and "someone she knew" were involved in helping people who were in such financial straits to keep their homes. *Id.*, at 88. Harry Curtis recognized Defendant Christian as a person with whom he had attended church as a child. *Id.*, at 87-88. This gave him a measure of confidence in her, and he listened as she explained her and Bigelow's work to "help" people. *Id.*, at 89.

Within a short time, Defendant Bigelow appeared at the Curtis home to look it over. *Id.*, at 99-100. Curtis emphasized to Bigelow that he was not interested in selling his home, and Bigelow assured him that the helping arrangement would protect it. *Id.* Harry Curtis was interested.

4

On Monday, August 2, Bigelow presented a signed offer-to-purchase agreement to the Curtises. The fundamentals of the deal, as explained by Bigelow and as generally referenced in that document, were as follows:

- Harry and Patricia Curtis would transfer 1966 Fairfax to Bigelow;

- Bigelow would pay the Curtises $10,000 at the August 1999 closing, pay off the overdue real estate taxes (roughly $4500), repair the porch and roof on 1966 Fairfax, and pay the costs and attorney fees for the closing; and

- Bigelow and the Curtises would enter into a land contract under which the latter would pay Bigelow $350 per month for two years, then paying the remaining balance of the agreed to $37,000 price with the proceeds of a mortgage loan that Bigelow would arrange.

*Id.*, at 34-35, 107-108, 113, 121-122. The Curtises agreed to the arrangement and signed the document. Bigelow immediately referred them to attorney John Meckstroth, a lawyer with the Hamilton County Prosecutor's Office (the same office that was bringing the foreclosure suit against the Curtises). Meckstroth undertook to represent them and prepared a "Land Installment Contract" for these new clients. Bigelow Dep. at 128 (Tab B) and Exh. 121(Tab E, attached).

The Bigelow-Curtis closing took place on August 25, 1999 at Attorney Meckstroth's private office. Curtis Dep., at 91. The Curtises trusted Meckstroth, and he took charge of presenting the various closing documents for signature. Curtis Dep., at 134. At the conclusion of the closing, Meckstroth gave Harry and Patricia Curtis unsigned copies of papers that purportedly had been executed at the closing, *i.e.*, the Land

5

Installment Contract and several other documents. Curtis Affidavit, at ¶ 3, attached under Tab C.  Also at the closing, they received a fee statement from Meckstroth and paid his $295 bill for the land contract work. Bigelow Dep. Exh. 109 (Tab D).

The land contract (Tab E, attached) called for Harry and Patricia Curtis to start making $350-per-month payments to Bigelow. Bigelow Dep. Exh. 121. Three days after the closing, they made the payment for September; and in late September they sent Bigelow the land contract payment for October. Bigelow Dep. Exh. 111-12 (Tab F).

Later in October, however, a dispute arose. Bigelow had committed to repair the roof, and, from Harry Curtis' perspective, the roof job was unfinished. Curtis Dep. at 144. His phone calls to Bigelow elicited no response, so Curtis decided to withhold the $350 land contract payments for November and December. Curtis Dep. at 147.

Bigelow responded in late 1999 by filing a forcible entry and detainer action (Case #99CV32813) against the Curtises in the Hamilton County Municipal Court. The certified docket sheet for this case is appended under Tab G. That eviction complaint was served on the Curtises in early January 2000. *Id.* The forcible entry and detainer proceeding came on for an early hearing on January 18, 2000, but the hearing was twice continued to February 1, 2000. *Id.* Harry Curtis was present at that February 1 hearing, and he brought with him a copy of the land contract that he thought had been signed on August 25. Curtis Dep. at 167. To Curtis' dismay, none other than John Meckstroth appeared as the eviction hearing as attorney for Bigelow. Curtis Affidavit, at ¶ 5. It was the same Meckstroth that <u>had represented Harry Curtis in connection with the land contract</u>. *Id.* During the February 1 hearing both Meckstroth and Bigelow denied that

6

Curtis had a land contract with Bigelow. Curtis Affidavit, at ¶ 5. Given that Harry Curtis' copy of the land contract was not signed, the Hamilton County Municipal Court referee entered an order, evicting Harry and Patricia Curtis out of 1966 Fairfax Avenue and onto the street. Curtis Affidavit, at ¶ 5 (Tab C).

