# EXHIBIT C

Case 1:02-cv-00006-SAS    Document 36-4    Filed 09/15/2003    Page 1 of 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **SHIRDENIA BRYANT**, *et al.*, | Case No. C-1-02-006 |
| Plaintiffs, | (Judge Spiegel) |
| | (Magistrate Judge Sherman) |
| -vs- | |
| | **AFFIDAVIT OF HARRY CURTIS** |
| **PRESCOTT BIGELOW, IV**, *et al.*, | |
| Defendants. | |

STATE OF OHIO      )
                   ) ss:
COUNTY OF HAMILTON )

HARRY CURTIS, after being duly cautioned and sworn, states as follows.

1. I am one of the plaintiffs in this lawsuit. I am making this affidavit on personal knowledge, and I am competent to testify to the facts here stated.

2. On August 25, 1999, my wife and I attended the closing on the deal that I had agreed to with Prescott Bigelow, IV. On that day I paid lawyer John Meckstroth for preparing a land contract, copy attached, which was to be signed at that closing.

3. Mr. Meckstroth handled the August 25 closing, and he presented various documents for Mr. Bigelow, my wife, and me to sign. I assumed that all of the documents were signed that were supposed to have been signed. At the conclusion of that meeting, Mr. Meckstroth gave me unsigned copies of the documents, including the land contract. That unsigned copy of the land contract is attached.

4. I made the September 1999 and October 1999 payments that were called for in the land contract, always under the assumption that the land contract had been signed by everyone.

5. On February 1, 2000 I attended an eviction hearing at the Hamilton County Municipal Court, where Mr. Bigelow was trying to evict me from my home. I took my unsigned copy of the land contract to the hearing. At that hearing, John Meckstroth, the same attorney who I had paid to prepare the land contract, appeared in court as the lawyer for Mr. Bigelow. Both Mr. Meckstroth and Mr. Bigelow told the judge at the eviction hearing that there was no land contract, and they successfully had me evicted.

6. When the eviction lawsuit against me was going on, I was not aware of the scheme that Mr. Bigelow and his collaborators were perpetrating against me and others. I was completely confused at the time about how Mr. Bigelow could take my house and how a judge could accept Mr. Meckstroth's and Mr. Bigelow's statements and force me out of my house onto the street. Although I lost my house in February 2000, I did not become aware of Mr. Bigelow's scheme until the Fall of 2001, when I met with an attorney who was investigating Mr. Bigelow's scheme carried out against someone else.

_Harry Curtis_
Harry Curtis

Signed and sworn to before me on this 12th day of September 2003

_Elizabeth F. Gibson_
Notary Public

ELIZABETH F. GIBSON
Notary Public, State of Ohio
My Commission Expires Feb.19, 2007

2

# LAND INSTALLMENT CONTRACT

PLAINTIFF'S EXHIBIT 121

This LAND INSTALLMENT CONTRACT entered into by and between **PRESCOTT BIGELOW, IV, TRUSTEE** whose mailing address is P.O. Box 30404, Cincinnati, Ohio 45230, hereinafter referred to as the "Vendor", and **HARRY CURTIS AND PATRICIA CURTIS, husband and wife**, whose tax mailing address is 1966 Fairfax Avenue, Cincinnati, Ohio 45207, hereinafter referred to as the "Vendee", witnesseth:

That in consideration of the mutual promises of the parties herein contained, the vendor agrees to sell and convey, and the vendee agrees to purchase and pay for, the real estate commonly known as 1966 Fairfax Avenue, Cincinnati, Ohio 45207 and more fully described below, together with all the appurtenances and hereditaments thereto, but subject to all conditions, easements and restrictions of record.

Situate, lying and being in the City of Cincinnati, County of Hamilton and State of Ohio, and being the east forty and one half (40 ½) feet of Lot number forty (40) of the First Subdivision of The Walnut Hills Land Association, as per plat of said Subdivision recorded in Plat Book 7, Page 97, in the office of the Recorder of Hamilton County, Ohio, and being more particularly described as follows:

Beginning at a point on the northerly line of Fairfax Avenue nine and one-half (9 ½) feet east of the westerly line of said Lot number forty (40); thence running eastwardly along said northerly line of Fairfax Avenue, forty and one-half (40 ½) feet to the easterly line of said Lot number forty (40); thence running northwardly along said easterly line of said Lot number forty (40), one hundred and forty (140) feet to the northerly line of said Lot number forty (40); thence running westwardly along said northerly line of said Lot Number forty (40); forty and one-half (40 ½) feet to a point; thence running southwardly along a line parallel with the westerly line of said Lot number forty (40) a distance of one hundred and forty (140) feet to the north line of said Fairfax Avenue and the place of beginning.

