# EXHIBIT H

First Bank of Marietta, Plaintiff-Appellant, -vs- James C. Mitchell, et al, Defendants-Appellees

NO. 82 x 5; 82 x 14

COURT OF APPEALS OF OHIO, FOURTH APPELLATE DISTRICT, WASHINGTON COUNTY

1983 Ohio App. LEXIS 13535

November 28, 1983

**DISPOSITION:** [*1]

JUDGMENT REVERSED

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff bank filed a complaint that alleged defendant president committed fraud and breached his fiduciary duty. It also alleged that defendant insurer was liable for the losses as the issuer of fidelity bonds. The Washington County Court of Common Pleas (Ohio) granted the president's motion for judgment on the pleadings and the insurer's motion to dismiss. The bank appealed.

**OVERVIEW:** The bank sought to recover monetary damages that it sustained when its former president committed fraud and breached his fiduciary duty to the bank in a series of loan transactions. On appeal, the court first concluded that the trial court erred by granting the president's Ohio R. 12(C) motion for judgment on the pleadings. The court reasoned that the bank's claim could not have been brought as a compulsory counterclaim in a prior suit because it did not exist when the responsive pleading was filed. Next, the court found that the trial court also erred by granting the insurer's Ohio Civ. R. 12(B)(6) motion to dismiss for failure to state a complaint upon which relief could have been granted because the effective date of the fidelity bonds did not appear in the complaint. The court also found that the trial court erred in granting the president's motion to quash the subpoenas duces tecum for personal financial documents and in refusing to require the president and his wife to answer deposition questions. Finally, the court overruled the president's and the insurer's cross-assignment of error and held that the trial court did not err by denying their motions for summary judgment.

**OUTCOME:** The court reversed the judgment on the pleadings granted in favor of the president and the motion to dismiss granted to the insurer.

**CORE TERMS:** discovery, summary judgment, subpoena, diligence, motion to dismiss, statute of limitations, assignment of error, twenty-four, deposition, responsive pleading, suspicion, averred, notice, fraudulent, board of directors, compulsory counterclaim, oppressive, estoppel, failure to state a claim, motion to quash, dishonest acts, duces tecum, designated, subpoena duces tecum, proof of loss, additionally, concealment, occurrence, dishonest, disclose

**LexisNexis (TM) HEADNOTES - Core Concepts -** ♦ Hide Concepts

Civil Procedure > Early Pretrial Judgments > Judgment on the Pleadings

[HN1] The standard for determining the appropriateness of granting an Ohio Civ. R. 12(C) judgment on the pleadings is stated as follows: Since the judgment below is entered upon the pleadings, pursuant to Ohio Civ. R. 12(C), appellant bank is entitled to have all the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, construed in its favor as true. Ohio Civ. R. 12(C) presents only questions of law, and determination of the motion for judgment on the pleadings is restricted solely to the allegations in the pleadings. More Like This Headnote

Civil Procedure > Early Pretrial Judgments > Judgment on the Pleadings
Civil Procedure > Summary Judgment

[HN2] The motion for judgment on the pleading is properly utilized when no disputed issues of material facts exist in the pleadings, which alone can be considered, and based thereon, the movant is entitled to judgment as a matter of law. No mechanism exists under the civil rules to convert an Ohio Civ. R. 12(C) motion to one for summary judgment. More Like This Headnote

Civil Procedure > Early Pretrial Judgments > Judgment on the Pleadings

[HN3] A material issue of fact that will prevent a motion under Ohio Civ. R. 12(c) from being successful may be framed by an express conflict on a particular point between the parties' respective pleadings. It also may result from defendant pleading new matter and affirmative defenses in his answer. According to Ohio Civ. R. 7(a), the plaintiff bank is not required to reply to affirmative defenses or new matter appearing in the answer, and, under Ohio Civ. R. 8(d), averments in a pleading to which no responsive pleading is required are considered by the court to have been denied. Thus, when material issues of fact are raised by the answer and the defendant president seeks judgment on the pleadings on the basis of this matter, his motion cannot be granted. More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings > Counterclaims & Cross-Claims

[HN4] The compulsory counterclaim rule is set forth in Ohio Civ. R. 13(A) and provides as follows: A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action is commenced the claim is the subject of another pending action, or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13. More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings > Counterclaims & Cross-Claims

[HN5] Ohio Civ. R. 13(A) expressly requires a counterclaim arising out of the same transaction or occurrence and existing at the time of serving the pleading to be pled in the responsive pleading. More Like This Headnote

Torts > Business & Employment Torts > Deceit & Fraud

Governments > Legislation > Statutes of Limitations > Time Limitations

*HN6* Under Ohio Rev. Code Ann. § 2305.09 the four year statute of limitations for fraud does not begin to run until the fraud is discovered.  More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings > Counterclaims & Cross-Claims

*HN7* The language of Ohio Civ. R. 13(E) clearly is discretionary in nature with regard to whether a pleader shall request permission of the court to present a counterclaim after the filing of a responsive pleading.  More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action

*HN8* The proper standard for determining the propriety of granting an Ohio Civ. R. 12(B)(6) motion to dismiss follows: In order for a court to dismiss a complaint for failure to state a claim upon which relief can be granted, Ohio Civ. R. 12(B)(6), it must appear beyond doubt from the complaint that the plaintiff bank can prove no set of facts entitling him to recovery. Also, in considering such motion, the court must assume the truth of the allegations contained in the complaint.  More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action
Civil Procedure > Summary Judgment

*HN9* Ohio Civ. R. 12(B)(6) provides the following: When a motion to dismiss for failure to state a claim upon which relief can be granted presents matters outside the pleading and such matters are not excluded by the court, the motion shall be treated as a motion for summary judgment and disposed of as provided in Ohio Civ. R. 56. Provided however, that the court shall consider only such matters outside the pleadings as are specifically enumerated in Rule 56. All parties shall be given reasonable opportunity to present all materials made pertinent to such a motion by Rule 56.  More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action
Civil Procedure > Summary Judgment

*HN10* A court must notify all parties when it converts a motion to dismiss for failure to state a claim into a motion for summary judgment. Ohio Civ. R. 12(B). A court must notify all parties that it has converted a motion to dismiss for failure to state a claim into a motion for summary judgment at least 14 days before the time fixed for hearing. Ohio Civ. R. 12(B) and Ohio Civ. R. 56(C).  More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings

Civil Procedure > Pleading & Practice > Pleadings > Supplemental Pleadings

*HN11* Ohio Civ. R. 15(A) governs amendments to pleadings and provides in relevant part: A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 28 days after it is served. Otherwise a party may amend his pleading only by

leave of court or by written consent of the adverse party. Leave of court shall be freely given when justice so requires. More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings

HN12 In that a responsive pleading has been filed, Ohio Civ. R. 15(A) requires leave of court to file an amended complaint. The granting or denial of leave of court to file an amended complaint is a matter committed to the sound discretion of the trial court and will be reversed on appeal only where there is demonstrated an abuse of discretion. However, under Ohio Civ. R. 15(A), leave shall be freely given when justice so requires. Leave to amend a complaint may be properly denied where the complaint which the party seeks leave of court to file would be subject to a motion to dismiss. A trial court may deny a motion for leave to amend a complaint if such complaint, as amended, could not withstand a motion to dismiss. More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings

HN13 While permission to amend a complaint after dismissal of the action rests in the sound discretion of the court, amendment to correct a deficiency in pleading should be freely given when justice so requires. Where the amended complaint would state a valid cause of action, a motion to amend should normally be granted. More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings

HN14 It is an abuse of discretion for a court to deny a motion, timely filed, seeking leave to file an amended complaint, where it is possible that the plaintiff bank may state a claim upon which relief may be granted and no reason otherwise justifying denial of the motion is disclosed. More Like This Headnote

