1          Q.    Did you object to paying him $800?

2          A.    Well, I thought I had to pay him

3     $800.  That's what I was told.

4          Q.    Did you object to him, you paying

5     him $800 at that closing?

6          A.    At that time, I didn't raise no

7     objections to it.

8          Q.    And you say that you lost the equity

9     in your home?

10         A.    Yes.

11         Q.    And did you raise this with Mr.

12    Bigelow at any time?

13         A.    No, I didn't find out about that

14    until later.

15         Q.    Didn't find out that you lost the

16    equity in your home until later?

17         A.    Yes, because I never owned, I never

18    had property like that before.  My other house

19    which I sold that was between me and my

20    ex-husband.  Then he took care of all of that,

21    I never had to do it on my own.

22         Q.    So who told you that you lost equity

23    in your home?

24         A.    After I sit down and went through it

25    and was going through the papers, and I started

1    getting calls from different loan companies

2    about getting my mortgage rate lowered and

3    everything, I was talking to one and they told

4    me, because I told them that I had owned the

5    house previously and what I owed on it and sold

6    it and bought it back; and that's when I find

7    out about that equity.

8        Q.    And when did that happen?

9        A.    That had to be about the early part

10   of this year.

11       Q.    Early part of this year?

12       A.    Uh-huh.

13       Q.    And did you contact Mr. Bigelow

14   about that?

15       A.    No.

16       Q.    Did you contact anybody about

17   that?

18       A.    No.

19       Q.    Have you ever reported that to

20   anyone?

21       A.    I talked to several people about it

22   but I never reported it.

23       Q.    Ever contact a lawyer about that?

24       A.    I talked to some friends.

25       Q.    Do you have friends who are

1    lawyers?

2              A.    Yes.

3              Q.    Who is that?

4              A.    Different ones that I know, Chesley.

5              Q.    You talked to Mr. Chesley?

6              A.    He might remember, he might not.  I

7    talked to him and I talked to --

8              Q.    When did you talk to Mr. Chesley?

9              A.    It's been a while since I talked to

10   him.  I don't think it's been this year, early

11   part of this year.

12             Q.    You found out about it, when did you

13   say?

14             A.    I found out about it early part of

15   this year.

16             Q.    Early part of this year and when did

17   you talk to Mr. Chesley?

18             A.    I didn't see him, I talked to his

19   sister.

20             Q.    I'm sorry, you said you talked to

21   several lawyers.

22             A.    I know him.  I talked to several

23   lawyers that are friends of mine.  They didn't

24   handle this, I asked them about, I even talked

25   to a lawyer that's with Young, Martin, and

```
1        Mays.
2              Q.    Who is that?
3              A.    But they don't handle it, Steven
4        Rosenbeck, he handled the case for my mother,
5        but they didn't know any, they were going to
6        refer me to someone else.
7              Q.    When did you talk to Steven
8        Rosenbeck?
9              A.    I talked to Steven Rosenbeck about
10       the early part of this year.
11             Q.    You said several friends of yours
12       who are lawyers that you've talked to.  You've
13       named Mr. Chesley, who else?
14             A.    Chesley, Rosenbeck that's about,
15       those are the main, I mainly talked to
16       Rosenbeck since he handled my mother's things.
17                   MR. LABER:  Nothing else.
18                   MR. SCHWANTES:  I don't have any
19       other questions.
20                   MR. LABER:  I'm going to request
21       it.
22                   MR. SCHWANTES:  You have the
23       opportunity to review your deposition if there
24       are any errors, and to look through it and sign
25       it, if that's something that you prefer to do.
```

1    He's requested that you have signature.    You

2    agree to that?

3                          THE WITNESS:    Okay.

4                          (Deposition concluded at 5:25

5    p.m.)

