# SETTLEMENT STATEMENT
### Page 2

## SUBSTITUTE FORM 1099 SELLER STATEMENT

The information contained on Page 1 of this Closing Statement is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.

## SELLER INSTRUCTIONS

If this real estate was your principal residence, file Form 2119, Sale or Exchange of Principal Residence, for any gain, with your income tax return; for other transactions, complete the applicable parts of Form 4797, Form 6252 and/or Schedule D (Form 1040).

The undersigned acknowledge receipt of a copy of this Closing Statement and agree to the correctness thereof.

SELLER(S):

_____
Shirdenia Bryant

PURCHASER(S):

_____
Prescott Bigelow IV

Prepared by:
John R. Meckstroth, Jr.
Attorney at Law
22 West Ninth Street
Cincinnati, Ohio 45202
3646 Glenmore Avenue
Cincinnati, Ohio 45211
(513) 721-8808

# INTERNAL REVENUE SERVICE REAL
## ESTATE TRANSACTION REPORT

The undersigned state that they are the parties to a real estate transaction occurring on

1/27/98 _____ regarding the property located at ___ 1107 Laidlaw Avenue  Cincinnati, Ohio  45237 ___.

The gross sale price for the above-described property is $___ 36,154.98 ___

The parties to this transaction are as follows:

Seller(s):                                    Purchaser(s):

Shirdenia Bryant                              Prescott Bigelow, IV
_____                       _____
Name                                          Name

*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*                                 *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*
_____                       _____
Social Security Number                        Social Security Number


_____                       _____
Name                                          Name


_____                       _____
Social Security Number                        Social Security Number


_____                       P.O.Box 30404
Address                                        Address
*1107 Laidlaw Av.*
                                              Cincinnati, Ohio  45230

The Seller(s) state that the before-described property ___ is or ___ is not their principal residence.

We understand this information will be reported to the Internal Revenue Service as required by Federal Law.

Under penalties of perjury, the undersigned state that the foregoing information is true and accurate to the best of their knowledge.

Signed this ___27th___ day of ___January___, 19__98__

*Shirdenia Bryant*                            *Prescott Bigelow*
_____                       _____
Shirdenia Bryant                              Prescott Bigelow, IV


_____                       _____



## A. Settlement Statement

VINTAGE TITLE AGENCY, INC.

U.S. Department of Housing
2nd Urban Developments

OMB No. 2502-0265

**B. Type of Loan**

| 1. ☐ FHA | 2. ☐ FmHA | 3. ☒ Conv. Unins. | 6. File Number | 7. Loan Number | 8. Mortgage Insurance Case Number |
| 4. ☐ VA | 5. ☐ Conv. Ins. | REFINANCE | V-9937 | 2662955 | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

**D. Name and Address of Borrower**
Shirdenia Bryant
1107 Laidlaw Avenue
Cincinnati, Ohio 45237

**E. Name and Address of Seller**

**F. Name and Address of Lender**
First Franklin Financial
Corporation
2150 N. First Street
San Jose, California 95131

**G. Property Location**
1107 Laidlaw Avenue
Cincinnati, Ohio 45237
Hamilton County, Ohio
Parcel No. 118-1-61

**H. Settlement Agent** Vintage Title Agency, Inc.
TIN-31-1442503
**Place of Settlement** Phone: (606) 344-0200
McKinley Mortgage
Cincinnati, Ohio

**I. Settlement Date** 6/9/00
Dis: 6/14/00

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due From Borrower** | | **400. Gross Amount Due To Seller** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | | 403. | |
| 104. Payoff Cheviot | 5,099.35 | 404. | |
| 105. Payoff Prescott Bigelow, IV | 54,142.76 | 405. | |
| **Adjustments for items paid by seller in advance** | 4,657.24 | **Adjustments for items paid by seller in advance** | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County taxes to | | 407. County taxes to | |
| 108. Assessments to | | 408. Assessments to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. Gross Amount Due From Borrower** | 63,899.35 | **420. Gross Amount Due To Seller** | |
| **200. Amounts Paid By Or In Behalf Of Borrower** | | **500. Reductions In Amount Due To Seller** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 64,000.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210. City/town taxes to | | 510. City/town taxes to | |
| 211. County taxes to | | 511. County taxes to | |
| 212. Assessments to | | 512. Assessments to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid By/For Borrower** | 64,000.00 | **520. Total Reduction Amount Due Seller** | |
| **300. Cash At Settlement From/To Borrower** | | **600. Cash At Settlement To/From Seller** | |
| 301. Gross amount due from borrower (line 120) | 63,899.35 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | 64,000.00 | 602. Less reduction in amt. due seller (line 520) | |
| 303. Cash ☐ From ☒ To Borrower | 100.65 | 603. Cash ☐ To ☐ From Seller | |



