requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer(s) and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (1) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (2) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (3) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law and (4) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (1) that is in violation of any Environmental Law, (2) which creates an Environmental Condition or (3) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (1) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge; (2) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (3) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Document # L0850H

BRYANT -659

NON UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, costs of title evidence.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Certain Other Advances.** In addition to any other sum secured hereby, this Security Instrument shall also secure the unpaid principal balance of, plus accrued interest on, any amount of money loaned, advanced or paid by Lender to or for the account and benefit of Borrower, after this Security Instrument is delivered to and filed with the Recorder's Office,
County, Ohio, for recording. Lender may make such advances in order to pay any real estate taxes and assessments, insurance premiums plus all other costs and expenses incurred in connection with the operation, protection or preservation of the Property, including to cure Borrower's defaults by making any such payments which Borrower should have paid as provided in this Security Instrument, it being intended by this Section 24 to acknowledge, affirm and comply with the provision of Section 5301.233 of the Revised Code of Ohio.

-6(OH) (9904)　　　　　　　　Page 13 of 15　　　Initials: _____　　　　Form 3036  3/99

Document # L086OH

BRYANT -660

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____

_____

_____ (Seal)
**SHIRDENIA BRYANT**           -Borrower

_____ (Seal)
          -Borrower

_____ (Seal)     _____ (Seal)
          -Borrower                                    -Borrower

_____ (Seal)     _____ (Seal)
          -Borrower                                    -Borrower

_____ (Seal)     _____ (Seal)
          -Borrower                                    -Borrower

Document # L0870

BRYANT -661

STATE OF OHIO,                                              County ss:

On this           day of                    , before me, a Notary Public in and for said County and State, personally appeared
**SHIRDENIA BRYANT**,

the individual(s) who executed the foregoing instrument and acknowledged that he/she/they did examine and read the same and did sign the foregoing instrument, and that the same is his/her/their free act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

My Commission Expires:

_____
Notary Public

This instrument was prepared by

# PREPAYMENT RIDER

This prepayment rider is made this __9TH__ day of __JUNE__, 2000, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to

**FIRST FRANKLIN FINANCIAL CORPORATION, A DELAWARE CORPORATION**

(the "lender") of the same date and covering the property described in the Security Instrument and located at: 1107 LAIDLAW AVENUE
CINCINNATI, OH 45237

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Note or Security Instrument, Borrower and Lender further covenant ad agree as follows:

Except as provided below, Borrower may make a full prepayment of a partial prepayment of principal at any time without paying any charge. However, if within the first __3__ year(s) after the date Borrower executes the Note, Borrower makes a full prepayment (including prepayment occurring as a result of the acceleration of the maturity of the Note), Borrower must, as a condition precedent to a full prepayment, pay a prepayment charge that will not be greater the 1% of the original principal amount..

## NOTICE TO BORROWER

Do not sign this loan agreement before you read it. This loan agreement provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

_____    _____
SHIRDENIA BRYANT


_____    _____

BRYANT -663

# ADJUSTABLE RATE RIDER
(LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 9th day of June, 2000, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to

**FIRST FRANKLIN FINANCIAL CORPORATION**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: 1107 LAIDLAW AVENUE, CINCINNATI, Ohio 45237

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of 10.750 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Change Dates

The interest rate I will pay may change on the first day of July, 2002, and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR INDEX - Single Family
Page 1 of 3
-6268008 (9710)    ELECTRONIC LASER FORMS, INC. - (800)327-0545

Document # L390X

BRYANT -664

GENERAL WARRANTY DEED, Statutory Form No. 22-2    (Reprinted 5/88)

# General Warranty Deed*

Prescott Bigelow, IV, Trustee

, of Hamilton County, Ohio for valuable consideration paid, grant(s) with general warranty covenants, to Shirdenia Bryant, unmarried , whose tax-mailing address is

1107 Laidlaw Avenue Cincinnati, Ohio 45237

the following **REAL PROPERTY**: Situated in the County of Hamilton in the State of Ohio and in the City of Cincinnati :

Situated in the County of Hamilton, in the State of Ohio and in the Township of Millcreek and more particularly described as follows: Being part of Section 11, Millcreek Township, Fractional Range 2, of the Miami Purchase, and being the East twenty (20) feet of Lot No. Twenty-one (21) and the West twenty (20) feet of Lot No. Twenty-two (22) on the Plat of the First Ruffner Subdivision in Bond Hill, recorded in Plat Book 27, pages 58 and 59 of the records of Hamilton County, Ohio.