Another count of the complaint in Case # 99CV32813 asserted a claim for money damages. Neither Harry or Patricia Curtis ever filed any answer to any claims asserted in Case #99CV32813. The Municipal Court made no final decision in the case. In late 2000, the lawsuit was dismissed at Bigelow's costs for want of prosecution. Tab G, attached. No final judgment or decree was ever entered in #99CV32813. Harry Curtis was unaware of the Defendants' scheme, as alleged in the complaint, until after the year 2000. Curtis Affidavit, at ¶6. Bigelow subsequently sold 1966 Fairfax for $97,000.

2.  **Bigelow's *Res Judicata* Arguments Are Meritless.**

Bigelow contends that the RICO and fraud-related claims asserted in this lawsuit were compulsory counterclaims to the Hamilton County Municipal Court complaint in Case #99CV32813. He relies upon the following statement of law by the Ohio Supreme Court as the key to his motion: "It has long been the law of Ohio that 'an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were or might have been litigated in a first lawsuit.'" *National Amusements, Inc. v. City of Springdale*, 53 Ohio St.3d 60, 62, 558 N.E.2d 1178, 1180 (1990), *quoting Rogers v. Whitehall*, 25 Ohio St.3d 67, 69, 494 N.E.2d 1387, 1388 (1986). Curtis has no quarrel

with this principle of law. However, it has no applicability to this action for the following reasons.

1. **No Final Judgment or Decree Was Entered in Case #99CV32813. That Case Was Dismissed for Want of Prosecution.**

The *National Amusements*-quoted principle first requires entry of a final judgment or decree. That did not happen in Case #99CV32813. The docket sheet (attached under Tab G) shows that Bigelow's lawsuit was ***dismissed without prejudice at his costs for want of prosecution.*** Without a final judgment/decree, there is no finality, and there can be no *res judicata*. The numerous *res judicata* cases that Bigelow cites do not help him, because, in contrast to Case #99CV32813, those cases involved an entry of final judgment. As such, they stand in counterpoint to the "dismissal without prejudice" entry in Case #99CV32813. For example, *Perry v. Croucher*, 165 F.3d 28 (6th Cir. 1998), involved an underlying final judgment that had been appealed even to the Ohio Supreme Court. *Estes v. Hellkamp* (attached as Appendix H to Bigelow's motion papers), involved a final judgment entered in a foreclosure action. *Salyer v. Chapman*, 1986 Ohio App. LEXIS 9016, No. 1771 (Lawrence App. Oct. 21, 1986) (attached to Bigelow's motion papers as Appendix I), involved an appeal from a final order, *i.e.*, a money judgment. In short, when there is no final judgment but rather a dismissal without prejudice, *res judicata* does not apply.

2. **Curtis Could Not Have Brought His Instant Claims as Counterclaims In 1999, Because He Did Not Then Know About the Scheme.**

Second, *res judicata*, as explained in *National Amusements*, applies only to claims that "were or might have been litigated in the first lawsuit." Harry Curtis could not have

8

litigated his instant claims in that lawsuit because he did not then know about them. *See* Curtis Affidavit, at ¶6 (Tab C). Indeed, the scheme was then being applied to him, and he was caught completely unaware. He was not represented by counsel on February 1, 2000, and he was completely baffled over how Bigelow could essentially "take" his house. *Id.* Curtis did not become aware of his claims until the Fall of 2001. *Id.*

*First Bank of Marietta v. Mitchell,* 1983 Ohio App. LEXIS 13535, No. 82-x-5 (Ohio Ct. App. Nov. 28, 1983) (attached under Tab H), presented an analogous situation. In *Mitchell,* the court of appeals held that counterclaims **were not** compulsory, because the claimant did not know about them (thus, they did not exist) until after the counterclaim date.

> Under R.C. 2305.09 the four year statute of limitations for fraud does not begin to run "until the fraud is discovered". We, therefore, conclude that the claim of appellant herein was arguably not even in existence at the time the responsive pleading was filed . . . .