1. **PURCHASE PRICE AND TERMS:** The vendee agrees to pay for said property the sum of Thirty-Seven Thousand and 00/100 ($37,000.00) Dollars, payable with interest on the unpaid balance from the date herein until paid at the rate of Eleven and 00/100 (11.0%) per annum. Payments shall be paid in advance in consecutive monthly installments of Three Hundred Fifty and 00/100 ($350.00) Dollars on the first day of each month beginning September 1, 1999. Such monthly installments shall continue until September 1, 2001 at which time any remaining indebtedness shall be paid to vendor.

All payments shall be delivered to vendor at P.O. Box 30404, Cincinnati, Ohio 45230 or such other place as designated by the vendor in writing to the vendee. Privilege is reserved to prepay the entire indebtedness or any part thereof at any time without penalty.

2. **POSSESSION AND CONVEYANCE:** The vendee shall continue in possession of the property upon the execution of this contract and upon the payment by vendee of the full sum of Thirty-Seven Thousand and 00/100 ($37,000.00) Dollars as hereinbefore

provided, the vendor will convey marketable title to said premises to vendee by good and sufficient deed of general warranty, free and clear from all encumbrances excepting taxes and assessments then due and payable, easements and restrictions of record, and excepting such as may be caused by the acts or defaults of the vendee.

3. **TAXES AND ASSESSMENTS:** Vendor shall be liable for the taxes and assessments due after the execution of this agreement. Taxes and assessments shall be prorated based on the most recent tax duplicate upon the completion of this contract.

4. **INSURANCE:** The vendor agrees to maintain and pay for hazard insurance in an amount of not less than the purchase price. The vendor shall cause the vendee to be included as "an insured" on said policy.

The vendee shall be responsible for loss or damage to the contents of the premises.

The vendee shall save and keep harmless and indemnify the vendor from and against all loss, damage, or injury, to the extent the same is not covered by insurance, to any person or property while on the property arising out of the use of occupancy of the property by the vendee or the vendee's employees, guests, licensees, or invitees, or which shall be occasioned by any nuisance made or suffered on the property.

5. **ABSTRACT:** In compliance of O.R.C. 5313.02 (A) (12) vendee has obtained an Attorney's Title Opinion at their expense in accordance with the prevailing custom in which the property is located.

6. **UTILITIES AND REPAIRS:** The vendee agrees to pay all electric, gas, water and the storm water management charges and to keep all said property in good condition, and further agrees to make all necessary inside and outside repairs to said property at vendee's own expense. However, the vendee further agrees not to make any material alterations or additions in or to said premises without submitting the plans and specifications to the vendor for approval, and further not to permit or suffer any waste herein.

7. **LAWS AND ORDINANCES:** The vendee agrees to conform to, obey and comply with all the present and future laws, ordinances, rules, regulations, requirements and orders of the United States of America, State of Ohio, County of Hamilton and all of the departments, bureaus, boards and officials of said County respecting said premises and the use and occupation thereof.

8. **INSPECTION OF PREMISES:** The vendee agrees to permit the vendor and the vendor's agents and representatives, to enter upon said property upon reasonable notice to examine the condition of the same and to make necessary repairs if vendor should decide to do so, but this paragraph shall not in any way relieve the vendee to make repairs as provided in Item 6 herein.

9. RECORDING: Within, twenty (20) days of the execution of the within contract and agreement, vendor shall cause a copy of the same to be recorded in the Hamilton County Recorder's Office at vendee's expense.

10. BUILDING ORDERS: Vendor warrants to having no knowledge of existing or pending building orders on the property.

Vendee further agrees to keep the property free from any county and city building orders. Should vendee fail to do so, the vendors shall have the right to remove said and cause said costs to become an addition to the payment of principal immediately due and payable by the vendee.