Civil Procedure > Trials > Subpoenas

HN15 Ohio Civ. R. 45(B) provides for the issuance of a subpoena duces tecum: A subpoena may also command the person to whom it is directed to produce the books, papers, documents or tangible things designated therein; but the court, upon motion made promptly and in any event at or before the time specified in the subpoena for compliance therewith, may (1) quash or modify the subpoena if it is unreasonable and oppressive or (2) condition denial of the motion upon the advancement by the person in whose behalf the subpoena is issued of the reasonable cost of producing the books, papers, documents or tangible things. More Like This Headnote

Civil Procedure > Discovery Methods > Oral Depositions
Civil Procedure > Trials > Subpoenas

HN16 Ohio Civ. R. 45(D) provides for the issuance of a subpoena for the taking of a deposition and provides as follows: (1) When the attendance of a witness before an official authorized to take depositions is required, the subpoena shall be issued by such person and shall command the person to whom it is directed to attend and give testimony at a time and place specified therein. The subpoena may command the person to whom it is directed to produce designated books, papers, documents or tangible things which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Ohio Civ. R. 26(B), but in that event the subpoena will be subject to the provisions of Ohio Civ. R. 26(C) and subdivision (B) of

this rule. (2) A person whose deposition is to be taken may be required to attend an examination in the county wherein he resides or is employed or transacts his business in person, or at such other convenient place as is fixed by an order of court.  More Like This Headnote

Civil Procedure > Disclosure & Discovery > Relevance

HN17 Ohio Civ. R. 26(B) provides, in relevant part, as follows: (B) Scope of discovery. Unless otherwise ordered by the court in accordance with these rules, the scope of discovery is as follows: (1) In general. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.  More Like This Headnote

Civil Procedure > Disclosure & Discovery > Protective Orders

HN18 Ohio Civ. R. 26(C) provides, in relevant part, as follows: (C) Protective orders. Upon motion by any party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court.  More Like This Headnote

Civil Procedure > Disclosure & Discovery > Protective Orders

HN19 Ohio Civ. R. 26(C) provides, in relevant part, as follows: (C) Protective orders. Upon motion by any party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.  More Like This Headnote

Civil Procedure > Disclosure & Discovery > Protective Orders

HN20 If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or

person provide or permit discovery. The provisions of Ohio Civ. R. 37(A) (4) apply to the award of expenses incurred in relation to the motion. More Like This Headnote

Civil Procedure > Disclosure & Discovery > Relevance 🔍
Civil Procedure > Trials > Subpoenas 🔍
HN21 🔍 In determining whether the subpoena duces tecum issued for a deposition is unreasonable or oppressive requires application of Ohio Civ. R. 26(B) to determine whether the documents sought come within the scope of discovery permitted under Civ. R. 26(B). More Like This Headnote

Civil Procedure > Disclosure & Discovery > Relevance 🔍
HN22 🔍 The scope of discovery under Ohio Civ. R. 26(B)(1) is not limited to matters which are admissible into evidence, but extend to all matters not privileged, which is relevant to the subject matter involved in the pending action . More Like This Headnote

Civil Procedure > Trials > Subpoenas 🔍
HN23 🔍 The burden to establish that a subpoena duces tecum is unreasonable or oppressive is on the person who seeks to have it quashed. He cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of compliance. More Like This Headnote

Civil Procedure > Trials > Subpoenas 🔍
HN24 🔍 Normally, the desirability of quashing a subpoena rests, not in the impropriety of reaching the document requested, but in the effort required to collect and produce the documents or things. When it appears that the effort will be expended without any significant result in the resolution of the issues of the case, a subpoena duces tecum would seem unreasonable and oppressive. Where the effort is great, but the documents serve the purpose of resolution of the issues, there is little basis for a claim of unreasonableness or oppression in having to respond to a subpoena for the production of documents. The court is given an effective technique in the authorization to require the subpoenaing party to advance the cost of producing the items as a condition of allowance of the subpoena. The concept has the potential for eliminating nonmeritorious requests. The application of the cost advancement technique will probably vary with whether the subpoena is directed to a party or to a witness who is not a party. More Like This Headnote

Civil Procedure > Summary Judgment
Civil Procedure > Appeals > Appellate Jurisdiction > Final Judgment Rule 🔍
HN25 🔍 An overruling of a motion for summary judgment is not a final order. More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof 🔍
Civil Procedure > Summary Judgment > Summary Judgment Standard 🔍
HN26 🔍 Summary judgment under Ohio Civ. R. 56 will be rendered only if there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A summary judgment shall not be rendered

unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. The burden of showing that no genuine issue of material fact exists falls upon the party requesting summary judgment. More Like This Headnote

Torts > Business & Employment Torts > Deceit & Fraud

Governments > Legislation > Statutes of Limitations > Time Limitations

HN27 Under Ohio Rev. Code Ann. § 2305.09, the four year statute of limitations for fraud does not begin to run until the fraud is discovered. Under § 2305.09, the terms "until the fraud is discovered" is generally held to mean actual discovery of the fraud or what should be discovered by the exercise of due diligence. More Like This Headnote

Insurance Law > Business Insurance > Fidelity Insurance > Discovery of Losses

HN28 For purposes of fidelity bonds, discovery of the loss occurs when the fraud is discovered. More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings

HN29 Pursuant to Ohio Civ. R. 8(D) averments in a pleading to which no responsive pleading is required or permitted is taken as denied or avoided. More Like This Headnote

**COUNSEL:** Messrs. McCauley, Webster & Emrick, Mr. James H. McCauley, Belpre, Ohio, for Appellant.

Messrs. McNamara and McNamara, Mr. J. Paul McNamara and William H. Woods, Columbus, Ohio, for Appellee, United States Fire Insurance Company.

Messrs. Metcalf, Lambe & Burton, Mr. Randall Metcalf, Marietta, Ohio, for Appellee James C. Mitchell.

**JUDGES:** Abele, P. J., Concurs

Grey, J., Dissents

**OPINIONBY:** STEPHENSON, J.

**OPINION:** OPINION

Combined appeals are before this court from judgments and orders entered by the Washington County Court of Common Pleas in an action instituted by the First Bank of Marietta, appellant herein, against James C. Mitchell, hereinafter referred to as Mitchell, and the United States Fire Insurance Company U.S. Fire, both defendants being appellees and cross-appellants herein. The judgment appealed in appeal No. 82 x 5 is an order granting a Civ. R.12(B) (6) motion by U.S. Fire to dismiss appellant's second amended complaint and refusing appellant's motion to file a third amended complaint against U.S. Fire. The judgment appealed in Appeal No. 82 X 14 is from an order granting Mitchell's Civ.R 12 (C) motion for judgment on the pleadings **[*2]**

entered after the filing of a third amended complaint and answer by Mitchell. Additionally, both Mitchell and U.S. Fire have filed cross appeals from the earlier denial of separate motions for summary judgment filed by each of the appellees.

The following errors are assigned by appellant:

"I. THE TRIAL COURT ERRED IN GRANTING APPELLEE MITCHELL'S MOTION FOR JUDGMENT ON THE PLEADINGS BASED UPON CIVIL RULE 13(A).

II. THE TRIAL COURT ERRED IN GRANTING APPELLEE UNITED STATES FIRE INSURANCE COMPANY'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT.

III. THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING APPELLANT LEAVE TO FILE ITS THIRD AMENDED COMPLAINT AGAINST APPELLEE UNITED STATES FIRE INSURANCE COMPANY.