6

7

8

9

10    _____

                                    SHIRDENIA BRYANT

11                    *    *    *    *    *

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              C E R T I F I C A T E
   STATE OF OHIO
2                          SS:
   COUNTY OF MONTGOMERY

3

4

5

6

7          I, Paula A. Blosser, the undersigned, a
   Registered Professional Reporter, and Notary
8  Public within and for the State of Ohio, do
   hereby certify that before the giving of
9  aforesaid deposition, said SHIRDENIA BRYANT,
   was by me first duly sworn to depose the truth;
10 the whole truth, and nothing but the truth;
   that the foregoing is the deposition given at
11 said time and place by said SHIRDENIA BRYANT;
   that said deposition was taken in all respects
12 pursuant to the agreement and stipulations of
   counsel hereinbefore set forth; that said
13 deposition was taken in stenotypy by the court
   reporter and transcribed into typewriting under
14 her supervision; that the transcribed
   deposition is to be submitted to the witness
15 for her examination and signature; the court
   reporter was neither a relative of nor attorney
16 for any of the parties to the case, nor
   relative of nor employee for any of the
17 counsel; neither the court reporter nor the
   affiliated court reporting firm has a financial
18 interest under a contract as defined in Civil
   Rule 28 (D).

19
          IN WITNESS WHEREOF, I herein set my hand
20 and official seal of office this 15th day of
   January, 2002.
21
   My commission expires ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
22 March 31, 2005              Paula A. Blosser
                      Notary Public, State of Ohio
23

24

25


              WWW.BRITTONANDASSOCIATES.COM

DAYTON - (937) 228-3370   CINCINNATI - (513) 651-3370

1

2                    PLEASE USE THIS ERRATA SHEET TO
    MAKE ANY AND ALL CORRECTIONS, BY LISTING
3   THE PAGE NUMBER, LINE NUMBER AND THEN A BRIEF
    DESCRIPTION OF THE ERROR.   PLEASE DO NOT MAKE
4   ANY MARKS OR  CORRECTIONS ON THE TRANSCRIPT.
    IF NEEDED USE THE BACK OF THIS SHEET.
5                    UPON COMPLETION PLEASE SIGN AND
    DATE THIS SHEET AT THE BOTTOM. THANK YOU.

6

7   _____

8   _____

9   _____

10  _____

11  _____

12  _____

13  _____

14  _____

15  _____

16  _____

17  _____

18  _____

19  _____

20  _____

21  _____

22  _____

23  _____

24  _____

25  SIGNATURE:_____DATE:_____

# SETTLEMENT STATEMENT
## 1107 LAIDLAW AVENUE
### CINCINNATI, OHIO 45237
January 27, 1998

## SELLER(S)

Sales Price

$ 36,154.98

Deductions

| | | |
|---|---|---|
| - Principal balance of Mortgage Assumed (Purchaser) | ($ 14,884.88) | |
| - Real estate tax proration (1/1/97-1/27/98) - Purchaser(s) | ( 871.98) | |
| - Attorney Fees (Estate of Johnie Worthy) - John R. Meckstroth, Jr. | ( 150.00) | |
| - Filing and Recording Costs (Estate of Johnie Worthy) - Probate Court, Auditor and Recorder | ( 25.00) | |
| - Estate Tax (Estate of Johnie Worthy) - Hamilton County Treasurer | ( 83.12) | |
| - Principal of Promissory Note - Purchaser(s) | ( 19,000.00) | |
| - Transfer tax - Hamilton County Auditor | ( 90.00) | |
| - Deed Preparation – John R. Meckstroth, Jr. | ( 50.00) | |
| Total Deductions | ($ 35,154.98) | |

Balance Due to Seller(s)

$ 1,000.00

## PURCHASER(S)

Purchase Price

$ 36,154.98

Deductions and Credits

| | | |
|---|---|---|
| - Principal Balance of Mortgage Assumed - Seller(s) | ($ 14,884.88) | |
| - Principal of Promissory Note - Seller(s) | ( 19,000.00) | |
| - Real Estate Tax Proration - (1/1/97 - 1/27/98) - Seller(s) | ( 871.98) | |
| Total Deductions | ($ 34,756.86) | |

Charges and Expenses

| | | |
|---|---|---|
| - Attorney Fees - John R. Meckstroth, Jr. | $ 295.00 | |
| - Recording Costs (deed) - Hamilton County Recorder | 14.50 | |
| Total Charges and Expenses | $ 309.50 | |

Balance Due from Purchaser(s)

$1,707.62



PLAINTIFF'S DEPOSITION EXHIBIT
PENGAD-Bayonne, N.J.
1 Bryant
12-18-01

EXHIBIT
7
LL-STATE LEGAL

# SETTLEMENT STATEMENT
Page 2

## SUBSTITUTE FORM 1099 SELLER STATEMENT

The information contained on Page 1 of this Closing Statement is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.