EXHIBIT

Previous Edition is Obsolete
DOMINEE Indiana

BRYANT -639

| L. Settlement Charges | | | |
|---|---|---|---|
| 700. Total Sales/Broker's Commission based on price $ | | @ % | |
| Division of Commission (line 700) as follows: | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
| 701. $ | to | | |
| 702. $ | to | | |
| 703. Commission paid at Settlement | | | |
| 704. | | | |
| 800. Items Payable in Connection With Loan | | | |
| 801. Loan Origination Fee | 3.9070 % McKinley Mortgage, LLC | | |
| 802. Loan Discount | % | 2,500.48 | |
| 803. Appraisal Fee to | The Kemp Company | | |
| 804. Credit Report to | | 225.00 | |
| 805. Lender's Inspection Fee to | | | |
| 806. Mortgage Insurance Application Fee to | | | |
| 807. Assumption Fee to | | | |
| 808. Processing Fee to McKinley Mortgage, LLC | | | |
| 809. Administrative Fee to First Franklin Financial | | 225.00 | |
| 810. Rebate Pd by First Franklin to McKinley Mortgage, LLC | 640.00 | 599.00 | |
| 811. | | P.O.C. | |
| 900. Items Required By Lender To Be Paid In Advance | | | |
| 901. Interest from 6/14/00 to 7/ 1/00 @ 8.000000 /day | | | |
| 902. Mortgage Insurance Premium for months to | | | |
| 903. Hazard Insurance Premium for years to | | 324.87 | |
| 904. Flood Insurance Premium for years to | | | |
| 905. 2nd 1/2 1999 County Taxes to Hamilton County Treasurer | 567.17 | P.O.C. | |
| 1000. Reserves Deposited With Lender | | | |
| 1001. Hazard Insurance months @ $ per month | | | |
| 1002. Mortgage Insurance months @ $ per month | | | |
| 1003. City property taxes months @ $ per month | | | |
| 1004. County property taxes months @ $ per month | | | |
| 1005. Annual Assessments months @ $ per month | | | |
| 1006. Flood Insurance months @ $ per month | | | |
| 1007. months @ $ per month | | | |
| 1008. months @ $ per month | | | |
| 1009. months @ $ per month | | | |
| 1010. months @ $ per month | | | |
| 1100. Title Charges | | | |
| 1101. Settlement or closing fee to Vintage Title Agency, Inc. | | | |
| 1102. Abstract or title search to | | 275.00 | |
| 1103. Title examination to Vintage Title Agency, Inc. | | | |
| 1104. Title insurance binder to Vintage Title Agency, Inc. | | 150.00 | |
| 1105. Document preparation to Vintage Title Agency, Inc. | | 50.00 | |
| 1106. Notary fees to | | | |
| 1107. Attorney's fees to Kenneth R. Reed | 50.00 | | |
| (includes above item numbers: Deed Preparation | | P.O.C. | |
| 1108. Title insurance to Vintage Title Agency, Inc. | | | |
| (includes above item numbers: | | 224.00 | |
| 1109. Lender's coverage $ 224.00 for $64,000.00 | | | |
| 1110. Owner's coverage $ | | | |
| 1111. TAX ENDORSEMENT to Vintage Title Agency, Inc. | | | |
| 1112. ARM ENDORSEMENT to Vintage Title Agency, Inc. | | 75.00 | |
| 1113. COMPREHENSIVE ENDORSEMENT to Vintage Title Agency, Inc. | | 75.00 | |
| 1200. Government Recording and Transfer Charges | | 75.00 | |
| 1201. Recording fees: Deed $ 19.00 ; Mortgage $ 102.00 ; Releases $ | | | |
| 1202. City/county tax/stamps: Deed $ ; Mortgage $ | | 121.00 | |
| 1203. State tax/stamps: Deed $ ; Mortgage $ | | | |
| 1204. Deed Transfer Tax/$68,800 to Hamilton County Auditor | 147.60 | P.O.C. | |
| 1205. | | | |
| 1300. Additional Settlement Charges | | | |
| 1301. Survey to Tri-State Location | | | |
| 1302. Pest Inspection to | | 130.00 | |
| 1303. Overnite Payoffs/Courier to Vintage Title Agency, Inc. | | 50.00 | |
| 1304. | | | |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | | 5,099.35 | |

Shirlonia Bryant

MONTHLY PAYMENT

| TAXES | .00 |
|---|---|
| PMI/MIP | .00 |
| HAZARD/FLOOD INSURANCE | .00 |
| TOTAL ESCROW | .00 |
| P&I | .00 |
| MONTHLY PAYMENT | .00 |
| FIRST PAYMENT DUE | 8/ 1/00 |

BRYANT -640

## MCKINLEY MORTGAGE LLC

### Schedule of Real Estate Owned (If additional properties owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 1107 LAIDLAW AVE | SFR | $ 82000 | $ 60500 | $ | $ 500 | $ 125 | $ |
| | | $ | | | | | |
| | | $ | | | | | |
| Totals | | $ 82000 | 60500 | $ | $ 500 | $ 125 | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|