Prior Instrument Reference: Volume 7558 Page 1954 of the Deed Records of Hamilton County, Ohio.

Grantor, releases all rights of dower therein. Witness wife(husband) of the her hand(s) this 9th day of June , 2000

Signed and acknowledged in presence of:

_____    _____

_____    Prescott Bigelow, IV, Trustee

State of Ohio                       County of Hamilton    ss.
BE IT REMEMBERED, That on this 9th day of June , 2000 , before me,
the subscriber, a Notary Public                in and for said state, personally came,
Prescott Bigelow, IV, Trustee                  the Grantor(s) in the
foregoing deed, and acknowledged the signing thereof to be    his    voluntary act and deed.
IN TESTIMONY THEREOF, I have hereunto subscribed my name and affixed my official seal on the day and year last aforesaid.

My Commission Expires: _____

This instrument was prepared by  VINTAGE TITLE AGENCY, INC.
                                 McKinley Mortgage
                                 Cincinnati, Ohio

Auditor's and Recorder's Stamps

*See Sections 5302.05 and 5302.06 Ohio Revised Code.                BRYANT -665
DCOH01W              Page 1 of 1
                     FIRST DATA SYSTEMS, INC.  LOAN #: 2662955      1-800-800-3132

first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Six and One-Eighth percentage point(s) ( 6.125 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 13.750 % or less than 10.750 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months; subject to the following limits: My interest rate will never be greater than 16.750 %, nor less than 10.750 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 17 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the

-6268008 (9710)

Page 2 of 3

Document # L391X

BRYANT -666

transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____(Seal)    _____(Seal)
SHIRDENIA BRYANT            -Borrower                                -Borrower

_____(Seal)    _____(Seal)
                            -Borrower                                -Borrower

_____(Seal)    _____(Seal)
                            -Borrower                                -Borrower

_____(Seal)    _____(Seal)
                            -Borrower                                -Borrower

-6268008 (9710)             Page 3 of 3

Document # L392X

From: **FIRST FRANKLIN FINANCIAL CORPORATION**
4790 Red Bank Expressway, Suite 128
Cincinnati, OH 45227

Re: Loan # 0002662955
Property Address  1107 LAIDLAW AVENUE
CINCINNATI, Ohio 45237

To: SHIRDENIA BRYANT,

Dear Homeowner:

A) All mortgage servicing correspondence will be mailed to the above referenced property address. In order to ensure proper receipt of all mortgage servicing notifications (i.e. monthly statement, Q & A booklets, etc.) please indicate the correct mailing address if it is different from the property address.

Please indicate (X):

( ) The property address is correct as referenced above and should be used to send correspondence.

( ) The proper mailing address is: _____
_____
_____

B) The monthly payments on the above referred to loan are to begin on August 1, 2000, and will continue monthly until July 1, 2030.

Your monthly payment will consist of the following:

| | |
|---|---|
| PRINCIPAL AND INTEREST..................................................................$ | 597.43 |
| MMI / PMI INSURANCE.................................................................. | |
| RESERVE FOR COUNTY TAXES........................................................ | |
| RESERVE FOR HAZARD INSURANCE.............................................. | |
| RESERVE FOR FLOOD INSURANCE................................................ | |
| RESERVE FOR TOWNSHIP TAXES.................................................. | |
| RESERVE FOR SCHOOL TAXES...................................................... | |
| RESERVE FOR CITY TAXES............................................................. | |
| RESERVE FOR GROUND RENT TAXES........................................... | |
| TOTAL MONTHLY PAYMENTS..........................$ | 597.43 |

***Please be aware that if you have an impound account, you may see a change in your initial monthly payment figures due to information available after the closing of your loan.

First Franklin engages the services of Option One as its servicer. You will be receiving a billing notice from Option One within two weeks of your loan funding. Option One has the right to collect your payments and this in no way affects the terms and conditions of the mortgage instruments, other than the terms directly related to the servicing of your loan.

Please send your payments to: First Franklin Financial
3 Ada Street
Irvine, CA 92618

Any correspondence, or calls, in reference to your loan, please refer to the above loan number.