*Id.,* at p.15. Defendant Curtis has stated that he did not know of the fraud scheme until long after the Municipal Court proceeding. Curtis Affidavit, at ¶6. As a result, those claims did not exist as of the time of that proceeding.

Ohio municipal courts, including that in Hamilton County, are courts of special jurisdiction. They are created by statute: R.C. §1901.01-.02; and their subject matter and territorial jurisdiction is limited to that prescribed by statute. *See, e.g.,* R.C. §§1901.023, *et seq.,* 1901.13-.131, 1901.17-.18. It is illogical to contend, as does Bigelow, that Harry Curtis was required to file his federal RICO §1962(c), §1962(d), and fraud-related counterclaims in Hamilton County Municipal Court at a time when the then-pending

9

forcible entry and detainer proceedings were part and parcel of the scheme that was being perpetrated against him.

### 3. The Compulsory Counterclaim Rules Are Inapplicable to Forcible Entry and Detainer Actions.

Even the cases cited by Bigelow establish that Ohio's compulsory counterclaim rule, Ohio Civil Rule 13(A), did not apply to the forcible entry and detainer count in Case ##99CV32813. Civil Rule 13(A), of course, is the rule on which Bigelow relies for his *res judicata* argument. But Ohio Civil Rule 1(C) provides that Ohio's rules of civil procedure "to the extent that they would by their nature be clearly inapplicable, shall not apply to procedure . . . (3) in forcible entry and detainer . . . ." The compulsory counterclaim rule is "clearly inapplicable" to forcible entry and detainer claims because they are summary proceedings, "conducted promptly and simply, without the aid of a jury and without strict observance of all the rules which normally govern civil proceedings." White, *Ohio Landlord Tenant Law* (1997 ed.), 288-89 §13.2. Eviction hearings occur before answers under the civil rules are due. Even when a monetary damage claim is asserted along with a forcible entry and detainer claim, the damage claim remains a distinct cause of action, subject to separate rules. *Smith v. Wright*, 65 Ohio App.2d 101, 416 N.E.2d 655 (Ohio App. 1979). If Harry Curtis had known about his claims and if a final judgment on the money damage claim had been entered in Case #99CV32813, Bigelow's argument might stand some scrutiny. However, given that Bigelow's claim for money damages did not result in a final judgment (as it was dismissed *without prejudice*), Ohio Rule 13(A) would have no applicability to the

10

forcible entry and detainer claims. *See Haney v. Roberts*, 130 Ohio App.2d 293, 720 N.E.2d 101 (Scioto App. 1998).

## CONCLUSION

Congress has enacted statutes that which grant this Court subject matter jurisdiction over the claims asserted in the Amended and Supplemental Complaint. Bigelow's Rule 12(b)(1) motion, accordingly, should be denied. To the extent that Bigelow's motion papers sound in summary judgment, the motion should be denied (1) because the motion papers are defective as to form under Civil Rule 56; (2) because there has been no final judgment or decree on which any *res judicata* principle can attach; (3) because Defendant Curtis did not know of the claims asserted in this proceeding when he was evicted in February 2000; and (4) because, by rule of civil procedure, Ohio's compulsory counterclaim rules are inapplicable to forcible entry and detainer proceedings.

Respectfully submitted,

/s/ William H. Blessing
William H. Blessing (#0006848)
Attorney for Plaintiffs
119 East Court Street, Suite 500
Cincinnati, Ohio  45202
Telephone: (513) 621-9191
Telecopier: (513) 621-7086

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2003, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and I hereby certify that I have mailed the document by United States Postal Service to the following:

Gary R. Lewis, Attorney
Gary R. Lewis Co. LPA
Cincinnati Club Building, Suite 915
30 Garfield Place
Cincinnati, OH 45202.

      /s/ William H. Blessing
William H. Blessing (#0006848)
Attorney for Plaintiffs
119 East Court Street, Suite 500
Cincinnati, Ohio 45202
Telephone: (513) 621-9191
Telecopier: (513) 621-7086