11. ENCUMBRANCES: Vendor states that there are no mortgages or liens on this property:

12. DEFAULT: The parties hereto mutually agree that if the vendor defaults on any mortgage on the property, the vendee may pay on said mortgage and credit said payments against the monthly installment payments provided for herein.

The parties hereto further agree that if the vendee shall fail or neglect to pay any one of the said installments of the purchase money or costs called for in Item 6 when the same becomes due, and such default is not cured within thirty (30) days, as provided by law, or shall fail to keep, to observe and perform all of the covenants and conditions of this contract, then, at the vendor's option, all the installments and the amounts remaining unpaid shall immediately become due and payable and the vendor may terminate this agreement by giving ten (10) days written notice in accordance with O.R.C. 5313.06 to vendee, and in the event of such termination:

a. All payments made by the vendee hereunder may be retained by the vendor not at liquidated damages but for damages caused by nonperformance by the vendee of this agreement and/or

b. Vendor shall have all other rights as provided by law to forfeit the hereunder rights of the vendee and specifically the rights as set forth in O.R.C. 5313.01 to 5313.10;

c. Vendor shall be entitled to have a receiver appointed by a court to enter upon, take possession of and manage the property and to collect the rents of the property including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the property and collection of rents, including, but not limited to receiver's bonds and reasonable attorney's fees, and then to the sum secured by this contract. The receiver shall be liable to account only for those rents actually received.

-3-

The failure of the vendor to exercise the option to enforce its rights for any default of the vendee, shall not constitute a waiver of the above provisions.

13. **CONDEMNATION:** It is agreed that should the property herein be subject to any eminent domain or condemnation proceedings covering part or all of the property, that the vendor shall be entitled to any compensation paid as a result of such taking which shall be applied to the principal balance. Any excess amount shall be paid to the vendee.

14. **TIME OF THE ESSENCE:** Time is of the essence in the doing, performing, and observing of each and every term, covenant, or condition of this agreement by both vendors and vendee unless specifically excluded above.

15. **JOINT AND SINGULAR OBLIGATIONS:** As used herein, "vendor" shall include vendors, "vendee" shall include vendees, and the obligations and duties of the vendors and the vendee, respectively, if more than one, shall be joint and several.

16. **LATE CHARGE:** Vendee shall be subject to a late charge of Five (5%) percent of the amount due after Ten (10) days from the due date.

17. **BINDING EFFECT:** This agreement shall be binding on and inure to the benefit of the heirs, executors, administrators, successors and assigns of the parties hereto.

18. **CAPTIONS:** The captions of the several items of this agreement are not a part of the context hereof and shall be ignored in construing this agreement. They are intended only as aids in locating and reading the various provisions hereof.

IN WITNESS WHEREOF, The undersigned have set their hands to duplicate copies on the day of _____ day of _____, 1999.

SIGNED IN THE PRESENCE OF:                  Vendor:

                                            _____
                                            Prescott Bigelow, IV, Trustee

_____
WITNESS AS TO VENDOR

_____
WITNESS AS TO VENDOR
                                            Vendee:

_____             _____
WITNESS AS TO VENDEES                       Harry Curtis

_____             _____
WITNESS AS TO VENDEES                       Patricia Curtis

- 4 -

BRYANT -199

STATE OF OHIO, COUNTY OF HAMILTON, SS:

BE IT REMEMBERED, That on the _____ day of _____, 1999, before me, the subscriber, a Notary Public, in and for said County and State, personally came vendees HARRY CURTIS AND PATRICIA CURTIS, in the foregoing Land Contract, and acknowledge the signing thereof to be their and its voluntary act and deed.

IT TESTIMONY THEREOF, I have hereunto subscribed my name and affixed my seal on this day and year aforesaid.

_____
Notary Public

STATE OF OHIO, COUNTY OF HAMILTON, SS:

BE IT REMEMBERED, That on the _____ day of _____, 1999, before me, the subscriber, a Notary Public, in and for said County and State, personally came vendor, PRESCOTT BIGELOW, IV, TRUSTEE, in the foregoing Land Contract, and acknowledge the signing thereof to be their and its voluntary act and deed.

IT TESTIMONY THEREOF, I have hereunto subscribed my name and affixed my seal on this day and year aforesaid.

_____
Notary Public

Prepared by:
John R. Meckstroth, Jr.
Attorney at Law
22 West Ninth Street
Cincinnati, Ohio  45202

-5-