IV. THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED IN GRANTING APPELLEE MITCHELL'S MOTIONS TO QUASH SUBPOENAS, AND IN REFUSING TO GRANT APPELLANT'S MOTION FOR RECONSIDERATION OF ORDER QUASHING SUBPOENAS AND MOTION FOR ORDER COMPELLING ANSWERS TO QUESTIONS PROPOUNDED AT ORAL DEPOSITIONS.

Mitchell and U.S. Fire, by way of cross appeal have, respectively, assigned the following errors:

"(i) The Trial Court erred in denying Appellant's Motion for Summary Judgment based on statute of **[*3]** limitations.

(2) The Trial Court erred in failing to enter summary judgment in favor of defendant, U.S. Fire, on the grounds that First Bank failed to commence this action within four years of the discovery of the alleged fraud as required by § 2305.09, R.C., and on the grounds that First Bank failed to commence this action within twenty-four months of the discovery of the alleged loss through dishonest and fraudulent conduct as required by Section 4 of the bonds issued by U.S. Fire."

We would observe at the outset that the procedural course of this action below was lengthy and varied with respect to numerous motions and proceedings, particularly in the area of discovery, filed by the parties which, coupled with lengthy and amended pleadings, has resulted, even though the action was not tried on its merits, in a voluminous record consisting of thousands of pages. The parties are fully aware of the nature and details of such proceedings and we deem it unnecessary to detail them herein except when relevant to the various errors assigned.

The record reflects that on April 28, 1980, appellant filed its complaint seeking recovery from Mitchell, its former president, and U.S. **[*4]** Fire, who has issued fidelity bonds to the appellant bank, seeking to recover monetary damages of over $900,000 by reason of alleged fraudulent and dishonest acts by Mitchell in breach of his fiduciary duty to appellant. The court sustained a Civ.R.12(E) motion for a definite statement and on July 7, 1980, appellant filed its first amended complaint.

Briefly summarized, the amended complaint averred fraudulent conduct by Mitchell in the following particulars. In Count 1 (A) it was averred that Mitchell, without the knowledge or consent of appellant, on January 31, 1976, used bank funds to purchase

United States Treasury Notes, that on certain dates in February, 1976, he sold the notes for a profit which he paid with bank funds to himself and another.

Count I(B) of the complaint alleges fraud and breach of fiduciary duty in various commercial loan transactions between June 12, 1975 and October 31, 1975, to Samuel F. Buckey and Southgate Homes Corp.

Court I(C) of the complaint alleges fraud and breach of fiduciary duty in various commercial loan occurring between January 3, 1974 and December 5, 1975 to Samuel F. Buckey, Jack Cline and Cambridge Ramada Inn Ltd. The complaint **[*5]** also alleges that Mitchell personally approved loans to such debtors in an amount in excess to the maximum legally permissible loan under R.C. 1107.23.

Court I(D) of the complaint alleges fraud and breach of fiduciary duty in loans occurring between June 12, 1974 and December 30, 1975, to Globe Natural Gas Co., Martini Packing Co., and Robert Kaye. The complaint also alleges that Mitchell personally approved loan amounts in excess of the maximum legally permissible loan amount under R.C. 1107.23. The claim against appellee U.S. Fire was based upon two fidelity bonds issued by U.S. Fire and averred to cover losses arising out of the alleged fraudulent acts of Mitchell. Copies of the bonds were attached to the complaint.

After the filing of answers by appellees in which various defenses were averred, both Mitchell and U.S. Fire filed motions for summary judgment, both motions asserted the ground that the original complaint, filed on April 28, 1980, was not filed within the four year statute of limitation contained in R.C. 2305.09 for fraud. U.S. Fire additionally sought summary judgment upon two additional grounds. First, that appellant had failed to institute suit within **[*6]** 24 months of discovery of loss as required by the bonds and, secondly, upon the ground that the loss was not covered under the bond in that the bonds insured only against losses discovered while the bonds were in effect and the loss occurred herein after expiration of coverage under the bonds. Upon consideration of the motions for summary judgment, the trial court concluded that a material issue of fact, i.e. the date of the discovery of the fraud, was in dispute, and denied the appellees' motions for summary judgment.

Thereafter, and apparently in light of the holding in Peterson v. Teodosio (1973), 34 Ohio St.2d 161, that judgment on the pleadings will lie when recovery for fraud is sought and the complaint relies upon acts occurring more than four years before suit with no averments as to the time the fraud was discovered, filed, on November 25, 1981, with leave of court, a second amended complaint.

The second amended complaint averred, inter alia, the following:

"77. While Plaintiff's Board of Directors did in late 1975 obtain some knowledge that Defendant Mitchell had allowed concentrations of credit and had used poor judgment in making loans, many of Defendant Mitchell's **[*7]** fraudulent and dishonest acts and concealment of facts in making these aforesaid loans were successfully concealed from Plaintiff's Board of Directors by Defendant Mitchell. The first true indication to Plaintiff's Board of Directors that Defendant Mitchell had actually committed fraudulent and dishonest acts occured on May 8, 1976, when federal and state bank examiners alerted Plaintiffs personnel that Plaintiff's January 31, 1976 to February 4, 1976 treasury note transactions heretofore set out in paragraphs 7 through 16 constituted serious violations of the law, and that Plaintiff should immediately contact the FDIC, the Ohio Superintendent of Banks, and its bonding company.

78. Thereafter, as Plaintiff and examiners searched other bank files and transactions during the next four years, a suspicion arose that Defendant Mitchell had committed fraudulent and dishonest acts to the Plaintiff's detriment, which suspicion crystallized into actual knowledge of fraud on April 27, 1980, the day immediately prior to the filing of the original Complaint in this action."

Additionally, the complaint averred that U.S. Fire waived notice and proof of loss provisions of the policies.  [*8]

U.S. Fire filed on December 2, 1981, a Civ. R.12(B)(6) motion to dismiss upon the grounds the second amended complaint failed to state a claim for relief. The basis of U.S. Fire's motion to dismiss was that inasmuch as appellant's complaint alleged the date of discovery of the fraud as April 27, 1980, and the coverage under the bonds had expired by such date, the complaint failed to state a claim upon which relief could be granted. On December 17, 1981, U.S. Fire filed an affidavit setting forth the effective date of the bonds from September 5, 1974 to September 5, 1977. At hearing on December 21, 1981, the court orally announced it was sustaining the motion to dismiss. On January 4, 1982, the court journalized an entry reciting, inter alia, the following:

"This action came on for hearing upon the motion of defendant, United States Fire Insurance Company, for an order dismissing the Second Amended Complaint against United States Fire Insurance Company on the grounds that the Second Amended Complaint fails to state a claim upon which relief can be granted against defendant, United States Fire Insurance Company, and the oral motion of Plaintiff, First Bank of Marietta,  [*9]  for leave to file a Third Amended Complaint against Defendant, United States Fire Insurance Company, and the Court having considered the Second Amended Complaint; the proffered Third Amended Complaint; the arguments of counsel; the Affidavit of Paul Mahron; the course of proceedings herein, including the pleadings, motions, materials properly filed in support of the motions; and other papers properly filed herein; and the Court having rendered a decision:

It is hereby ORDERED, ADJUDGED AND DECREED that the Second Amended Complaint against defendant, United States Fire Insurance Company, ought to be and hereby is dismissed and that the motion of First Bank of Marietta to file a Third Amended Complaint against defendant, United States Fire Insurance Company, ought to be and hereby is overruled."

Thereafter, appellant was granted leave of court to file a third amended complaint against Mitchell. The third amended complaint averred that appellant obtained "knowledge or belief of fraud" on the part of Mitchell on or prior to November 3, 1977, and complete certainty of fraud on April 27, 1980.