## SELLER INSTRUCTIONS

If this real estate was your principal residence, file Form 2119, Sale or Exchange of Principal Residence, for any gain, with your income tax return; for other transactions, complete the applicable parts of Form 4797, Form 6252 and/or Schedule D (Form 1040).

The undersigned acknowledge receipt of a copy of this Closing Statement and agree to the correctness thereof.

SELLER(S):

Shirdenia Bryant

PURCHASER(S):

Prescott Bigelow IV

Prepared by:
John R. Meckstroth, Jr.
Attorney at Law
22 West Ninth Street
Cincinnati, Ohio 45202
3646 Glenmore Avenue
Cincinnati, Ohio 45211
(513) 721-8808

**PROMISSORY NOTE**

FOR VALUE RECEIVED, the undersigned promises to pay to Shirdenia Bryant the principal

amount of Nineteen Thousand and 00/100 ($19,000.00) Dollars without interest.  Said amount shall

be due and payable within sixty (60) days of the date of this note or when the borrower has paid the

amount due under a note and mortgage to Nationsbanc Mortgage Corporation for the property

located at 1107 Laidlaw Avenue, Cincinnati, Ohio  45237, whichever date occurs first.

Signed this 27th day of January 1998.

Prescott Bigelow, IV

*Paid in Full*

PLAINTIFF'S DEPOSITION
EXHIBIT
2 Bryant
12-18-01
PENGAD-Bayonne, N. J.

## RELEASE

This agreement dated this _C7/4_ day of January, 1999 by and between Prescott Bigelow, IV, hereinafter referred to as Bigelow and Shirdenia Bryant, hereinafter referred to as Bryant.

WHEREAS Bigelow previously purchased from Bryant the property commonly known as 1107 Laidlaw Avenue, Cincinnati, Ohio. In connection with that transaction Bigelow signed a promissory note to Bryant for the payment of Nineteen Thousand and 00/100 ($19,000.00) Dollars.

WHEREAS Bigelow's responsibility under said promissory note has been previously transferred to John Marfisi and the original promissory note was marked paid in full.

WHEREAS Bryant has previously rented the before-described property from Bigelow and a dispute remains unresolved in regards to her tenancy and his liability under the promissory note.

Now Therefore, it is agreed by and between the parties as follows:

1.    Bigelow shall pay to Bryant the sum of Two Thousand and 00/100 ($2,000.00) Dollars.

2.    Bigelow shall release Bryant of the responsibility to pay the amount of Six Hundred and 00/100 ($600.00) Dollars which remains due for the period prior to December 31, 1998 as rent for the before-described property.

3.    The parties agree to enter into a lease agreement for the property as set forth in an agreement executed at the same time as this release.

4.    Bryant agrees to release Bigelow of any further obligation of whatsoever nature in regards to her previous tenancy and the promissory note dated January 27, 1998.



PENGAD-Bayonne, N.J.    PLAINTIFF'S DEPOSITION
EXHIBIT
3  Bryant
12-18-01

Signed on the date first named above.

_____
Prescott Bigelow, IV

_____
Shirdenia Bryant

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SHIRDENIA BRYANT              :      Civil Action No. C-1-02-006
                                        (Judge Spiegel)
           Plaintiff,       :    (Magistrate Judge Sherman)

vs.                          :

PRESCOTT BIGELOW, IV, et al.    :

          Defendants.     :

**PLAINTIFF SHIRDENIA BRYANT'S RESPONSES TO DEFENDANT
PRESCOTT BIGELOW IV'S FIRST SET OF INTERROGATORIES AND
REQUESTS FOR PRODUCTION OF DOCUMENTS**

**Interrogatories**

1. State the full name and address of every individual who assisted in any manner in the answering of these Interrogatories and/or Request for Production of Documents.