| | | | | Borrower | | Co-Borrower | |
|---|---|---|---|---|---|---|---|
| | | | | Yes | No | Yes | No |
| a. | Purchase price | $ | If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. | | | | |
| b. | Alterations, improvements, repairs | | a. Are there any outstanding judgments against you? | | X | | |
| c. | Land (if acquired separately) | | b. Have you been declared bankrupt within the past 7 years? | | X | | |
| d. | Refinance (incl. debts to be paid off) | 58800.00 | c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | |
| e. | Estimated prepaid items | | d. Are you a party to a lawsuit? | | X | | |
| f. | Estimated closing costs | 4518.00 | e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | | X | | |
| g. | PMI, MIP, Funding Fee paid in cash | | | | | | |
| h. | Discount (if Borrower will pay) | | f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? | | X | | |
| i. | Total costs (add items a through h) | 63318.00 | | | | | |
| j. | Subordinate financing | | g. Are you obligated to pay alimony, child support, or separate maintenance? | | X | | |
| k. | Borrower's closing costs paid by Seller | | h. Is any part of the down payment borrowed? | | X | | |
| l. | Other Credits (explain) | | i. Are you a co-maker or endorser on a note? | | X | | |
| | | | j. Are you a U.S. citizen? | X | | | |
| | | | Are you a permanent resident alien? | | | | |
| m. | Loan amount (exclude PMI, MIP, Funding Fee financed) | 64000.00 | k. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | X | | | |
| n. | PMI, MIP, Funding Fee financed | | l. Have you had an ownership interest in a property in the last three years? | | X | | |
| o. | Loan amount (add m & n) | 64000.00 | (1) What type of property did you own - principal residence (PR), second home (SH), or investment property (IP)? | | | | |
| p. | Cash from / to Borrower | | (2) How did you hold title to the home - solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | | | |
| | (subtract j, k, l & o from i) | -682.00 | | | | | |

The undersigned specifically acknowledge(s) and agree(s) that: (1) the loan requested by this application will be secured by a first mortgage or deed of trust on the property described herein; (2) the property will not be used for any illegal or prohibited purpose or use...

**Right to Receive Copy of Appraisal.** I/We have the right to a copy of the appraisal report used in connection with this application for credit. To obtain a copy, I/We must send Lender's written address Lender has provided. Lender must hear from me/us no later than 90 days after Lender notifies me/us about the outcome of the application, or I/We withdrew this application.

**Certification.** I/We certify that the information provided in this application is true and correct as of the date set forth opposite my/our signature(s) on this application and acknowledge my/our understanding that any intentional or negligent misrepresentation(s) of the information contained in this application may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment both under the provisions of Title 18, United States Code, Section 1001, et seq. and liability for monetary damages to the Lender, its agents, successors and assigns, and any other person who may suffer any loss due to reliance upon any misrepresentation which I/we have made on this application.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

The following information is requested by the Federal Government for certain types of loans related to a dwelling, in order to monitor the Lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may neither discriminate on the basis of this information, nor on whether you choose to furnish it. However, if you choose not to furnish it, under Federal regulations this Lender is required to note race and sex on the basis of visual observation or surname. If you do not wish to furnish the above information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the Lender is subject under applicable state law for the particular type of loan applied for.)

**BORROWER**

☐ I do not wish to furnish this information

Race/National Origin:
☐ American Indian or Alaskan Native
☐ Asian or Pacific Islander
☐ Black, not of Hispanic origin
☐ White, not of Hispanic origin
☐ Hispanic
☐ Other (specify)

Sex: ☒ Female  ☐ Male

**CO-BORROWER**

☐ I do not wish to furnish this information

Race/National Origin:
☐ American Indian or Alaskan Native
☐ Asian or Pacific Islander
☐ Black, not of Hispanic origin
☐ White, not of Hispanic origin
☐ Hispanic
☐ Other (specify)

Sex: ☐ Female  ☐ Male

**To be Completed by Interviewer**

This application was taken by:
☒ face-to-face interview
☐ by mail
☐ by telephone

Interviewer's Name (print or type)
**NATE GIESKE**

Interviewer's Signature / Date

Interviewer's Phone Number (incl. area code)
**513-791-2700**

Name and Address of Interviewer's Employer
**MCKINLEY MORTGAGE LLC**
**9469 KENWOOD RD**
**CINCINNATI, OH 45242**

Freddie Mac 65/Fannie Mae 1003

Page 3 of 3

BRYANT -64

The Kemp Company

Property Description

## UNIFORM RESIDENTIAL APPRAISAL REPORT

COMPLETE SUMMARY APPRAISAL REPORT

File No. A004285

| Property Address | 1107 Laidlaw Avenue | City Cincinnati | State Ohio | Zip Code 45237 |
|---|---|---|---|---|

Legal Description Lots #21-22 Martha Ruffner 1st Subdivision    County Hamilton

Assessor's Parcel No. 118-0001-0061-00    Tax Year 1999    R.E. Taxes $ 1,030.32    Special Assessments $ 4.94/YR

Borrower Bryant, Ohiodunda    Current Owner Same    Occupant: Owner Tenant Vacant

Property rights appraised Fee simple Leasehold    Project Type PUD Condominium (HUD/VA only) HOA $ N/A /Mo.

Neighborhood or Project Name Bond Hill    Map Reference 64    Census Tract 64

Sales Price $ N/A    Date of Sale N/A    Description and $ amount of loan charges/concessions to be paid by seller N/A

Lender/Client McKinley Mortgage    Address 9469 Kenwood Road Cincinnati, Ohio 45242

Appraiser South K. Stieber/CR#09679    Address 11110 Main Street Cincinnati, Ohio 45241

| | Location | Urban | Suburban ■ | Rural | Predominant occupancy | Single family housing | | Present land use % | Land use change |
|---|---|---|---|---|---|---|---|---|---|

Built up Over 75% ■ 25-75% Under 25%    PRICE $(000) AGE (yrs)    One family 80    Not likely ■ Likely

Growth rate Rapid Stable ■ Slow    Owner ■ 20 Low 15    2-4 family 10    In process

Property values Increasing Stable ■ Declining    Tenant ■ 140 High 100+    Multi-family 5    To:

Demand/supply Shortage In balance ■ Over supply    Vacant (0-5%)    Predominant 75 75    Commercial 5

Marketing time Under 3 mos. 3-6 mos. ■ Over 6 mos.    Vacant (over 5%)

Note: Race and the racial composition of the neighborhood are not appraisal factors.