Copy received and acknowledge:

Date: 6/09/2000

_____        _____
SHIRDENIA BRYANT

_____        _____

_____

** If you have not received your coupons in time to meet your first payment, please send this letter for proper credit.

Document # L890

BRYANT -668                                                                                      HP015

## OCCUPANCY DECLARATION

Lender: **FIRST FRANKLIN FINANCIAL CORPORATION**
4790 Red Bank Expressway, Suite 128
Cincinnati, OH 45227

RE:  LOAN NO:          0002662955
     PROPERTY ADDRESS: 1107 LAIDLAW AVENUE
                      CINCINNATI, Ohio 45237

The undersigned Borrower of the above described property does hereby declare, under penalty of perjury, as follows:

1. Borrower shall occupy, establish, and use the Property as Borrowers principal residence within sixty days after execution of the Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

   You are hereby informed that Lender from time to time makes spot checks for owner occupancy on properties upon which we have secured a mortgage.

   Between the first and thirteenth day, after close of escrow, occupancy may be checked more than once. If after this check Lender is to believe that you never intended to occupy the subject as your primary residence, we may choose to call your note due and payable or increase your note rate by 100 basis points, in accordance with the applicable sections itemized on your note and deed of trust and allowable by law.

2. Borrower shall be in default, if during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a Principal residence.

3. The Lender has the right to foreclose on the loan under item 6 of the Deed of Trust if item 1 or 2 above are violated.

4. Should Borrower's intention change prior to close transaction, then it is agreed that Lender will immediately be notified of that fact.

5. Borrower understands that without this declaration of intention, Lender may not make the loan in connection with the property.

I DECLARE, UNDER PENALTY OF PERJURY, THAT THE FOREGOING DECLARATION IS TRUE AND CORRECT.

DATED: 6/09/2000

BORROWER_____       _____
         SHIRDENIA BRYANT

         _____       _____

                _____

State of  Ohio              )
County of _____)

On _____, before me, the undersigned, a Notary Public in and for said State, personally appeared

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that, he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.
(Reserved for official seal)

                                              Signature_____

                                              _____
                                              Name (typed or printed)

                              My Commission Expires:

                        Document # L882                    BRYANT -669

## HAZARD INSURANCE REQUIREMENTS

Lender:    **FIRST FRANKLIN FINANCIAL CORPORATION**
        **4790 Red Bank Expressway, Suite 128**
        **Cincinnati, OH 45227**

To: Escrow Officer

Following are the minimum hazard insurance requirements for this company. Please complete and return this form as soon as the information is available. We will require proof that the insurance premium has been paid, and date when renewal is due if property is a refinance.

Escrow:    **VINTAGE TITLE**                         Date:         **6/09/2000**
        **281 BUTTERMILK PIKE**                Escrow No.:      **V9937**
        **FT. MITCHELL, Kentucky 41017**        Our Loan No.:    **0002662955**

1. No Lender shall require a Borrower under a loan secured by real property to provide hazard insurance coverage on that property in an amount exceeding the replacement value of the improvements on the property as established by the property insurer as selected by the Borrower.

2. Insurance company must have an "A" rating or better in the latest Best's Insurance Guide.

3. Coverage shall provide at least Broad Form on one to four units, and at least "Vandalism & Malicious Mischief" over four units, with no deviation. Homeowner's policies must be equal to HO 2 form.

4. Policies may contain deductibles on any peril as follows:

   | Loan Amount | Deductible | Loan Amount | Deductible |
   |---|---|---|---|
   | $50,000.00 or less | $100.00 | $100,000.00 - $999,999.99 | $500.00 |
   | $50,001.00 - $99,999.99 | $250.00 | $1,000,000.00 or more | $1,000.00 |

5. Policy must be for at least a one year term. Premiums may be on an annual installation basis if policy provides that company will be notified in writing prior to cancellation, for any case.

6. If an existing policy is provided and will expire within three months from recording, it must be renewed for the required term as noted above. These policies will be acceptable if they are current.

7. All forms and endorsements pertaining to the company requirements must appear on the Declaration page of the policy.

8. New policies must be accompanied by signed Broker of Record Authorization if borrower has recently changed insurance agents.

9. Lender's Loss Payable Endorsement 438 BFU to be affixed in favor of:
       **First Franklin Financial**
       **"its successors and/or assigns,**
       **as their interest may appear"**
       **3 Ada Street**
       **Irvine, CA 92618**
       **Loan number: 0002662955**

10. Property address and insurance names to be designated as per ALTA Policy.

11. Our loan number must be shown on the policy and any subsequent endorsements.

12. Effective date of new policies, endorsements, and/or assignments shall be as of, or prior to, date of recording.

All policies, assignments, and/or endorsements, for completion of our loan escrow, are to be mailed to this lending office, attention Loan Processing.