Mitchell's answer to the third amended complaint alleged various affirmative defenses including [*10]  the statute of limitations and a new defense, not previously alleged, that the complaint herein was barred under Civ. R.13(A) in that the claims should have been presented as a compulsory counterclaim in previous litigation between appellant and Mitchell. Attached to Mitchell's answer and incorporated therein was a complaint, answer and judgment entry in Washington County Common Pleas Court case No. 77 CV 232, where Mitchell was granted a $16,000 money judgment against appellant for salary due Mitchell for incentive management fees for services during the years 1971 and 1972. Also attached was a copy of the minutes of a March 2, 1977 meeting of

appellant's Board of Directors.

Thereafter, Mitchell filed a Civ. R.12(C) motion for judgment on the pleadings contending that the claim herein arose out of the same transaction or occurrence giving rise to 77 CV 232 and was required, under Civ. R.13(A), to be asserted as a compulsory counterclaim. Upon consideration of such motion, the trial court granted Mitchell's motion for judgment on the pleadings based upon the compulsory counterclaim defense.

Appellant's first assignment of error argues the trial court erred in granting **[*11]** Mitchell's Civ. R.12(C) motion for judgment on the pleadings based upon the failure of appellant to plead in earlier litigation a compulsory counterclaim.

*HN1*✦The standard for determining the appropriateness of granting Civ. R.12(C) judgment on the pleadings is stated in Peterson v. Teodosio (1973), 34 Ohio State 2d, 161, 165-66, as follows:

"Since the judgment below was entered upon the pleadings, pursuant to Civ. R.12(C), appellee herein was entitled to have all the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, construed in her favor as true. 2A Moore's Federal Practice 2342, Paragraph 12.15; 5 Federal Practice and Procedure, Wright and Miller, Section 1368. Civ. R.12(C) is a continuation of the former statutory practice and presents only questions of law, and determination of the motion for judgment on the pleadings is restricted solely to the allegations in the pleadings. Conant v. Johnson (1964), 1 Ohio App. 2d 133."

For the following reasons we conclude that the court erred in its grant of judgment on the pleadings. The most obvious of these is that, fundamentally, *HN2*✦the motion for judgment on the pleading is **[*12]** properly utilized when no disputed issues of material facts exist in the pleadings, which alone can be considered, and based thereon, the movant is entitled to judgment as a matter of law. No mechanism exists under the civil rules to convert a Civ. R.12(C) motion to one for summary judgment and by reason of automatic denials under the rules of answer averments material issues of fact existed.

In Wright and Miller, Federal Practice and Procedure, Section 1368, p.695, the authors comment as follows:

"*HN3*✦A material issue of fact that will prevent a motion under Rule 12(c) from being successful may be framed by an express conflict on a particular point between the parties' respective pleadings. It also may result from defendant pleading new matter and affirmative defenses in his answer. According to Rule 7(a), plaintiff is not required to reply to affirmative defenses or new matter appearing in the answer, and, under Rule 8(d), averments in a pleading to which no responsive pleading is required are considered by the court to have been denied. Thus, when material issues of fact are raised by the answer and defendant seeks judgment on the pleadings on the basis of this matter, his motion **[*13]** cannot be granted. . . ."

Accordingly, courts have denied motions for judgment on the pleadings upon the affirmative defenses of election of remedies and res judicata. See, City Bank Farmers Trust Co. v. Liggett Spring & Axle Co. (1945 D.C. Pa.), 4 F.R.D. 254; see also, Stephens v. Boothky (1974) 40 Ohio App. 2d. 197, with regard to res judicata and a Civ. R.12(B)(6) motion to dismiss.

It necessarily follows that Mitchell answer averments incorporating the pleadings and judgment in the prior action, together with the incorporated board of directors minutes were 0 denied and precluded resolution of the asserted defense by means of judgment on the pleadings.

A further reason why we view error intervened in the grant of judgment on the pleadings is the following. *HN4*The compulsory counterclaim rule is set forth in Civ. R.13(A) and provides as follows:

"A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom **[*14]** the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13."

Much of the argument in the brief under this assignment of error is directed to whether the within action arose out of the "transaction or occurrence" upon which the first action was based. While we question, on the scant material before us upon the issue, whether the action for management incentive bonus in 1971 and 1972 are "logically related" to the present claim of dishonesty and fraud and necessarily involved common factual and legal issues, assuming the transaction or occurrence requirement was met, we are not persuaded a sufficient showing of maturity of the present claim existed.

*HN5*Civ. R.13(A) expressly requires a counterclaim arising out of the same transaction or occurrence and existing "at the time of serving the pleading" to be pled in the responsive pleading. **[*15]**

For purposes of a Civ. R.13(C) motion for judgment on the pleadings, we must assume as true the averments in appellant's third amended complaint that appellant had no actual knowledge of fraud until November 3, 1977.

The record does not reveal the date which appellants filed their responsive pleading in the prior action. We, however, note that the final entry granting judgment in favor of Mitchell was not filed until November 10, 1977.

*HN6*Under R.C. 2305.09 the four year statute of limitations for fraud does not begin to run "until the fraud is discovered". We, therefore, conclude that the claim of appellant herein was arguably not even in existence at the time the responsive pleading was filed in 77 Civ 232.

Mitchell contends, however, that Civ. R.13(E) would have required appellants to file the claim herein as a compulsory counterclaim in 77 Civ 232 even if the claim did not mature until after the filing of the responsive pleading.

Mitchell's reliance upon Civ. R.13(E) is misplaced in that *HN7*the language of Civ. R.13(E) clearly is discretionary in nature with regard to whether a pleader shall request permission of the court to present a counterclaim after the filing of a responsive **[*16]** pleading. See McCormack, Ohio Civil Rules Practice, Section 8.07,

p.179.

Further, the conclusion that the claim herein constituted a compulsory counterclaim that was required to be filed in the prior action and barred relief herein necessarily required factual determinations based upon evidence extraneous to the pleadings. Accordingly, the first assignment of error is sustained.

Appellant's second assignment of error contends the trial court erred in granting U.S. Fire's motion to dismiss the second amended complaint for failure to state a claim upon which relief could be granted.

For the reasons hereinafter set forth we conclude the court erred in granting the Civ. R.12(B)(6) motion and do so emphasizing the importance of application of the standard adopted by the Ohio Supreme Court, absent a definitive conversion of the motion to one for summary judgment under Civ. R.56.

*HN8*The proper standard for determining the propriety of granting a Civ. R.12(B)(6) motion to dismiss is enunciated in Freeman v. Marshall (1982), 69 Ohio St. 2d.344, as follows:

"This court has consistently held that 'in order for a court to dismiss a complaint for failure to state a claim upon which **[\*17]** relief can be granted (Civ. R.12(B)(6), it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery.' O'Brien v. University Community Tenants Union (1975), 42 Ohio St. 2d 242. Also, in considering such motion, the court must assume the truth of the allegations contained in the complaint. See Royce v. Smith (1981), 68 Ohio St. 2d 106."

*HN9*Civ. R.12(B)(6) provides, inter alia, the following:

"When a motion to dismiss for failure to state a claim upon which relief can be granted presents matters outside the pleading and such matters are not excluded by the court, the motion shall be treated as a motion for summary judgment and disposed of as provided in Rule 56. Provided however, that the court shall consider only such matters outside the pleadings as are specifically enumerated in Rule 56. All parties shall be given reasonable opportunity to present all materials made pertinent to such a motion by Rule 56."

In Petrey v. Simon (1983), 4 Ohio St. 3d 154 the syllabus provides:

"1. *HN10*A court must notify all parties when it converts a motion to dismiss for failure to state a claim into a motion for summary judgment. **[\*18]** (Civ. R.12(B), applied and construed.)

2. A court must notify all parties that it has converted a motion to dismiss for failure to state a claim into a motion for summary judgment 'at least fourteen days before the time fixed for hearing.' (Civ. R.12(B) and 56(C), applied and construed.)"