RESPONSE:  Shirdenia Bryant
                 P.O. Box 12772
                 Cincinnati, OH 45212

                 James E. Schwantes, Attorney
                 Angela Vaught, Legal Assistant
                 Law Offices of William H. Blessing
                 119 East Court Street, Suite 500
                 Cincinnati, OH 45202

2. Identify all individuals with knowledge of the transactions with Defendant Bigelow alleged in the Amended and Supplemental Complaint.

RESPONSE:  In addition to Plaintiffs Shirdenia Bryant and Harry Curtis and Defendants Roseanne Christian, Prescott Bigelow, and John Marfisi, persons with knowledge of the transactions include, Rula Bryant (Shirdenia Bryant's daughter), Walter Ellis, John Meckstroth, Attorney, and Nathan Gieske.



DEFENDANT'S
EXHIBIT NO. ____
FOR IDENTIFICATION
Bryant
DATE 9-3-03    RPTR:

3. For each person identifies in interrogatory number 2, state the facts of which they have knowledge.

RESPONSE: Rula Bryant accompanied Shirdenia Bryant to John Meckstroth's office on January 6, 1999. She was present when Defendant Bigelow stated that he was not responsible for paying Shirdenia Bryant $19,000.00. She was present when Defendant Bigelow told Shirdenia Bryant that he needed $500.00 a month in rent or he would get someone else in the house. She is knowledgeable about the rent paid by Shirdenia Bryant to Defendant Bigelow. She has knowledge of the emotional distress caused to her mother as a result of Defendant Bigelow's actions, and the financial hardship that Shirdenia Bryant has incurred since she entered into the real estate deal with Defendant Bigelow in January 1998.

John Meckstroth prepared the documents for the closings conducted on January 27, 1998 and January 6, 1999 and is knowledgeable about the structure of the transactions between Defendant Bigelow and Shirdenia Bryant. John Meckstroth also has knowledge about the estate of Johnnie Worthy (Shirdenia Bryant's mother) and prepared and filed legal documents on behalf of the estate in the Hamilton County Probate Court. He has knowledge about the formation and business of Tri State Mortgage Assistance, Bigelow Properties, and the Keene Group.

Walter Ellis has knowledge of Defendant Bigelow's income and expenses for Shirdenia Bryant's property at 1107 Laidlaw. He has knowledge of Bigelow's business entities including Bigelow Properties, the Keene Group, and Tri State Mortgage Assistance.

Nathan Gieske has knowledge of the transactions involving Shirdenia Bryant's "refinancing" from McKinley Mortgage on June 9, 2000.

4. Identify all individuals with knowledge of any misrepresentation of material fact by Defendant Bigelow as alleged in the Amended and Supplemental Complaint.

RESPONSE: In addition to the Plaintiffs, persons with knowledge include Roseanne Christian, John Meckstroth, and Rula Bryant

5. For each person identified in interrogatory number 4 state the facts at which they have knowledge.

RESPONSE: For Roseanne Christian and John Meckstroth, see Plaintiff's RICO case statement at §§ 2(b) and 3(a).

Rula Bryant has knowledge that Defendant Bigelow misrepresented to Shirdenia Bryant on January 6, 1999 that $19,000.00 owed to Bryant had been paid in full, and that Defendant Bigelow did not owe that amount to Shirdenia Bryant.

6. Identify all of the other victims referred to in paragraph 29 of the Amended and Supplemental Complaint.

RESPONSE:  Plaintiffs will identify other victims as they become known.  Other victims include Harry Curtis and Mark and Michael Burbrink.