Neighborhood boundaries and characteristics: Bond Hill is bounded to the west by Norwood, Roselawn is to the north, I-71 is to the south, and I-75 is to the east.

Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.): The subject is located in a residential neighborhood of Bond Hill, approximately 10 miles north of downtown Cincinnati. This location is in close proximity to area schools, neighborhood shopping, various recreational facilities and major traffic routes.

Market conditions in the subject neighborhood including support for the above conclusions related to the trend of property values, demand/supply, and marketing time — such as data on competitive properties for sale in the neighborhood, description of the prevalence of sales and financing concessions, etc.: Market conditions appear stable including financing. Market demand is steady with prices stable. Marketing time in this area is average with most sales occurring between 90 to 120 days marketing time. The neighborhood data analysis presented in this section, was obtained from visual observation and research.

Project Information for PUDs (If applicable) — Is the developer/builder in control of the Home Owners' Association (HOA)? Yes No

Approximate total number of units in the subject project N/A    Approximate total number of units for sale in the subject project N/A

Describe common elements and recreational facilities:

| Dimensions 40 x 119 | | Topography Mostly Level |
|---|---|---|

Site Area Approx. 4,791 Sq. Ft.    Corner Lot Yes No ■    Size Typical for area

Specific zoning classification and description R2 Two Family Residential    Shape Rectangular

Zoning compliance ■ Legal Legal nonconforming (Grandfathered use) Illegal No zoning    Drainage Adequate

Highest & best use as improved ■ Present use Other use (explain)    View Average for area

| Utilities | Public | Other | Off-site Improvements | Type | Public | Private | Landscaping Average for area |
|---|---|---|---|---|---|---|---|

Electricity ■    Street Asphalt    Driveway Surface Concrete

Gas ■    Curb/Gutter Concrete    Apparent easements Typical Utility

Water ■    Sidewalk Concrete    FEMA Special Flood Hazard Area Yes No ■

Sanitary Sewer ■    Street lights Mercury Vapor    FEMA Zone Zone C    Map Date 10-15-82

Storm Sewer ■    Alley None    FEMA Map No. 390210 0006B

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning use, etc.): No unfavorable apparent adverse easements, encroachments of other adverse conditions are evident at this time for the subject site.

| GENERAL DESCRIPTION | EXTERIOR DESCRIPTION | FOUNDATION | BASEMENT | INSULATION |
|---|---|---|---|---|
| No. of Units 1 | Foundation Con.Blk. | Slab N/A | Area Sq. Ft. 648 | Roof |
| No. of Stories 2 | Exterior Walls Alum | Crawl Space N/A | % Finished 0% | Ceiling Average ■ |
| Type(Det./Att.) Detached | Roof Surface Asphalt | Basement Full | Ceiling OpenJoist | Walls Average ■ |
| Design (Style) 2 Story | Gutters & Downspouts Aluminum | Sump Pump No | Walls Conc.Blk | Floor |
| Existing/Proposed Existing | Window Type Wood Frm | Dampness None noted | Floor Concrete | None |
| Age (Yrs.) 75 | Storm/Screens Yes/Yes | Settlement None noted | Outside Entry Yes | Unknown |
| Effective Age (Yrs.) 10-15 | Manufactured House | Infestation None noted | | |

| ROOMS | Foyer | Living | Dining | Kitchen | Den | Family Rm. | Rec. Rm. | Bedrooms | # Baths | Laundry | Other | Area Sq. Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Basement | | | | | | | | | | x | | 648 |
| Level 1 | x | 1 | 1 | 1 | | | | | | | | 648 |
| Level 2 | | | | | | | | 3 | 1:0 | | | 648 |

Finished area above grade contains:    6 Rooms;    3 Bedroom(s);    1:0 Bath(s);    1,296 Square Feet of Gross Living Area

| INTERIOR | Materials/Condition | HEATING | | KITCHEN EQUIP. | | ATTIC | | AMENITIES | | CAR STORAGE | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Floors | Carpet/Avg | Type | F/A | Refrigerator | | None | | Fireplace(s) # Two | | None | |
| Walls | Plaster/Avg | Fuel | Gas | Range/Oven | | Stairs | | Patio | | Garage # of Cars | |
| Trim/Finish | Wood/Avg | Condition | Avg | Disposal | | Drop Stair | | Deck | | Attached | |
| Bath Floor | Vinyl/Avg | COOLING | | Dishwasher | | Scuttle | ■ | Porch Front+Rear | | Detached 1 | |
| Bath Wainscot | Plaster/Avg | Central | None | Fan/Hood | | Floor | | Fence | | Built-in | |
| Doors | Wood/Avg | Other | N/A | Microwave | | Heated | | Pool | | Carport N/A | |
| | | Condition | N/A | Washer/Dryer | | Finished | | | | Driveway Conc | |

Additional features (special energy efficient items, etc.): Porches, Paddle fans.