**AN ACCEPTABLE POLICY, WITH ENDORSEMENTS AND/OR ASSIGNMENTS, MUST BE FORWARDED AND RECEIVED BY US BEFORE THE LOAN IS FUNDED, OR THE COMPANY MAY BE FORCED TO PLACE INTERIM COVERAGE AT AN ADDITIONAL COST TO THE BORROWER.**

                          By: **DEBORAH DUNCAN**
                                **FIRST FRANKLIN FINANCIAL CORPORATION**

_____      _____
**SHIRDENIA BRYANT**

_____      _____

_____      _____

The minimum amount of flood insurance required is the lesser of the outstanding principal balance of the Mortgage Loan, the full insurable value of the property, or the maximum amount of flood insurance available.

                                                                                                   Form# HP019

Date:    6/09/2000

Lender:    FIRST FRANKLIN FINANCIAL CORPORATION

Borrower(s):    SHIRDENIA BRYANT,

Loan Number:    0002662955

Property Address:    1107 LAIDLAW AVENUE
CINCINNATI, Ohio 45237

## WARRANTY AND COMPLIANCE AGREEMENT

In order to induce the lender to make the above loan and in consideration thereof, the undersigned borrower(s):

1. Warrants and represents to the lender that all information it or its agents have provided to the lender, including without limitation all information contained in the loan application and all documents associated therewith, is true and accurate in all respects as of the date below. In making this statement, the borrower understands that (a) the lender has relied on the accuracy of such information in its decision to make the loan, and (b) if any of such information is inaccurate, the lender or its assignee may foreclose or cancel the loan and pursue other legal remedies, including damages for fraud UNDER THE PROVISIONS OF THE DEED OF TRUST, ITEM 6.

2. Agrees that if any document evidencing the loan does not correctly or accurately reflect the terms of loans offered by lender in the program under which the undersigned applied, including, but not limited to, maturity date, interest rate, refinance options, etc., or is not on a form approved for such program as a result of a mistake or clerical error by lender, whether such mistake or error is mutual or unknown to the undersigned, the undersigned will:

   (a) execute and/or initial modifications, amendments, or replacement documents as necessary to accurately and correctly reflect the terms of the loan or to ensure the loan is evidenced by the proper documentation; and

   (b) take such other actions as the lender may reasonably request under the circumstances to correct such mistake or clerical error.

In this connection, the undersigned acknowledges that the lender is a mortgage banker which only makes loans that meet criteria established and/or approved by secondary market investors to whom many of the loans it makes are ultimately sold. The undersigned further understands that the lender only offers loan programs which are approved by such investors or meet their established criteria, that any failure to perform the covenants and promises set forth in this agreement may render a loan unmarketable and thereby result in loss or damage to the lender, and that the undersigned's execution of this agreement and willingness to perform the obligations assumed herein are material to the lender's decision to make the loan.

_____    _____
SHIRDENIA BRYANT         Date                        Date

_____    _____
                         Date                        Date

STATE OF    Ohio

COUNTY OF

On this _____ day of _____ in the year of _____, before me, the undersigned, a Notary Public in and for said State, personally appeared _____
_____
_____, personally known to me (or proved on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Notary Public in and for said State.

Form # HP018

BRYANT -671    Document # L874

# VARIABLE RATE MORTGAGE PROGRAM DISCLOSURE
(This is neither a contract nor a commitment to lend)

LENDER: **FIRST FRANKLIN FINANCIAL CORPORATION, a Delaware Corporation**

VARIABLE RATE LOAN PROGRAM: 6 Month LIBOR, 24 Month Initial Rate, 3/1/6 Caps (Discount Feature)

This disclosure describes the features of the adjustable-rate mortgage (ARM) program you are considering. Information on other ARM programs is available upon request.