From an examination of the record herein, including the transcript of proceedings, it no where expressly appears that the court below converted the motion to one for summary judgment. The only indication that the court intended a conversion, sub silento, is the recital in the entry that it considered in addition the second amended complaint "the proffered Third Amended Complaint; the arguments of counsel; the

Affidavit of Paul Mahron; the course of proceedings herein, including the pleadings, motions, materials properly filed in support of the motions; and other papers properly filed herein." Aside from the failure to give notice of the conversion, it is not discernible whether, if converted, review was confined to the matters specifically enumerated in Civ. R.56.

If there was an attempted conversion it was not effective, therefore we confine our review under the standard of whether it appears **[*19]** beyond all doubt that appellant could prove no set of facts under the averments of the second amended complaint entitling it to recover.

U.S. Fire argues that inasmuch as actual discovery of the fraud is averred in the complaint to have occurred on April 27, 1980, and since the bond coverage, as disclosed by the bonds attached to the complaint, was only as to loss discovered within 4 the dates the bonds were in effect, i.e. September 5, 1974 to September 5, 1977, suit was required to be filed in twenty-four months after discovery of the fraud and was not, the Civ. R.12(B) (6) motion should be granted.

The difficulty we perceive in such argument is that the effective date of the bonds does not appear in the complaint, but appears in the record only by affidavit separately filed on December 17, 1981. Since we cannot, under the complaint as worded, hold that beyond doubt appellant could present no facts upon which it could recover, we hold the court erred in granting the motion to dismiss and sustain the second assignment of error.

Appellant's third assignment of error argues the trial court abused its discretion in denying appellant leave of court to file a third amended complaint.  **[*20]**  *HN11*

Civ. R.15(A) governs amendments to pleadings and provides in relevant part:

"A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within twenty-eight days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party. Leave of court shall be freely given when justice so requires."

*HN12*In that a responsive pleading had been filed, Civ. R.15(A) requires leave of court to file an amended complaint. The granting or denial of leave of court to file an amended 5 complaint is a matter committed to the sound discretion of the trial court and will be reversed on appeal only where there is demonstrated an abuse of discretion. However, under Civ. R.15(A), "leave shall be freely given when justice so requires." See 6 Wright and Miller, Federal Practice and Procedure, Section 1484, p.417-418.

Leave to amend a complaint may be properly denied where the complaint which the party seeks leave of court to file would **[*21]** be subject to a motion to dismiss. 6 Wright & Miller, supra, section 1487, p.433. In Neighborhood Development Corp. v. Advisory Council on Historic Preservation (1980 6th Cir.), 632 F.2d. 21, 23, the court states as follows:

"It is well settled that the district court may deny a motion for leave to amend a complaint if such complaint, as amended, could not withstand a motion to dismiss.

Bacon v. California, 438 F.2d 637 (9th Cir. 1971) (per curiam); Deloach v. Woodley, 405 F.2d 496 (5th Cir. 1969) (per curiam)."

Similarly, in Gaffney v. Silk (1973 1st Cir), 488 F.2d. 1248, 1251, the court states as follows:

"It is within this legal framework that we must examine the district court's dismissal of the instant complaint on the grounds of official immunity, and its subsequent refusal to grant plaintiffs' motion to amend. As to the latter, we note that [HN13] while permission to amend a complaint after dismissal of the action rests in the sound discretion of the court, Hurd v. DiMento & Sullivan, 440 F.2d 1322, 1323 (1st Cir.), cert. denied, 404 U.S. 862, 92 S.Ct. 164, 30 L.Ed. 2d 105 (1971), rehearing denied, 404 U.S. 961, 92 S.Ct. 321, 30 L.Ed. 2d 281 (1971), [*22] amendment to correct a deficiency in pleading should be 'freely given when justice so requires,' Fed. R.Civ. P.15(a); see Bonanno v. Thomas, 309 F.2d 320, 322 (9th Cir. 1962); Lone Star Motor Import Inc. v. Citroen Cars Corp., 288 F.2d 69, 75 (5th Cir. 1961), particularly where the 6 action arises under the Civil Rights Act. Cf. Escalera v. New York City Housing Authority, 425 F.2d 853, 857 (atD CIR.), cert. denied, 400 U.S. 853, 91 S.Ct. 54, 24 L.Ed.2d 91 (1970). Where the amended complaint would state a valid cause of action, a motion to amend should normally be granted. Wright, Federal Courts, 239-240 (1963). See Lone Star Motor Import, Inc. v. Citroen Cars Corp., supra, 288 F.2d at 77."

A review of the transcript of the December 21, 1981 hearing discloses that the trial judge denied appellant leave of court to file an amended complaint upon the ground that such complaint failed to state a claim for relief, although the trial court did not articulate the reason for such conclusion.

The material difference between appellant's second and third amended complaints is the allegation in the third amended complaint that "a suspicion arose that defendant Mitchell had committed [*23] fraudulent and dishonest acts to the Plaintiff's detriment, which suspicion crystallized into knowledge or belief of fraud on or immediately prior to November 3, 1977, . . ."

U.S. Fire contends that the third amended complaint fails to state a claim upon which relief can be granted upon the ground that the appellants failed to institute suit within twenty-four months of the discovery of the loss as required by the bond policy.

Although we agree with the authorities cited by U.S. Fire that such limitation clauses are enforceable, we further note that such clauses are subject to waiver and estoppel. See, Hounshell v. American States Insurance Co. (1981), 67 Ohio St. 2d 427. The third amended complaint alleges, in effect that while policy provisions as to notice and proof of loss were waived or not subject to enforcement by the doctrine of estoppel, no averments 7 appear as to waiver or estoppel to assert the twenty-four month contractual limitation provision. Absent such averments, the third amended complaint would be subject to a motion to dismiss for failure to state a claim upon which relief could be granted.

The appellee contends that the issue presented in this assignment [*24] of error was fully litigated in the affidavit of disqualification of the trial judge when the Chief Justice of the Supreme Court dismissed the affidavit of prejudice, and that appellants are precluded from making such argument herein.

The affidavit of disqualification was filed pursuant to R.C. 2701.03. Under R.C. 2701.03

"the Chief Justice, or any judge of the Supreme Court designated by him, shall pass upon the disqualification of the judge pursuant to Section 5 (C) of Article IV, Ohio Constitution . . ."

Upon our view, the review of the Chief Justice or his designate under R.C. 2701.03 is merely a review of the merits of the grounds of disqualification and is not a review of the merits of any alleged error.

U.S. Fire further contends that the third amended complaint was not made in good faith in that appellant is substituting the dates of the discovery of the fraud solely to prevent dismissal. The record does disclose that appellant has vacillated in their position with respect to the date that suspicion of fraud arose to actual discovery of the fraud and loss. The record further discloses the complexity of determining such date. The appellants contend that the defect in **[*25]** the second 8 amended complaint was caused by a failure in communications between appellant's local counsel and appellant's trial counsel from Columbus, Ohio. The record does disclose appellant's trial counsel's withdrawal from the case on November 30, 1981. Upon the complex record, we are not persuaded that it is sufficiently manifest to justify us to hold that appellant's third amended complaint was tendered in bad faith.

In Peterson v. Teodosio (1973), 34 Ohio St. 2d. 161, the sixth paragraph of the syllabus reads as follows:

"6. HN14It is an abuse of discretion for a court to deny a motion, timely filed, seeking leave to file an amended complaint, where it is possible that plaintiff may state a claim upon which relief may be granted and no reason otherwise justifying denial of the motion is disclosed."