7. Identify every misrepresentation of material fact, with specificity, which you allege was made by Defendant Bigelow.

RESPONSE: -     At the January 27, 1998 closing, Defendant Bigelow misrepresented to Bryant that he would pay her $19,000.00 within 60 days.  Bigelow signed a promissory note to that effect.
-     At the January 27, 1998 closing, Defendant Bigelow, by his attorney John Meckstroth, misrepresented to Shirdenia Bryant that the transaction she was conducting would help her keep her house.
-     At the January 27, 1998 closing, Defendant Bigelow, by his attorney John Meckstroth, misrepresented to Shirdenia Bryant that she had the right to purchase her house back from Bigelow at the end of one year.
-     In one or two phone conversations in late 1998 and 1999, Defendant Bigelow falsely represented to Bryant that John Marfisi was the only one who was responsible for paying Shirdenia Bryant.
-     On January 6, 1999, Defendant Bigelow misrepresented to Bryant that the $19,000.00 promissory note that he executed in her favor had been "paid in full."
-     On January 6, 1999, Defendant Bigelow misrepresented to Bryant that he was releasing her from an obligation to pay him $600.00 in rent.  Bigelow later demanded, and collected that money from Bryant.
-     In the late spring of 2000, Bigelow misrepresented to Bryant that she was responsible for paying $500.00 for repairs to the roof at 1107 Laidlaw.  Bigelow collected $500.00 from Bryant based on this misrepresentation.
-     Upon Bryant's purchase of the property from Bigelow on June 9, 2000, Bigelow misrepresented to the Hamilton County Auditor that the purchase price was $61,000.00.

8. Identify, with specificity, the manner in which you claim that Defendant Bigelow induced use of the U.S. Mails as alleged in paragraph 19 of the Amended and Supplemental Complaint.

RESPONSE:  Defendant Bigelow established a system by which he was paid rent through the U.S. Mails.  For information on each individual usage of the U.S. Mails by Defendant Bigelow please see the chart in Plaintiff's RICO Case Statement, pages 6-13.

9. Identify each fact upon which you rely support of the allegation that defendant Bigelow conducted affairs through a pattern of racketing activity as alleged in paragraph 34 of the Amended and Supplemental Complaint.

RESPONSE:   See Plaintiff's RICO Case Statement at §§ 2(a) and 5(f).

10. Identify each fact upon which you rely in support of the allegation that Defendant Bigelow participated in the management and control of the enterprises identified in paragraph 34 of the Amended and Supplemental Complaint.

RESPONSE:   Defendant Bigelow is the sole member and owner of the Keene Group, LLC, Bigelow Properties, and Tri-state Mortgage Assistance. This information is public record through the Ohio Secretary of State. Additionally, Defendant stated his deposition taken in the case of *Bigelow v. Burbrink,* that he was the sole member and owner of the entities.

11. Identify every violation of the Federal Mail Fraud Statute by Defendant Bigelow which you allege in paragraph 35 of the Amended Supplemental Complaint.

RESPONSE:   Violations are listed on Plaintiff's RICO Case Statement, pages 6-13.

12. Identify every violation of the Federal Wire Fraud Statute by Defendant Bigelow which you allege in paragraph 35 of the Amended and Supplemental Complaint.

RESPONSE:   Violations are listed on Plaintiff's RICO Case Statement, pages 6-13.

13. Identify every false statement, misinformation and material omission referenced in paragraph 38 of the Amended and Supplemental Complaint.

RESPONSE:   See Plaintiff's answer to Interrogatory No. 7 above. In addition, Defendant Bigelow deceived Bryant as to the consequences of signing the deed to the property over to him on January 27, 1998 and the fact that she would lose all rights she had previously held as a property owner. Defendant Bigelow misrepresented to Shirdenia Bryant that he was helping her keep her home. He materially failed to tell Shirdenia Bryant that John Meckstroth was his attorney and that Meckstroth was not acting on Shirdenia Bryant's behalf. He failed to disclose to Shirdenia Bryant the fact that he would take out a mortgage on the property at 1107 Laidlaw in excess of $50,000 and that Bryant would be obligated pay off that mortgage when she bought the property back from him. In January 1998, Defendant Bigelow misrepresented to Bryant that he would sell the property back to her in one year. He failed to disclose the purchase price he would require from Bryant when she decided to buy back the property. He did not tell Shirdenia Bryant in January 1998 that he would raise the rent or evict her, which he later threatened to do in January 1999. He did not disclose his business relationship with John Marfisi. He did not disclose his ownership interest in McKinley Mortgage.

14. For each false statement, misinformation and material omission identified in the answer to interrogatory number 13, identify the specific manner in which said statements, misinformation or material omission deceived you into parting with your property.

RESPONSE:    See Plaintiff's RICO case statement at p 1-3.