Condition of the improvements, depreciation (physical, functional, and external), repairs needed, quality of construction, remodeling/additions, etc.: No functional or external obsolescence was evident. The building is in average condition. The rating is based on other single family homes in the same market segment of similar price, age and quality of construction. (.... See Addendum)

Adverse environmental conditions (such as, but not limited to, hazardous wastes, toxic substances, etc.) present in the improvements, on the site, or in the immediate vicinity of the subject property: No known adverse environmental conditions were noted at the time of the inspection, however, the appraiser is not an expert in this field. Please refer to our Limiting Conditions

Freddie Mac Form 70 6-93    Page 1 of 2    Fannie Mae Form 1004 6-93

008  N-878  P.08/10  F-600          0080-888-818          INC. MORTGAGE MCKINLEY-FROM          03:11  00-80-90  11:20

# UNIFORM RESIDENTIAL APPRAISAL REPORT

File No. A004285

| | | |
|---|---|---|
| ESTIMATED SITE VALUE . . . . . . . . . . . . . . . . . = $ | 12,000 | Comments on Cost Approach (such as source of cost estimate, site value, square foot calculation and for HUD, VA, and FmHA, the estimated remaining economic life of the property): |

ESTIMATED REPRODUCTION COST-NEW OF IMPROVEMENTS:

| | | |
|---|---|---|
| Dwelling 1,296 Sq. Ft. @ $ 62.19 = $ | 80,598 | The cost information was based on the |
| Bsmt. 548 Sq. Ft. @ $ 11.55 = | 7,484 | appraisers files, local builders cost |
| Amenities+Kit Appl.-See Front Pg. = | Included | breakdowns and the Marshall & Swift |
| Garage/Carport 228 Sq. Ft. @ $ 14.32 = | 3,265 | Residential Cost Handbook. The site |
| Total Estimated Cost New . . . . . . . . . . . . . = $ | 91,347 | value estimate was based on courthouse |
| Less Physical 22 % Functional -0- External -0- | | records ratios and similar sales when |
| Depreciation 20,096 = $ | 20,096 | available. Physical depreciation is |
| Depreciated Value of Improvements . . . . . . . . . = $ | 71,251 | based on the age/life method. |
| "As-is" Value of Site Improvements . . . . . . . . = $ | 2,000 | Remaining economic life: 45-50 years. |
| INDICATED VALUE BY COST APPROACH . . . . . . . . . = $ | 85,251 | |

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 1107 Laidlaw Avenue Cincinnati | 1109 California Avenue Cincinnati | | 5239 Lillian Drive Cincinnati | | 1323 Franklin Avenue Cincinnati | |
| Proximity to Subject | | 2 Blocks South | | 1/2 Mile East | | 1/4 Mile Southeast | |
| Sales Price | $ N/A | $ 93,700 | | $ 80,500 | | $ 85,000 | |
| Price/Gross Liv. Area | $ N/A | $ 63.05 | | $ 64.76 | | $ 52.86 | |
| Data and/or Verification Source | Inspection | MLS/FACE/Courthouse Drive-by | | MLS/FACE/Courthouse Drive-by | | MLS/FACE/Courthouse Drive-by | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment |
| Sales or Financing Concessions | | FHA | -500 | Conventional | | FHA | 500 |
| Date of Sale/Time | | 03-00 | | 03-00 | | 08-99 | |
| Location | Avg/Bond Hill | Avg/Bond Hill | | Avg/Bond Hill | | Avg/Bond Hill | |
| Leasehold/Fee Simple | Fee | Fee | | Fee | | Fee | |
| Site | Avg/40x119 | Avg/40x133 | | Avg/30x96irr | | Avg/79x111 | |
| View | Average | Average | | Average | | Average | |
| Design and Appeal | Avg/2 Story | Avg/2 Story | | Avg/2 Story | | Avg/2 Story | |
| Quality of Construction | Avg/Alum | Avg/Br-Stucco | -1,000 | Avg/Br-Frame | -1,000 | Avg/Frame | |
| Age | 75 years | 63 years | | 58 years | | 105 years | |
| Condition | Average | Average | | Average | | Average | |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | | Total Bdrms Baths | | Total Bdrms Baths | |
| Room Count | 6 3 1:0 | 7 4 2:0 | -1,000 | 7 4 1:0 | | 7 3 2:0 | -1,000 |
| Gross Living Area | 1,296 Sq Ft | 1,483 Sq Ft | -1,500 | 1,243 Sq Ft | | 1,608 Sq Ft | -2,500 |
| Basement & Finished Rooms Below Grade | Full Unfinished | Full Unfinished | | Full Unfinished | | Full Unfinished | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | F/A-None | F/A-Central | -1,000 | F/A-Central | -1,000 | F/A-Central | -1,000 |
| Energy Efficient Items | Insulated | Insulated | | Insulated | | Insulated | |
| Garage/Carport | 1 Car Garage | 1 Car Garage | | 1 Car Garage | | None | +2,000 |
| Porch, Patio, Deck | Porches | Porch+Patio | | Porches | | Porches | |
| Fireplace(s), etc. | Incp | Incp | | None | | Incp | |
| Fence, Pool, etc. | None | Kit.Appl | -500 | None | | None | |
| Net Adj. (total) | | + [X]- $ -5,500 | | + [X]- $ -2,000 | | + [X]- $ -3,000 | |
| Adjusted Sales Price of Comparable | | $ 88,000 | | $ 78,500 | | $ 82,000 | |