### How Your Interest Rate and Payment are Determined

- Your interest rate will be based on an index rate plus a margin.
- Your payment will be based on the interest rate, loan balance, and loan term.
  - The interest rate will be based on the average of interbank offered rates for 6 Month U.S. dollar-denominated deposits in the London Market (LIBOR), plus our margin. Ask us for our current interest rate and margin.
  - Information about the index is published in The Wall Street Journal.
- Your interest rate will equal the index rate plus our margin unless your interest rate "caps" limit the amount of change in the interest rate.
- This variable rate mortgage loan has a discount feature, and your initial interest rate will not be based on the index used for later adjustments. Ask us for the amount of current interest rate discounts. Please note, because your initial interest rate is discounted, your interest rate may increase at the first adjustment even if the index decreases.

### How Your Interest Rate Can Change

- The first interest rate adjustment will occur approximately 24 months after the date of the note.
- Your interest rate can change every six months after the initial adjustment.
- Your interest rate cannot increase more than 3.000 percentage points at the initial adjustment.
- Your interest rate cannot increase or decrease more than 1.000 percentage point at each adjustment thereafter.
- Your interest rate will never go below the initial interest rate.
- Your interest rate cannot increase more than 6.000 percentage points over the term of the loan.
- Your interest rate will be rounded to the nearest 0.125% at each adjustment.

### How Your Monthly Payment Can Change

- Your monthly payment can increase or decrease substantially based on changes in the interest rate every six months.
- For example, on a $10,000, 30 year loan with an initial interest rate of 7.500 percent (interest rate reflective of index plus margin, less the amount of the discount, rounded to the nearest 0.125%) in effect as of the first week ending January 1999, the maximum amount that the interest rate can rise under this program is 6.0 percentage points, to 13.5 percent, and the monthly payment can rise from a first-year payment of $69.92 to a maximum of $112.68 in the fourth year.
- To see what your payments would be, divide your mortgage amount by $10,000; then multiply the monthly payment by that amount. For example, the monthly payment for a mortgage amount of $60,000 would be $419.52:
  $60,000 ÷ $10,000 = 6.0 × 69.92 = $419.52.
- You will be notified in writing at least 25 days before the due date of a payment at a new level. This notice will contain information about your index, interest rates, payment amount, and loan balance.

I/We hereby acknowledge receipt of this variable rate program disclosure and a copy of the Consumer Handbook on Adjustable Rate Mortgages on the date indicated below.

_____     _____     _____     _____
SHIRDENIA BRYANT                    Date                                                    Date

_____     _____     _____     _____
                                    Date                                                    Date

2 Yr. Fixed ARM                                                                    Rev 5/00

BRYANT -672

**SIGNATURE LETTER**

I_____ STATE THAT THIS IS MY LEGAL SIGNATURE.

_____
BORROWER

I_____ STATE THAT THIS IS MY LEGAL SIGNATURE.

_____
BORROWER

I_____ STATE THAT THIS IS MY LEGAL SIGNATURE.

_____
BORROWER

I_____ STATE THAT THIS IS MY LEGAL SIGNATURE.

_____
BORROWER

State of   Ohio                            )

County of                                  )

On _____, before me, the undersigned, a Notary Public in and for said State, personally appeared
  SHIRDENIA BRYANT,
,
,

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that, he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

   Witness my hand and official seal.
   (Reserved for official seal)

Signature_____

_____
Name (typed or printed)

MY COMMISION EXPIRES:

BRYANT -673
HP007

Document # L011

0002662955

## Non Impound Notice

Lender: FIRST FRANKLIN FINANCIAL CORPORATION
Date: 6/09/2000

**Lender will not impound for real estate taxes and homeowners insurance coverage on this new loan.**

**The monthly payment covers only principal and interest on the loan.**

**I am fully responsible for payment real estate taxes and homeowners insurance policy premiums when they become due and payable.**

_____   Date_____

_____   Date_____

_____   Date_____

_____   Date_____

Document # L197

BRYANT -674

# Correction Agreement
# Limited Power of Attorney

On June 9th, 2000 the undersigned borrower(s), for and in consideration of the approval, closing and funding of their mortgage loan (# 0002662955 ) hereby grant FIRST FRANKLIN FINANCIAL CORPORATION as lender limited power of attorney to correct and/or execute or initial all typographical or clerical errors discovered in any or all of the closing documentation required to be executed by the undersigned at settlement. In the event this limited power of attorney is exercised, the undersigned will be notified and receive a copy of the document executed or initialed on their behalf.