In light of our sustaining the second assignment of error respecting the dismissal of the second amended complaint, and while we conclude no error was committed in denying the filing of the third amended complaint as presently worded, on remand appellant should be given the opportunity to seek leave to file an amended complaint to remedy the deficiencies herein noted which the **[*26]** trial court, in exercising its discretion in granting or denying leave, should do so in light of Peterson v. Teodosio, supra. Appellant's third assignment of error is overruled.

Appellant's fourth assignment of error argues the trial court erred in granting Mitchell's motion to quash subpoenas and granting Mitchell's motion for a protective order.

On January 16, 1981, appellant gave notice to take the deposition of Mitchell and his wife on February 13, 1981. Subpoenas 9 duces tecum were issued to Mitchell and his wife requesting them to bring various financial records and tax returns from 1964 to the present date. Mitchell filed a motion to quash the subpoenas duces tecum upon the grounds the subpoenas were unreasonable and oppressive, an invasion of privacy, and the information requested was irrelevant. On February 20, 1981, a judgment entry was filed sustaining Mitchell's motion to quash.

On February 25, 1981, appellant filed a second notice to take the deposition of the Mitchell's. Subpoenas duces tecum were filed requesting the production of financial and tax documents from 1975 to the present. Mitchell filed a second motion to quash the subpoenas duces tecum upon identical **[*27]** grounds as before. Mitchell further requested a protective order prohibiting appellant from inquiring of Mitchell or his wife into their financial status. The trial judge sustained the motion to quash upon the

ground that the material requested was not relevant and would result in an invasion of privacy.

[HN15] Civ. R.45(B) provides for the issuance of a subpoena duces tecum:

"A subpoena may also command the person to whom it is directed to produce the books, papers, documents or tangible things designated therein; but the court, upon motion made promptly and in any event at or before the time specified in the subpoena for compliance therewith, may (1) quash or modify the subpoena if it is unreasonable and oppressive or (2) condition denial of the motion upon the advancement by the person in whose behalf the subpoena is issued of the reasonable cost of producing the books, papers, documents or tangible things."

[HN16] Civ. R.45(D) provides for the issuance of a subpoena for the taking of a deposition and provides as follows:

"(1) When the attendance of a witness before an official authorized to take depositions is required, the subpoena shall be issued by such person and shall command the [*28] person to whom it is directed to attend and give testimony at a time and place specified therein. The subpoena may command the person to whom it is directed to produce designated books, papers, documents or tangible things which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Rule 26(B), but in that event the subpoena will be subject to the provisions of Rule 26(C) and subdivision (B) of this rule.

(2) A person whose deposition is to be taken may be required to attend an examination in the county wherein he resides or is employed or transacts his business in person, or at such other convenient place as is fixed by an order of court."

[HN17] Civ. R.26(B) and (C) provide, in relevant part, as follows:

"(B) Scope of discovery. Unless otherwise ordered by the court in accordance with these rules, the scope of discovery is as follows: (1) In general. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, [*29] description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

* * * *

[HN18] (C) Protective orders. Upon motion by any party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; (5) that

discovery be conducted with no one present except **[\*30]** persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; <sup>HN19</sup>(7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

<sup>HN20</sup>If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery. The provisions of Rule 37(A) (4) apply to the award of expenses incurred in relation to the motion."

<sup>HN21</sup>In determining whether the subpoena duces tecum issued for a deposition is unreasonable or oppressive requires application of Civ. R.26(B) to determine whether the documents sought come within the scope of discovery permitted under Civ. R.26(B). See 9 Wright & Miller, supra, Section 2457, p.431.

Mitchell claims that the documents appellant seeks discovery upon are not relevant under Civ. R.26(B) (1). The standard for determining relevancy urged by Mitchell is Evid. R.401. We reject such contention. **[\*31]** The Civil Rules and the commentators are in unanimous agreement that <sup>HN22</sup>the scope of discovery under Civ. R.26(B) (1) is not limited to matters which are admissible into evidence, but extend to all matters "not privileged, which is relevant to the subject matter involved in the pending action . . .". 9 Wright & Miller, supra, section 2457, p.433, 5A Moore, Moore's Federal Practice, Section 4505 (2), p.45-44, 5 Anderson's Ohio Civil Practice, Section 179.11, p.254.

Mitchell makes no claim that the material sought is privileged. Appellant claims that the financial records of appellee are relevant to the issue of punitive damages and to the issue of fraud of Mitchell in approving the loans in question herein.

We conclude that under the broad scope of discovery under Civ. R.26(B) (1), the material sought is relevant to the subject matter involved in the pending action, and is therefore within the permissible scope of discovery.

We next determine whether the subpoenas duces tecum were "unreasonable and oppressive" under Civ. R.45(B). Mitchell contends that the material sought in the subpoena duces tecum results in an invasion of privacy.

"<sup>HN23</sup>The burden to establish **[\*32]** that a subpoena duces tecum is unreasonable or oppressive is on the person who seeks to have it quashed. He cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of compliance." 9 Wright & Miller, Section 2457, p.435; Goodman v. United States (1966 9th Cir.), 369 F.2d. 166.

Mitchell does not show in any manner or the extent to which the disclosure of the materials will result in an invasion of privacy to the extent that compliance with the subpoena would be unreasonable and oppressive.

In Anderson's Ohio Civil Practice, supra, Section 179.11, p.255, the authors state as follows:

"<sup>HN24</sup>Normally, the desirability of quashing a subpoena rests, not in the impropriety

of reaching the document requested, but in the effort required to collect and produce the documents or things. When it appears that the effort will be expended without any significant result in the resolution of the issues of the case, a subpoena duces tecum would seem unreasonable and oppressive. Where the effort is great, but the documents serve the purpose of resolution of the issues, there is **[*33]** little basis for a claim of unreasonableness or oppression in having to respond to a subpoena for the production of documents. The court is given an effective technique in the authorization to require the subpoenaing party to advance the cost of producing the items as a condition of allowance of the subpoena. The concept has the potential for eliminating nonmeritorious requests.The application of the cost advancement technique will probably vary with whether the subpoena is directed to a party or to a witness who is not a party."

Given the nature of the appellant's claims against Mitchell for fraud, the material sought to be disclosed, including Mitchell's financial records and business records in regard to his relationship to the debtors who obtained the loans alleged to have been fraudulently made leads us to conclude that the trial court erred in granting the motion to quash with respect to subpoenas duces tecum as to documents in the 1975 et sec time frame. Likewise, the error is sustained with respect to the refusal to require Mr. and Mrs. Mitchell to answer deposition questions insofar as such questions are consistent with the conclusions of this court herein respecting scope **[*34]** of discovery.

Having sustained appellant's assignments of errors, we next consider the cross assignments of error of U.S. Fire and Mitchell.

Mitchell's cross-assignment of error reads as follows:

"The Trial Court erred in denying Appellant's (Mitchell's) Motion for Summary Judgment based on statute of limitations"

U.S. Fire's cross-assignment of error is the following:

"The Trial Court erred in failing to enter summary judgment in favor of defendant, U.S. Fire, on the grounds that First Bank failed to commence this action within four years of the discovery of the alleged fraud as required by § 2305.09, R.C., and on the grounds that First Bank failed to commence this action within twenty-four months of the discovery of the alleged loss through dishonest and fraudulent conduct as required by Section 4 of the bonds issued by U.S. Fire."

The order granting dismissal of the claim of appellant against U.S. Fire was entered January 4, 1982, and notice of appeal was filed by appellant on February 1, 1982. On February 5, 1982, U.S. Fire filed a notice of cross-appeal from the order of September 29, 1981, overruling its motion for summary judgment. The cause remained pending against **[*35]** Mitchell until judgment on the pleadings was entered in favor of Mitchell on April 19, 1982. Upon appeal being taken by appellant from the latter judgment, Mitchell then timely filed his cross-appeal.