15. Identify all damages which you claim in this action, and identify the precise manner in which said damages were calculated.

RESPONSE:

| Bryant Damage Calculation | |
|---|---:|
| Money owed to Bryant per the promissory note signed by Bigelow on January 27, 1998 | $19,000.00 |
| Rent paid by Bryant to Bigelow from January of 1998 to June of 2000 | $10,650.00 |
| Money paid by Bryant to Bigelow for back rent on January 6, 1999 despite language in the release stating that Bryant did not have to pay it | $600.00 |
| Bryant's net payment for closing costs at the June 9, 2000 closing at McKinley Mortgage | $5,099.35 |
| Payoff to Prescott Bigelow at the June 9, 2000 closing at McKinley Mortgage | $4,657.24 |
| Money paid by Bryant to Bigelow for repairs to the roof during the time Bryant was a tenant | $500.00 |
| Money Bryant paid to Bigelow for second mortgage on property on 1107 Laidlaw after June 9, 2000 | $1,600.00 |
| Lost equity in 1107 Laidlaw equals value of property {$68,000.00} minus amount paid by Bigelow to dismiss foreclosure {$10,208.67}. | $57,791.33 |
| **Total Damages** | **$99,897.26** |
| Amount of money paid by Bigelow to Bryant on January 6, 1999. | ($1,400.00) |
| **Net Damages** | **$98,497.26** |

In addition to the above amount, Plaintiff seeks punitive damages.

16. Identify each fact upon which you rely in support of the allegation that you have been injured in your business and property as alleged in paragraph 40 of the Amended and Supplemental Complaint.

RESPONSE:  See Responses to Interrogatory Nos. 3, 7, 15, and 17 and RICO case statement at 4(a) and 5(c).

17. Identify, with specificity, the manner in which you have suffered damage to your personal and financial reputation, suffered financial loss and emotional distress, as alleged in paragraph 48 of the Amended and Supplemental Complaint. For each alleged item of damages in paragraph 48, identify the amount of damages you claim.

RESPONSE:  In addition to the financial losses identified in response to Interrogatory No. 15, Shirdenia Bryant has lost her family home that she inherited from her mother and father. Her financial reputation has been damaged by the foreclosure that resulted from her inability to pay the $64,000.00 mortgage note that encumbered the property after she bought it back from Defendant Bigelow on June 9, 2000.  She has suffered emotional distress as a result of losing her family home.

18. Identify every fact upon which you rely support of the allegation that Defendant Bigelow entered into a relationship of trust and confidence with you, and assumed fiduciary duties with respect to you, as alleged in paragraph 50 of the Amended and Supplemental Complaint.

RESPONSE:  Discovery is ongoing. Facts will be identified as discovered.

19. State the name and location of every person, other than experts, who may be called by you as a witness at trial.

RESPONSE:  Plaintiff will supplement her witness list as witnesses become known.  In addition to her own testimony and the expert testimony of Donald Lerner, Plaintiff expects to call Harry Curtis, Mark and Michael Burbrink, Walter Ellis, John Meckstroth, and Rula Bryant.

20. For each person identified in interrogatory number 19, state the substance of their expected testimony.

RESPONSE:  Harry Curtis will testify to his transactions with Defendant Bigelow and Bigelow's eviction of him from his family home at 1966 Fairfax Avenue.  Harry Curtis will testify to the damages that Defendant Bigelow has caused to him.  See specifically, Plaintiff's RICO Statement at §§ 4(b) and 5(f)(v).

Mark and Michael Burbrink will testify to their transactions with Defendant Bigelow and Bigelow's eviction of them from their family home at 8670 Darnell Avenue.  They will testify to the damages that Defendant Bigelow has caused to them.

Walter Ellis will testify to his knowledge of Defendant Bigelow's financial records and business entities.

John Meckstroth will testify to his knowledge of Defendant Bigelow's real estate transactions in which he was involved.

Rula Bryant will testify to those matters listed in Interrogatory No. 3, above.

21. State the name and address of every expert witness whom you expect to call as a witness at trial.

RESPONSE:  Mr. Donald Lerner, Mercantile Center, Suite 800, 120 East Fourth Street, Cincinnati, Ohio 45202.