Comments on Sales Comparison (including the subject property's compatibility to the neighborhood, etc.): **Comparables are all located in the Bond Hill area and are considered accurate indicators of value. Although comparable #3 is over six months old, it is considered to be an accurate indicator of value due to its similarity to the subject. The difference in the room count was taken into consideration in the square footage adjustment. No age adjustments are considered necessary, age is based on the effective age. The above comparables are considered the best available.**

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Date, Price and Data Source for prior sales within year of appraisal | No prior sales in last 12 months. | 11-99 for a sales price of $50,000 | No prior sale in last 12 months | No prior sale in last 12 months |

Analysis of any current agreement of sale, option, or listing of the subject property and analysis of any prior sales of subject and comparables within one year of the date of appraisal: **No current activity is reported for the subject property. No personal property was included in the final value.**

| | | |
|---|---|---|
| INDICATED VALUE BY SALES COMPARISON APPROACH . . . . . . . = $ | | 83,000 |
| INDICATED VALUE BY INCOME APPROACH (If Applicable) Estimated Market Rent $ N/A /Mo. x Gross Rent Multiplier N/A = $ | | N/A |

This appraisal is made [X] "as is" [ ] subject to the repairs, alterations, inspections or conditions listed below [ ] subject to completion per plans and specifications.

Conditions of Appraisal: **This report is subject to limiting conditions attached. Due to the lack of available rental data, the GRM is considered to be not applicable.**

Final Reconciliation: **Most weight was given to the market approach since this would reflect the typical buyer's attitude and considered to be the most reasonable approach to value.**

The purpose of this appraisal is to estimate the market value of the real property that is the subject of this report, based on the above conditions and the certification, contingent and limiting conditions, and market value definition that are stated in the attached Freddie Mac Form 439/Fannie Mae Form 1004B (Revised 06-93 ).

I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AS OF **April 25, 2000** (WHICH IS THE DATE OF INSPECTION AND THE EFFECTIVE DATE OF THIS REPORT) TO BE $ **83,000**

| APPRAISER: | SUPERVISORY APPRAISER (ONLY IF REQUIRED): | | |
|---|---|---|---|
| Signature | Signature | [ ] Did [ ] Did Not |
| Name **Keith R. Stieber** | Name | Inspect Property |
| Date Report Signed **April 28, 2000** | Date Report Signed | |
| State Certification # | State Certification # | State |
| Or State License # **409678** | State Ohio | Or State License # | State |

Freddie Mac Form 70 6-93    MCS, a Division of ACI Development (800) 887-7703    Page 2 of 3    Fannie Mae Form 1004 6-93

BRYANT -643

The Kemp Company

File No. A001285

| | |
|---|---|
| Borrower/Client | Bryant, Shirdania |
| Property Address | 1107 Laidlaw Avenue |
| City Cincinnati | County Hamilton |
| Lender McKinley Mortgage | State Ohio     Zip Code 45237 |

## ADDENDUM

### Deffered Maintenance

The front section of the roof appears to be worn and beyond its functional life. No signs of water seepage were noted on the interior. A roof inspection is recommended to determine if roof should be replaced.

BRYANT -644

# FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

Loan Number: **0002662955**                    Date: **6/09/2000**

Creditor: **FIRST FRANKLIN FINANCIAL CORPORATION**
Address: **4790 Red Bank Expressway, Suite 128, Cincinnati, OH 45227**

Borrower(s): **SHIRDENIA BRYANT,,**
Address: **1107 LAIDLAW AVENUE, CINCINNATI, Ohio 45237**
Check box if applicable:

| ANNUAL PERCENTAGE RATE  The cost of your credit as a yearly rate. | FINANCE CHARGE  The dollar amount the credit will cost you. | Amount Financed  The amount of credit provided to you or on your behalf. | Total of Payments  The amount you will have paid after you have made all payments as scheduled. | ☐ Total Sale Price  The total cost of your purchase on credit including your downpayment of |
|---|---|---|---|---|
| **13.524** % e | $ **195,390.20** e | $ **60,025.65** e | $ **255,415.85** | $ <br> $ **N/A** |

| No. of Payments | Amount of Payment | Monthly Beginning | No. of Payments | Amount of Payment | Monthly Beginning | No. of Payments | Amount of Payment | Monthly Beginning |
|---|---|---|---|---|---|---|---|---|
| 24 | 597.43 | 8/01/2000 | | | | | | |
| 6 | 717.51 | 8/01/2002 | | | | | | |
| 6 | 717.51 | 2/01/2003 | | | | | | |
| 6 | 717.51 | 8/01/2003 | | | | | | |
| 317 | 717.50 | 2/01/2004 | | | | | | |
| 1 | 715.14 | 7/01/2030 | | | | | | |

**This loan contains a variable rate feature. Variable rate disclosures are enclosed or have been provided at an earlier date.**

☐ DEMAND FEATURE: This obligation has a demand feature.
INSURANCE: The following insurance is required to obtain credit:
☐ Credit life insurance and credit disability
You may obtain property/flood insurance from anyone you want that is acceptable to the creditor.     ☒ Property insurance     ☐ Flood Insurance
Security: You are giving a security interest in:
☐ Property being purchased     ☐ ☒ Real property you already own.     FILING FEES: $ 17.00
Located At:
**1107 LAIDLAW AVENUE**
**CINCINNATI, Ohio 45237**
Late Charge: If payment is **15 days** late, you will be charged $ **29.87** / **5.00** % of the overdue principal and interest.
Prepayment: If I pay off early, I ☐ may ☒ will not be entitled to a refund of the Prepaid Finance Charge.
☐ may ☐ will not have to pay a penalty.
Assumption: Someone buying your home ☐ ☐ cannot assume the remainder of the mortgage on the original terms.
☐ may, subject to conditions, be allowed to assume the remainder of the mortgage on the original terms.
See your contract documents for any additional information about nonpayment, default, and required repayment in full before
the scheduled date and prepayment refunds and penalties.
_ X _ e means an estimate , when used all date and numerical disclosures except the late payment are estimates.