THIS LIMITED POWER OF ATTORNEY MAY NOT BE USED TO INCREASE THE INTEREST RATE THE UNDERSIGNED IS PAYING, INCREASE THE TERM OF THE UNDERSIGNED'S LOAN, INCREASE THE UNDERSIGNED'S OUTSTANDING PRINCIPAL BALANCE OR INCREASE THE UNDERSIGNED'S MONTHLY PRINCIPAL AND INTEREST PAYMENTS (AND/OR THE RATE OR MARGIN IN AN ADJUSTABLE RATE LOAN). Any of these specified changes must be executed directly by the undersigned.

This limited power of attorney shall automatically terminate 180 days from the closing date of the undersigned's mortgage loan.

IN WITNESS WHEREOF, the undersigned have executed this Limited Power of Attorney as of the date and year first above referenced.

_____   _____
SHIRDENIA BRYANT

_____   _____

State of

County of

On _____ before me, _____
         Date                                                Name and Title of Officer (e.g. "Jane Doe, Notary Public")

Personally appeared SHIRDENIA BRYANT,

Personally known to me – OR – proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____

Page 1 of 1

BRYANT -675

Document # L0045

# NAME AND SIGNATURE AFFIDAVIT

I, _____SHIRDENIA BRYANT_____, certify that I am one and the same person as:

_____SHIRDENIA BRYANT_____          _____
(Type name variation)                                  (Signature variation)

_____                    _____
(Type name variation)                                  (Signature variation)

_____                    _____
(Type name variation)                                  (Signature variation)

State of    Ohio

County of

    On _____, before me, the undersigned, a Notary Public in and for said State, personally appeared,

personally known to me (or proved to me on the basis of satifactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that, he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.
(Reserved for official seal)

_____
Signature

_____
Name (typed or printed)

My Commission Expires:

Document # L294A

BRYANT -676
FF174A

## BORROWER'S CERTIFICATION & AUTHORIZATION

### Certification

The undersigned certify the following:

1. I/We have applied for a mortgage loan from **FIRST FRANKLIN FINANCIAL CORPORATION**
   In applying for the loan, I/We completed a loan application containing various information on the purpose of the loan, the amount and source of the downpayment, employment and income information, and assets and liabilities. I/We certify that all of the information is true and complete. I/We made no misrepresentations in the loan application or other documents, nor did I/We omit any pertinent information.

2. I/We understand and agree that **FIRST FRANKLIN FINANCIAL CORPORATION** reserves the right to change the mortgage loan review process to a full documentation program. This may include verifying the information provided on the application with the employer and/or the financial institution.

3. I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements when applying for this mortgage, as applicable under the provisions of Title 18, United States Code, Section 1014.

To Whom It May Concern: Authorization to Release Information

1. I/We have applied for a mortgage loan from **FIRST FRANKLIN FINANCIAL CORPORATION**
   As part of the application process, **FIRST FRANKLIN FINANCIAL CORPORATION** the mortgage guaranty, insurer and any lender underwriting my loan may verify information contained in my/our loan application and in other documents required in connection with the loan, either before the loan is closed or as part of its quality control program.

2. I/We authorize you to provide to **FIRST FRANKLIN FINANCIAL CORPORATION** and to any investor to whom **FIRST FRANKLIN FINANCIAL CORPORATION** may sell my mortgage and to the mortgage guaranty insurer, any and all information and documentation that they request. Such information includes, but is not limited to, employment history and income; bank, money market, and similar account balances; credit history; copies of income tax returns, W-2 income information, self employment income, social security income, and any other detailed earning information requested.

   I am the individual to whom the record pertains (or person who is authorized to sign on behalf of that individual). I understand that any false representation to knowingly and willfully obtain information from social security records is punishable by a fine of not more than $5,000 or one year in prison.

3. **FIRST FRANKLIN FINANCIAL CORPORATION** or any investor that purchases the mortgage or the mortgage guaranty insurer may address this authorization to any party named in the loan application.

4. A copy of this authorization may be accepted as an original.

5. Your prompt reply to **FIRST FRANKLIN FINANCIAL CORPORATION** the investor that purchased the mortgage or the mortgage guaranty insurer is appreciated.

_____   _____
SHIRDENIA BRYANT                   (Social Security Number)

_____   _____
                                   (Social Security Number)

_____   _____
                                   (Social Security Number)

_____   _____
                                   (Social Security Number)

_____   _____
                                   (Social Security Number)

_____   _____
                                   (Social Security Number)

Document # L733                                    Fannie Mae Form 1097 HP025

BRYANT -677