HN25☞An overruling of a motion for summary judgment is not a final order, Overmyer v. Walinski (1966), 8 Ohio St. 2d. 23. The order of dismissal of the Civ. R.12(B) (6) motion of U.S. Fire was made final pursuant to Civ. R.54(B) and thus subject to immediate review even though the action remained pending against Mitchell. Whether such certification was sufficient to permit appellee U.S. Fire, to whom the order was

favorable, to invoke the jurisdiction of this court as to the predecessor interlocutory order entered against it would appear to be a moot question in Ohio Cf. Balson v. Dodds (1980), 62 Ohio St. 2d 287. The issue not having been raised by any parties, and giving consideration to the fact that U.S. fire was at that point dismissed as a party and should at some time have the right of review of the summary judgment order, we resolve the issue in favor of U.S. Fire and review both motions for summary judgment on the merits.

The discovery procedures in the case **[*36]** through various discovery devices, i.e. interrogatories, requests for admission, deposition, stipulation, etc., was ongoing and very relevant material, particularly the bank examination reports, was entered into the record after the motions for summary judgment. We are necessarily confined to the matters properly before the court at the time of disposition of the motions including consideration of the averments of the first amended complaint, but not the averments in the amended complaints subsequently filed after denial of the motions.

It is, of course, fundamental that ^HN26^summary judgment under Civ. R.56 will be rendered only if there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. The burden of showing that no genuine issue of material fact **[*37]** exists falls upon the party requesting summary judgment. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St. 2d 64.

Both appellees contend that the four year statute of limitations for fraud under R.C. 2305.09 is applicable herein and that appellant's complaint, filed on April 28, 1980 was not filed prior to the expiration of the statute of limitations.

^HN27^Under R.C. 2305.09, the four year statute of limitations for fraud does not begin to run until the fraud is discovered. Under R.C. 2305.09, the terms "until the fraud is discovered" has been generally held to mean actual discovery of the fraud or what should have been discovered by the exercise of due diligence, 34 Ohio Jr. 2d., Limitations of Actions, Section 85, p.561.

The appellant essentially contends that although the fraudulent acts occurred more than four years prior to the filing of the complaint, knowledge by appellant of the fraud was not obtained more than four years prior to instituting this action.

The decision of the trial court states, inter alia,

"The motions are overruled because the defendants did not sustain the heavy burden of proof upon them. After construing the evidence most strongly in plaintiff, **[*38]** First Bank of Marietta's favor, reasonable minds cannot come to but one conclusion and that against First Bank. Civ. R.56 (c).

The Court cannot so conclude against First Bank, that it failed to bring suit for fraud within four years after the cause accrued. R.C. 2305.09. Fraud is dishonest deceit. The cause accrues under this statute when the party actually discovers or should have discovered the fraud, with due diligence. Here the discovery must have consisted of the perception of the qualities of fraud or deceit in transactions by the directors

functioning as a board.In this regard, the motions' documents do not sustain the burden of proof."

Other than that set forth above upon the issue, the court below did not make findings by reference to which matters of evidence created the disputed issue of material fact. While admittedly no findings are technically required, see Civ. R.52, given the novel and extensive documentation by the parties, particularly the 115 documents submitted by U.S. Fire, it would have been helpful in this review had this been done and federal courts have expressed similar views, particularly upon a complex record. See 23 Federal Practice and **[*39]** Procedure (Wright-Miller-Kane), Sec. 2716, page 647, et sec, Ft.9.

We have undertaken to review the evidentiary material submitted by the parties.

The material submitted by U.S. Fire, in addition to its memorandum, consists of an Appendix labeled as follows: (A) a chronology of pertinent events commencing on January 8, 1973, up to the time of filing the initial complaint; (B) stipulations of counsel as to the correctness of 86 documents consisting of 53 copies of board minutes, bank officer memorandums, letters and various agreements, correspondence between U.S. Fire and appellant, the stipulation, however, reserving the right to object as to relevancy and materiality; (C) selected excerpts from answers to interrogatories; (D) and (E) request for admission but without responses thereto included; (F) proceeding in U.S.A. v. James Mitchell Case No. CR-2-77-42, United States District Court.

In support of his motion for summary judgment, Mitchell filed affidavits, upon which both appellees rely, of John Barry and Richard Hills, former members of appellant's board of directors, that essentially receite that at enumerated board meetings the actions of Mitchell upon which **[*40]** the various counts of the complaint are based, were fully discussed. The date of such discussions was prior to four years of the filing date of appellant's complaint.

Additionally, an affidavit of Mitchell was filed in support of the motion for summary judgment together with minutes of various board meetings, a memorandum by James T. Cohernour, a bank officer and a Report of the Examining Committee of the bank. The above matters clearly tend to establish knowledge by appellant of the acts of Mitchell, upon which the complaint is based, and asserted as fraud, more than four years prior to suit.

Appellant, in opposition to the motions filed lengthy memorandum, affidavits of bank officers Richard L. Metz and A. Patrick Tonti, depositions of John M. Barry and Richard R. Hille, which were the same bank directors whose affidavits were filed by Mitchell in support of the summary judgment. In summary, and excluding the hearsay affidavit of Metz, and the hearsay part of Tonti's affidavit, see Civ.R.56(E), appellant's evidence tended to establish that while factual matters asserted in the complaint were known to appellant prior to suit and reflected poor banking judgment on the part of **[*41]** Mitchell, such facts were insufficient to establish knowledge that Mitchell's actions were dishonest in breach of his fiduciary duty and fraudulent. This is supported, at least in part, by the Barry and Hille depositions.

We have no doubt that reasonable minds could very fairly find, particularly with respect to the treasury note transaction, that appellant knew, or in the prompt exercise of due diligence should have discovered, the alleged fraud and instituted suit

prior to April 28, 1980. The pivotal question is whether, although reasonable minds could reach such conclusion, it was, as a matter of law, the only conclusion that reasonable minds could reach.

While the question is admittedly close, considering all of the evidentiary matters before the court below, and construing it, as we must with all reasonable inferences, most strongly in favor of appellant, we are persuaded to the conclusion, as did the court below, that reasonable minds could differ in regard to whether appellant had either discovered or should have discovered by the exercise of diligence, the fraud prior to four years of instituting the action. Accordingly, we hold that the trial court did not **[*42]** err in denying appellees' motions for summary judgment upon the ground of statute of limitations. Accordingly, Mitchell's cross assignment of error is overruled and that of U.S. Fire in part.

U.S. Fire additionally contends that the trial court erred in overruling the motion for summary judgment upon the grounds that suit had not been instituted within twenty-four months of the "discovery of the loss". The bonds contained the following provision:

"At the earliest practicable moment after discovery of any loss hereunder the Insured shall give the Underwriter written notice thereof and shall also within six months after such discovery furnish to the Underwriter affirmative proof of loss with full particulars. Legal proceedings for recovery of any loss Hereunder shall not be brought prior to the expiration of sixty days after such proof of loss is filed with the Underwriter nor after expiration of twenty-four months from the discovery of such loss. If any limitation embodied in this bond is prohibited by any law controlling the construction hereof, such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by **[*43]** such law."

Thus, the requirement for suit within twenty-four months is triggered by the discovery of loss.

The decision of the trial court in denying summary judgment upon such ground states the following:

"The Court cannot conclude by the required degree of proof that First Bank did not start suit against U.S. Fire within twenty-four months of discovery of loss through Mitchell's dishonesty or fraudulent act. As with the statute of limitations question, the burden of proof has not been sustained."