22. For each expert identified in interrogatory number 21,

A.  state the qualifications of such expert;

RESPONSE:  Attorney Donald Lerner has worked in real estate transactions in this area since 1960, including foreclosures, and is familiar with the standards of disclosure requirements and practices involving real estate sales and purchases.

B.  subject matter on which said expert will testify;

RESPONSE:  Mr. Lerner will opine about the transactions in this case and will testify that the transactions did not accurately reflect the real estate sale with integrity and honesty.  Additionally, Mr. Lerner may testify concerning the pattern, motive, and absence of mistake relating to the scheme alleged.

C.  the facts known and opinions held by each expert related to this civil action.

RESPONSE:  Mr. Lerner will testify based on his experience in real estate transactions, his knowledge of the facts of this case, and his review of documents produced by Defendant Bigelow in this litigation, particularly the purchase contracts and settlement statements for the Bryant and Curtis transactions, the land contract prepared by John Meckstroth for Harry Curtis, the billing statement from Mr. Meckstroth to Harry Curtis, the promissory notes and release in the Bryant transaction, and the settlement statement from McKinley Mortgage in the Bryant transaction.   His opinion will be that the transactions relating to Shirdenia Bryant's sale of her house to Defendant Bigelow do not reflect an honest real estate sale.

23. Identify every exhibit you expect to offer into evidence at trial.  Please produce same for inspection and copying or attached a copy thereof to these answers.

RESPONSE:  Discovery in this case is ongoing.  Exhibits will be identified and produced according to the order of the court.  Plaintiff's exhibits will include, but are not limited to documents produced and marked as "Bryant 622-707;"  documents produced by John Meckstroth; financial records produced by Walter Ellis; and documents produced by Prescott Bigelow in this case and the case of *Bigelow v. Burbrink,* Hamilton County Court of Common Pleas, Case No. A0005052.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1. If any photographs, films, videotapes or audio tapes have been taken by you or any of your agents of representatives, or by any other person, relating to any of the facts alleged in the Amended and Supplemental Complaint, please produce them for inspection and copying.

RESPONSE:  Plaintiff has no documents responsive to this request.

2. Please produce copies of all documents containing information relating to the facts alleged in the Amended and Supplemental Complaint.

RESPONSE:  Documents marked Byrant 622 – 691 are attached.  A compact disk containing financial records produced by Walter Ellis per subpoena duces tecum is also enclosed.  In addition, Plaintiffs have produced copies of all records copied from the files of Attorney John Meckstroth.

3. Produce all documents which refer or relate to Defendants Bigelow, Christian, John Marfisi and John Meckstroth.

RESPONSE:  See response to Document Request No. 2 above.

4. Produce all exhibits to be offered at trial.

RESPONSE:  Discovery in this case in ongoing.  Exhibits will be identified and produced as they are determined.

5. Produce all documents that relate to or support your claim for damages.

RESPONSE:  Plaintiff relies upon document numbers Bryant–21 through Bryant–67 from the Meckstroth production, document numbers Bryant-622, 634-637, 639-640, 644-647, and documents produced by Defendant Bigelow and Walter Ellis relating to the property at 1107 Laidlaw Avenue.

Respectfully submitted,

William H. Blessing (#0006848)
James E. Schwantes (#0068771)
119 East Court Street, Suite 500
Cincinnati, OH  45202
Telephone:  (513) 621-9191
Telecopier:  (513) 621-7086

## VERIFICATION

The foregoing answers to interrogatories are true and correct to the best of my knowledge, information, and belief.

Shirdenia Bryant

STATE OF OHIO            )
                         )   SS:
COUNTY OF HAMILTON   )

Signed and sworn to before me this 27th day of June, 2003.

Notary Public

JAMES SCHWANTES, Attorney at Law
NOTARY PUBLIC • STATE OF OHIO
My Commission has no expiration
date. Section 147-03 O.R.C.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was by hand delivery upon:

Gary R. Lewis, Attorney
Cincinnati Club Building, Suite 915
30 Garfield Place
Cincinnati, OH  45205

on this 2nd day of July, 2003.