The undersigned acknowledge receiving and reading a completed copy of this disclosure. Neither you nor the creditor has become obligated to make or
accept this loan, nor is any such obligation made by the delivery or signing of this disclosure.

| **SHIRDENIA BRYANT** | Date | | Date |
|---|---|---|---|
| | Date | | Date |

NOTE: Payments shown above do not include deposits for taxes, and property or flood insurance. HP032     Document # L100

# FEDERAL TRUTH IN LENDING DISCLOSURE STATEMENT

Loan Number: __0002662955__      Date: ___6/09/2000___

Creditor: **FIRST FRANKLIN FINANCIAL CORPORATION**
Address: **4790 Red Bank Expressway, Suite 128, Cincinnati, OH 45227**

Borrower(s): **SHIRDENIA BRYANT,,**
Address: **1107 LAIDLAW AVENUE, CINCINNATI, Ohio 45237**
Check box if applicable:

| ANNUAL PERCENTAGE RATE<br><br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br><br>The dollar amount the credit will cost you. | Amount Financed<br><br>The amount of credit provided to you or on your behalf. | Total of Payments<br><br>The amount you will have paid after you have made all payments as scheduled. | ☐ Total Sale Price<br><br>The total cost of your purchase on credit including your downpayment of |
|---|---|---|---|---|
| 13.524 % e | $ 195,390.20 | $ 60,025.65 e | $ 255,415.85 | $<br>$ N/A |

| No. of Payments | Amount of Payment | Monthly Beginning | No. of Payments | Amount of Payment | Monthly Beginning | No. of Payments | Amount of Payment | Monthly Beginning |
|---|---|---|---|---|---|---|---|---|
| 24 | 597.43 | 8/01/2000 | | | | | | |
| 6 | 717.51 | 8/01/2002 | | | | | | |
| 6 | 717.51 | 2/01/2003 | | | | | | |
| 6 | 717.51 | 8/01/2003 | | | | | | |
| 317 | 717.50 | 2/01/2004 | | | | | | |
| 1 | 715.14 | 7/01/2030 | | | | | | |

**This loan contains a variable rate feature. Variable rate disclosures are enclosed or have been provided at an earlier date.**

☐ DEMAND FEATURE: This obligation has a demand feature.
INSURANCE: The following insurance is required to obtain credit:
☐ Credit life insurance and credit disability                      ☒ Property insurance                      ☐ Flood Insurance
You may obtain property/flood insurance from anyone you want that is acceptable to the creditor.
Security: You are giving a security interest in:
☐ Property being purchased          ☒ Real property you already own.          FILING FEES: $ 17.00
Located At:
**1107 LAIDLAW AVENUE**
**CINCINNATI, Ohio 45237**
Late Charge: If payment is __15 days__ late, you will be charged $__29.87__ / __5.00__ % of the overdue principal and interest.
Prepayment: If I pay off early, I ☐ may ☒ will not be entitled to a refund of the Prepaid Finance Charge.
☐ may ☐ will not have to pay a penalty.
Assumption: Someone buying your home ☒ may, subject to conditions, be allowed to assume the remainder of the mortgage on the original terms. ☐ cannot assume the remainder of the mortgage on the original terms.
See your contract documents for any additional information about nonpayment, default, and required repayment in full before the scheduled date and prepayment refunds and penalties.
__X__ e means an estimate , when used all date and numerical disclosures except the late payment are estimates.

The undersigned acknowledge receiving and reading a completed copy of this disclosure. Neither you nor the creditor has become obligated to make or accept this loan, nor is any such obligation made by the delivery or signing of this disclosure.

_____          _____          _____          _____
**SHIRDENIA BRYANT**          Date          Date

_____          _____          _____          _____
Date          Date

BRYANT -646          NOTE: Payments shown above do not include deposits for taxes, and property or flood insurance. HP032          Document # L100

ITEMIZATION OF AMOUNT FINANCED

LENDER: FIRST DISCOUNT FINANCIAL CORPORATION

LOAN #: 0002662955
DATE: 6/09/2000
BORROWER(S): SHIRDENIA BRYANT,

ADDRESS: 1107 LAIDLAW AVENUE, CINCINNATI, Ohio 45237

PROPERTY: 1107 LAIDLAW AVENUE, CINCINNATI, OH 45237

This form may not cover all items you will be required to pay in cash at settlement, for example, deposits in escrow for real estate taxes and insurance. You may wish to inquire as to the amounts of such other items. You may be required to pay other additional amounts at settlement.