*HN28* ✦For purposes of fidelity bonds, discovery of the loss occurs when the fraud is discovered. Central National Life <u>Insurance Co. vs. Fidelity and Deposit Co. of Maryland (1980 7th Cir.), 626 F.2d 537;</u> <u>FDIC v. Aetna Casualty and Surety Co. (1970 5th Cir.), 426 F.2d. 729.</u>

The record discloses that on November 3, 1977, which is more than twenty-four months prior to suit on April 2, 1980, A. Patrick Tonti, as president of appellant bank, sent a letter to the adjusting agent for U.S. Fire reciting, inter alia, that "The following is the outline of the fraudulent and dishonest acts of James C. Mitchell, former President of First Bank of Marietta:" Thereafter is enumerated **[*44]** the details of the United States Treasury transaction, the illegal utilization of the escrow account, and the amount for Martini Packing Company, Cambridge Ramada, Inc., Southgate Homes, Inc., Sam Bucky and others, the making of enumerated loans to Sharp, Martini and

Bucky, the concealment of a loan to Jack M. Cline, and a loan to Fairmount Leasing Corp. for the benefit of Sam Bucky.

In that as of November 3, 1977, appellant was fully aware of the fraudulent and dishonest nature of Mitchell's actions, we hold the court below was in error in its conclusion that U.S. Fire failed to prove suit was not brought within twenty-four months of discovery of loss.

However, we must further consider whether there was sufficient evidence in the summary judgment record upon which reasonable minds might differ as to whether material issues of fact existed respecting waiver or estoppel by U.S. Fire from enforcement of the contract limitations.

The first amended complaint did not aver a date of discovery of fraud. While Count V did essentially aver an estoppel from U.S. Fire "denying liability under the bonds" and a waiver of notice and proof of loss by U.S. Fire, it was not specifically averred **[*45]** by appellant that its averment of estoppel or waiver applied to the twenty-four month limitation provision for suit. However, inasmuch as $^{HN29}$ pursuant to Civ. R.8(D) averments in a pleading to which no responsive pleading is required or permitted is taken as denied or avoided and that no reply to an answer is allowed unless ordered by the court, and none was ordered herein, we conclude appellant was not precluded from asserting waiver or estoppel of the contractual limitation for suit. See <u>Schafer v. Buckeye Union Insurance Company (1979), 381 N.E.2d 519</u> (App. Ind.).

We further conclude a reasonable inference exists so that reasonable minds could differ upon such issues. We note particularly that after first receiving initial notice in 1976, the detailed notice to it on November 13, 1977 of fraudulent conduct by Mitchell, it did not deny liability until February 25, 1980. The correspondence between appellant and U.S. Fire in the record which on-going reflects that as late as October, 1979, accountants were hired by U.S. Fire in investigation of the claim, and that on May 14, 1979, additional proof of loss forms were sent to appellant. At no time prior to the denial **[*46]** of the claim on February 25, 1980, did U.S. Fire give notice it was asserting the 24 month limitation as a defense even though it was delaying a determination of liability and engaging in further investigation up to that time. Such action necessarily held out a hope of adjustment without suit. See <u>Union Indemnity Co. v. Gaines (1930) 36 Ohio App. 165, 18</u> Couch on Insurance 833, Sec. 75-198. While it is true that U.S. Fire stated it was not waiving any rights under the policies, such non-specific statements would not, in our view, entitle it to judgment on the issue as a matter of law.

Accordingly, the cross-assignment of error of U.S. Fire is overruled.

**DISSENTBY:** GREY, J.

**DISSENT:** GREY, J. DISSENTING:

I must respectfully dissent from the majority opinion. I would sustain both cross assignments of error because the statute of limitations has run.

The rule that in a fraud case the statute of limitations begin to run from the time of discovery is a sensible rule because it takes into account that people who commit frauds often conceal their actions from their victims. But if discovery alone were the test, there would be almost no limitation on actions for fraud, and thus there is **[*47]**

corrolary to discovery, or due diligence in making the discovery.

Suspicion alone will not substitute for knowledge of the facts. Friedman vs. Meyer (1977), 482 F.2d 439. And the question of whether a person had knowledge of facts or mere suspicions is usually a mixed question of law and fact, Erbe vs. Lincoln Rochester Trust (1957), 3 N.Y.2d 321, 140 N.E.78, and hence not a proper subject for summary judgment.

However, the discussion in 37 Am. Jur. 2d 410, Fraud, and the case cited therein show that it is not sufficient to allege ignorance at one point and discovery at another. Nor is it sufficient to merely allege inability to discover the fraud, or concealment by the perpetrator. Rather the plaintiff must at least allege due diligence, or the inability to have discovered the fraud by due diligence.

In Day Co. Corp. vs. Goodyear (1975), 523 F.2d 389, the Sixth Circuit said, at page 394:

"The Supreme Court case of Wood vs. Carpenter, supra, long ago established the standards for pleading fraudulent concealment. The Court said that an injured party has a positive duty to use diligence in discovering his cause of action within the limitations period. Any **[*48]** fact that should excite his suspicion is the same as actual knowledge of his entire claim. Indeed, 'the means of knowledge are the same thing in effect as knowledge itself.' 101 U.S. at 143. If the plaintiff has delayed beyond the limitations period, he must fully plead the facts and circumstances surrounding his belated discovery 'and the delay which has occurred must be shown to be consistent with the requisite diligence.' 101 U.S. at 143."

and at page 394:

"Under F.R.Civ. P.9(b), the party alleging fraudulent concealment must plead the circumstances giving rise to it with particularity. Three elements must be pleaded in order to establish fraudulent concealment: (1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts. Weinberger v. Retail Credit Co., 498 F.2d 552 (4th Cir. 1974)."

There is no allegation of diligence, and indeed no showing of it. Construing the evidentiary material most favorably toward plaintiff reasonable minds can only conclude that in November, 1975 **[*49]** the Board of Directors knew about the improper loans to Southgate, Cambridge Ramada, Globe, Martini, etc. In February, 1976, they knew about the illegal treasury bill transactions having been told by federal authorities that they were illegal. Again in March, 1976 when these matters were "fully discussed" by the Directors the impropriety was obvious. Here is the Board of Directors of a bank faced with over $947,000.00 in bad loans and $400,000.00 is misappropriated funds, a Board which had been told by other employees that its president was not following bank policy, a Board which did not become "suspicious" until told by bank examiners of the violations in May. No reasonable mind could find that to be due diligence.

In Militsky vs. Merrill Lynch (1980), 540 F.Supp. 783, where a simple inexperienced investor watched his brokerage account shrink from $104,000.00 in 1966 to $4,000.00 in 1972, it was held that summary judgment would be granted against his claim of due

diligence. Militsky rested on the idea that because he was getting monthly statements from Merrill-Lynch he knew what was happening, i.e. he had all the facts. In this case, the Board also had all the facts **[*50]** in November of 1975. Nothing new was discovered in May, except that the Superintendent of Banks would not tolerate such practices.

The complaint and first amended complaint would clearly be barred by the statute of limitations.The second amended complaint alleges suspicions in May 1976 and confirmation in November 1976. I find no allegations of plaintiff's diligence in attempting to discover what Mitchell was doing, of the method of concealment or why the fraud was not discovered.

What I do find is, in the second amended complaint, barefaced unsupported allegations of suspicions which appear to have been added to the second amended complaint solely to prevent application of the statute of limitations.

Bare allegations in a complaint unsupported by any evidentiary material are not sufficient on a motion for summary judgment. Siegler vs. Siegler (1979), 63 O.App. 2d 76; Reynoldsburg vs. Columbus (1972), 32 O.App. 2d 271.

Based on the foregoing I would sustain Mitchell's cross assignment of error, and U.S. Fire;s cross assignment of error. I would also therefore overrule First Bank's assignments of error one and two on their merits, and assignments of error three **[*51]** and four as not being prejudicial.

Hence I respectfully dissent.