**LOAN AMOUNT:**

**ITEMIZATION OF AMOUNT FINANCED:**     64,000.00
*[Show any of the following with balances > 0]*

| | |
|---|---:|
| Lender Discount Points | |
| Broker Loan Origination Fee | |
| Administration Fee | 2,500.48 |
| Appraisal Review Fee Paid to: | 599.00 |
| Prepaid Interest ( 17 days) | 0.00 |
| Underwriting Fee | 324.87 |
| Processing | 0.00 |
| Messenger Fee to Lender | 225.00 |
| Application Fee | 0.00 |
| Tax Service Fee paid to:  Investor | |
| Flood Certification Fee paid to: Fidelity National Flood | |
| Escrow Fee | |
| Mortgage Insurance Premium | 325.00 |
| Redraw Fee | |
| Wire Fee | |

Buydown Subsidy Fee

TOTAL PREPAID FINANCE CHARGES:     3,974.35

**AMOUNT FINANCED:**     60,025.65

**AMOUNT PAID TO OTHERS ON YOUR BEHALF:**
*[Show any of the following with balances > 0]*

| | |
|---|---:|
| Credit Report Paid to: | |
| Appraisal Paid to:  KEMP COMPANY | |
| Document Preparation | 225.00 |
| Title Insurance | |
| Notary Fee | |
| Recording Fee | |
| Reconveyance Fee : | 102.00 |
| SURVEY | 130.00 |

TOTAL PAID TO OTHERS:     457.00

**AMOUNT PAID ON YOUR ACCOUNT (TAX & INSURANCE RESERVES):**

**ESTIMATED NET PROCEEDS FOR FUNDING:**     63,543.00

All fees marked with an asterisk (*) were paid to your loan broker : MCKINLEY MORTGAGE, LLC
in addition to the fees shown below (if any).
Fees Paid by Lender Outside of Closing to Broker:

| | | | |
|---|---|---|---:|
| 808 | Yield Spread Premium | (Broker Fee) | |
| 809 | Service Release Premium | (Broker Fee) | 640.00 |

I (WE) HEREBY ACKNOWLEDGE RECEIVING AND READING A COPY OF THIS DISCLOSURE.

SHIRDENIA BRYANT     DATE         DATE

    DATE         DATE

Document # T-025

L025.OVL

Return To:

First Franklin Financial Corporation
2150 North First Street
San Jose, CA 95131
Loan number: 0002662955/5,516

—————————————[Space Above This Line For Recording Data]—————————————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated    June 9, 2000
together with all Riders to this document.
(B) "Borrower" is

SHIRDENIA BRYANT, an unmarried woman

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is FIRST FRANKLIN FINANCIAL CORPORATION

Lender is a    Corporation
organized and existing under the laws of    Delaware

OHIO-Single Family-FNMA/FHLMC UNIFORM INSTRUMENT

-6(OH) (9904)    Form 3036 3/99

Page 1 of 15    Initials: _____

VMP MORTGAGE FORMS - (800)521-7291

Document # L0740H



BRYANT -648

Lender's address is **2150 North First St.,
San Jose, CA 95131**
Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated **June 9, 2000**
The Note states that Borrower owes Lender
**SIXTY FOUR THOUSAND & 00/100**
Dollars
(U.S. $    **64,000.00**    ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **July First, 2030**

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all riders to this Security Instrument that are executed by Borrower. The following
riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |
| | | **Prepayment Rider** |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(I) "Community Association Dues, Fees and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

(K) "Escrow Items" mean those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for (i)
damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the
Property, (iii) conveyance in lieu of condemnation or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (1) principal and interest under the
Note, plus (2) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

BRYANT -649

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (a) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (b) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the county of Hamilton

[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

**Legal Description attached hereto and made a part hereof**
**Adjustable Rate Rider attached hereto and made a part hereof**


**Prepayment Rider attached hereto and made a part hereof**


Parcel ID Number: **118-1-61**                          which currently has the address of
**1107 LAIDLAW AVENUE**                                                              [Street]
**CINCINNATI**                          [City], Ohio     **45237**     [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this

-6(OH) (9904)                     Page 3 of 15          Initials: _____          Form 3036  3/99

Document # L0760H

BRYANT -650

Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment(s) or partial payment(s) if the payment(s) or partial payment(s) are insufficient to bring the Loan current. Lender may accept any payment(s) or partial payment(s) insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment(s) or partial payment(s) in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment(s) to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (1) interest due under the Note; (2) principal due under the Note; (3) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

Document # L0770H

BRYANT -651

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (1) sufficient to permit Lender to apply the Funds at the time specified under RESPA and (2) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

Document # L0780H

BRYANT -652

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (1) a one-time charge for flood zone determination, certification and tracking services or (2) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

-6(OH) (9904)                                    Page 6 of 15                    Initials: _____                    Form 3036  3/99

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (1) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (2) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (1) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (2) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (3) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to, (1) paying any sums secured by a lien which has priority over this Security Instrument, (2) appearing in court, and (3) paying reasonable

BRYANT -654

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until the Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument,

Document # L0810H

BRYANT -655

whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this

BRYANT -656

Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable

-6(OH) (9904)

Page 10 of 15

Initials: _____

Form 3036   3/99

Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (1) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (2) words in the singular shall mean and include the plural and vice versa, and (3) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (i) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (ii) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (iii) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Document # L0840H

BRYANT -658