## ACKNOWLEDGEMENT OF LEGAL REPRESENTATION

The undersigned hereby acknowledges that John R. Meckstroth, Jr. has been retained by and solely represents Prescott Bigelow IV in regards to those matters pertaining to the purchase of the property located at 1107 Laidlaw Avenue, Cincinnati, Ohio 45237. The charges appearing on the settlement statement against the undersigned were undertaken to clear the title to the property. Said charges were added to increase the sales price and did not reduce the net amount due from the purchaser.

The undersigned acknowledges she is aware of her right to seek her own attorney and has elected to proceed without such legal representation.

*Shirdenia Bryant* (signature)
Shirdenia Bryant



DEFENDANT'S
EXHIBIT NO. 13
FOR IDENTIFICATION
Bryant
DATE 9-3-03   RPTR TM

## **PROMISSORY NOTE**

FOR VALUE RECEIVED, the undersigned promises to pay to Shirdenia Bryant the principal amount of Nineteen Thousand and 00/100 ($19,000.00) Dollars without interest. Said amount shall be due and payable within sixty (60) days of the date of this note or when the borrower has paid the amount due under a note and mortgage to Nationsbanc Mortgage Corporation for the property located at 1107 Laidlaw Avenue, Cincinnati, Ohio 45237, whichever date occurs first.

Signed this 27th day of January 1998.

_____
John Marfisi



# LEASE AGREEMENT

THIS LEASE AGREEMENT, entered into this _6nt_ day of January, 1999, by and between PRESCOTT BIGELOW, IV (hereinafter referred as Landlord) and SHIRDENIA BRYANT (hereinafter referred to as Tenant);

For the considerations, on the terms and subject to the conditions that follow, the Landlord leases and to the Tenant and the Tenant leases from the Landlord the real property and appurtenances thereto commonly known as 1107 Laidlaw Avenue, Cincinnati, OH 45237 (hereinafter referred to as the premises).

1. Term. The term of this agreement shall be the period from January 1, 1999 and running through December 31, 1999.

2. Payments. The total amount due under this agreement shall be the sum of Seven Thousand Two Hundred and 00/100 ($7,200.00) Dollars (US) payable advance as follows:

   A. Two Hundred Fifty and 00/100 ($250.00) Dollars upon the execution of this agreement.

   B. Two Hundred Fifty and 00/100 ($250.00) Dollars on January 15, 1999 and the same amount on the first day and fifteenth day of each month beginning in February and thereafter.

The monthly payments shall be made at the Seller's address of P.O. Box 30404, Cincinnati, Ohio 45230 or at such other place or places as the Landlord shall from time to time designate in writing addressed to the Tenant and mailed to or left at the premises.

3. Use of the Premises. The Tenant shall use the premises in a careful, safe and proper manner for residential purposes only. In no event shall the Tenant use or permit the premises to be used in any manner whatsoever which shall be unlawful, which shall cause commission of waste therein, or which shall disturb, in any way the peaceful and quiet use and enjoyment of the property of others.

4. Repairs and Maintenance. The Tenant shall keep the exterior of the premises (including window glass) in as good repair as the same is at the commencement of the term of this lease, ordinary wear and tear excepted. The Tenant shall keep the exterior of the premises neat, clear and free of rubbish, including leaves, ice and snow and other obstacles, and shall cut all grass. The


DEFENDANT'S EXHIBIT NO. 15 FOR IDENTIFICATION Bryant DATE: 9-3-03 RPTR: tqm

Tenant shall keep the interior of the premises and its structural portions (including heating equipment, electrical wiring, and plumbing) in good repair and order as the same is at the commencement of the term of this lease, ordinary wear and tear excepted. The Landlord shall not be responsible for or obligated to repair any damage to the premises willfully or negligently caused by the Tenant or the Tenant's agents, invitees, licensees, or guests, which damage shall be repaired at the Tenant's cost.

5. <u>Taxes and Assessments</u>. The Landlord shall pay all installments of real estate taxes and assessments and any interest or penalties related thereto which become due and payable with respect to the premises at any time during the term of this lease.

6. <u>Utilities</u>. The Tenant shall furnish and pay for fuel, water, electricity, telephone, sewage and rubbish disposal and any and all other utilities used on, or in connection with the premises during the term of this lease and the Tenant shall save and keep harmless and indemnify the Landlord from any expense in connection therewith.

7. <u>Alterations, Additions and Improvements to Premises</u>. The Tenant shall not make any alteration, addition, or improvement to the premises without first obtaining the written consent of the Landlord, and any such consent may be made subject to any terms and conditions that the Landlord may impose. Any alteration, addition, or improvement to the premises shall become and remain the property of the Landlord, and the Tenant shall not be required to remove the improvements upon termination of this lease, unless the Landlord otherwise agrees and specifies when granting written consent thereto.

8. <u>Damage to Premises</u>. If by fire or other casualty the premises or appurtenances are destroyed or damaged to the extent that the Tenant is deprived of occupancy of use of the premises, the Landlord or Tenant may elect to: (a) proceed with due diligency to restore the premises and appurtenances to substantially the same condition as existed before such damage or destruction or (b) cancel this lease as of the date of such fire or casualty by written notice to the other party not more than 30 days thereafter. Should the parties elect to proceed under (a) above, all monthly payments shall abate until restoration or repair is completed. In the event the parties hereto are unable to agree on how to proceed, they shall proceed under (b) above.

9. <u>Damage to Contents of Premises</u>. Except in the case of willful acts of Landlord, the Landlord shall not be responsible or liable for loss of or damage to the contents of the premises, regardless of who owns the contents and regardless of how or by whom the loss or damage is caused Tenant.

10. <u>Indemnification</u>. The Tenant shall save and keep harmless and indemnify the Landlord from and against all loss, damage or injury to any person or property while on the premises arising out of the use or occupancy of the premises by the Tenant or the Tenant's employees, guests, licensees, or invitees, or which shall be occasioned by any nuisance made or suffered in the premises.

In addition, the Tenant shall maintain and pay for adequate comprehensive public liability insurance against such hazards in the name of the Landlord and the Tenant, as their respective interest may appear, which insurance shall be with a company authorized to issue the same in the State of Ohio and which shall have limits satisfactory to the Landlord.

11. <u>Entry by Landlord</u>. The Landlord and the Landlord's agents shall have the right to enter upon the premises at all reasonable times for the purposes of inspecting the condition of the premises upon 24 hours advance notice, and inspections no more frequently than monthly.

12. <u>Default by Tenant</u>. If the Tenant fails to pay any installment of rent fifteen (15) days after it becomes due hereunder, or if the Tenant fails to observe or perform obligations herein imposed on the Tenant, or if the Tenant abandons or vacates the premises at any time during the term of this lease, or if the Tenant makes an assignment for the benefit of creditors or enters into a composition agreement with creditors, or if the interest of the Tenant in the premises is attached, levied upon, or seized by legal process, or if a bankruptcy or insolvency proceeding is filed by the Tenant, or the Tenant is adjudged a bankrupt, or if a receiver is appointed for the Tenant by any court of competent jurisdiction, or if this lease is assigned or terminated by operation of law; in any such event, then or at the time thereafter, without prior notice to or demand upon the Tenant, at the option of the Landlord, the Landlord shall have the right to immediately resort to the remedies authorized by the law and either (a) declare this lease agreement to be rescinded, in which event this lease, all rights of the Tenant, and all duties of the Landlord shall immediately cease and terminate, and the Landlord may possess and enjoy the premises as though this lease had never been made, without prejudice, subject however, to any and all rights of action against the Tenant having at the time of recision accrued to the Landlord for rent, damages or breach of covenant, or (b) relet the premises on behalf of the

Tenant for the highest rent reasonable obtainable in the judgement of the Landlord, which event shall not be considered as a surrender or acceptance-back of the premises or termination of this lease, and recover from the Tenant any deficiency between the amount received as rent upon such reletting and the amount of rent payable under this lease plus any expenses incurred by the Landlord in connection with such reletting, including without limitation, the expenses of any decorating, repairs or alterations that the Landlord deems necessary or appropriate to make in connections with such reletting.

All payments made by Tenant to Landlord of whatever nature may be retained by Landlord as liquidated damages in the event of default as provided herein.

13. <u>Assignment or Subletting</u>. Tenant shall not assign any right, title or interest hereunder or sublet all or any part of the premises without first obtaining the written consent of the Landlord. If the Tenant assigns any right, title or interest hereunder or sublets all or any part of the premises, neither the assignment nor the subletting nor the receipt and acceptance by the Landlord from the assignee or subtenant or rent shall operate to release the Tenant from the terms, covenants, and conditions hereof unless the Landlord specifically so agrees in writing.

14. <u>Quiet Enjoyment</u>. If the Tenant pays the rent and keeps and performs the covenants of this lease on the Tenant's part to be kept and performed, according to the provisions and conditions hereof, the Tenant shall peaceably and quietly hold, occupy, and enjoy said premises during the term hereof, or any renewals without any hinderance or molestation by the Landlord or the Landlord's successors or assigns.

15. <u>Security Deposit</u>. The Landlord and Tenant acknowledge that there has been no security deposit paid by the Tenant.

16. <u>Time of the Essence</u>. Time is of the essence in the doing, performing, and observing of each and every term, covenant, or condition of this lease by both the Landlord and the Tenant.

17. <u>Joint and Singular Obligations</u>. As used herein, "Tenant" shall include tenant, "Landlord" shall include Landlord and the obligations and duties of the Tenant and the Landlord, respectively, if more than one, shall be joint and several.

18. <u>Captions</u>.  The captions of the several items of this lease are not a part of the context hereof and shall be ignored in construing this lease.  They are extended only as aids in locating and reading the various provisions hereof.

19. <u>Late Charge</u>.  A late charge of Five (5%) Percent of the amount due shall be assessed five (5) days after the due date.

20. <u>Binding Effect</u>.  This Lease Agreement is binding on the heirs, executors, administrators and assigns of the parties hereto.

IN WITNESS WHEREOF,  the parties hereto have set their hands as the date first mentioned above.

In the Presence of:                                    LANDLORD:

_____                              _____
WITNESS                                                PRESCOTT BIGELOW, IV


_____
WITNESS


                                                       TENANT:

_____                              _____
WITNESS                                                SHIRDENIA BRYANT


_____
WITNESS

## **RELEASE**

This agreement dated this _27th_ day of January, 1999 by and between Prescott Bigelow, IV, hereinafter referred to as Bigelow and Shirdenia Bryant, hereinafter referred to as Bryant.

WHEREAS Bigelow previously purchased from Bryant the property commonly known as 1107 Laidlaw Avenue, Cincinnati, Ohio. In connection with that transaction Bigelow signed a promissory note to Bryant for the payment of Nineteen Thousand and 00/100 ($19,000.00) Dollars.

WHEREAS Bigelow's responsibility under said promissory note has been previously transferred to John Marfisi and the original promissory note was marked paid in full.

WHEREAS Bryant has previously rented the before-described property from Bigelow and a dispute remains unresolved in regards to her tenancy and his liability under the promissory note.

Now Therefore, it is agreed by and between the parties as follows:

1. Bigelow shall pay to Bryant the sum of Two Thousand and 00/100 ($2,000.00) Dollars.

2. Bigelow shall release Bryant of the responsibility to pay the amount of Six Hundred and 00/100 ($600.00) Dollars which remains due for the period prior to December 31, 1998 as rent for the before-described property.

3. The parties agree to enter into a lease agreement for the property as set forth in an agreement executed at the same time as this release.

4. Bryant agrees to release Bigelow of any further obligation of whatsoever nature in regards to her previous tenancy and the promissory note dated January 27, 1998.



DEFENDANT'S
EXHIBIT NO. 16
FOR IDENTIFICATION
Bryant
DATE: 9-3-03  RPTR: TAM

Signed on the date first named above.

_____
Prescott Bigelow, IV

_____
Shirdenia Bryant

## PROMISSORY NOTE

FOR VALUE RECEIVED, the undersigned promises to pay to Shirdenia Bryant the principal amount of Nineteen Thousand and 00/100 ($19,000.00) Dollars without interest. Said amount shall be due and payable within sixty (60) days of the date of this note or when the borrower has paid the amount due under a note and mortgage to Nationsbanc Mortgage Corporation for the property located at 1107 Laidlaw Avenue, Cincinnati, Ohio 45237, whichever date occurs first.

Signed this 27th day of January 1998.

_____
Prescott Bigelow, IV

*PAID IN FULL*

*Shirdenia Bryant*



WWR #02348340



IN THE COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

| | |
|---|---|
| WELLS FARGO BANK MINNESOTA, N.A., AS TRUSTEE, ASSIGNEE OF FIRST FRANKLIN FINANCIAL CORP. C/O OPT ION ONE MORTGAGE CORP. 3 ADA IRVINE, CA 92618<br><br>Plaintiff<br><br>vs.<br><br>SHIRDENIA BRYANT 1107 LAIDLAW AVE CINCINNATI, OH 45237<br><br>JOHN DOE, UNKNOWN SPOUSE OF SHIRDENIA BRYANT 1107 LAIDLAW AVE CINCINNATI, OH 45237<br><br>NATIONSBANC MORTGAGE CORPORATION 205 PARK CLUB LANE BUFFALO, NY 14231<br><br>HAMILTON COUNTY TREASURER 138 EAST COURT STREET CINCINNATI, OH 45202<br><br>Defendants | CASE NO. A0107903<br><br>JUDGE:<br><br>**COMPLAINT FOR MONEY FORECLOSURE, AND OTHER EQUITABLE RELIEF**<br>(with Notice Pursuant to the Fair Debt Collection Practices Act attached) |

REGULAR MAIL WAIVER
REGULAR MAIL WAIVER
REGULAR MAIL WAIVER
REGULAR MAIL WAIVER



DEFENDANT'S EXHIBIT NO. 18 FOR IDENTIFICATION Bryant DATE 9-3-03 RPTR TBM

## FIRST CLAIM

1. Plaintiff is the owner and holder of a Promissory Note, a copy of which is attached hereto, marked "Exhibit A"; that by reason of default in the terms of the Note and Mortgage securing same, it has declared the debt evidenced by said Note due; that there is due and unpaid thereon $63,722.74 plus interest at 10.75% (variable) per annum from June 1, 2001 plus late charges applicable to the terms of the Note and Mortgage.

## SECOND CLAIM

2. Plaintiff incorporates herein by reference all of the allegations contained in its First Claim, and further states that it is the owner and holder of a certain Mortgage securing the indebtedness evidenced by said Promissory Note, a copy of which Mortgage is attached hereto, marked "Exhibit B"; and that said Mortgage is a first and best mortgage lien upon the premises described therein.

3. The conditions of said Mortgage have been broken and the same has become absolute.

4. Pursuant to the covenants and conditions of said Mortgage, Plaintiff may, from time to time during the pendency of this action, advance monies to pay real estate taxes, hazard insurance premiums and for property protection.

5. The Defendants named herein have or may claim to have an interest in the real property described in said Mortgage. The name of John Doe could not be discovered by Plantiff.

WHEREFORE, Plaintiff demands:

(1) On its First Claim, judgment against Defendant Shirdenia Bryant for the amount set forth above plus costs; plus any amounts advanced to pay real estate taxes, hazard insurance premiums and for property protection, plus interest thereon from the date of any such advances;

(2) On its Second Claim, that it be found to have a first and best mortgage lien on the premises described herein for the amount owing together with its advances for taxes, hazard

insurance and for property protection, plus interest; that all Defendants' equity of redemption be foreclosed; that all of the parties hereto be required to answer as to their interests in said premises or be forever barred from asserting any interest therein; that all liens on said premises be marshaled and their priorities determined; that said premises be sold as upon execution and the proceeds of said sale be applied according to law; and such other relief as is just and equitable, and costs.

WELTMAN, WEINBERG & REIS CO., L.P.A.

_____
RONALD CHERNEK, 0041431
Attorney for Plaintiff
323 W. Lakeside Ave., Suite 200
Cleveland, OH  44113
Phone: (216) 685-1170   Fax: 216-363-4034
e-mail: rchernek@weltman.com

# NOTICE PURSUANT TO THE

# FAIR DEBT COLLECTION

# PRACTICES ACT

1.   This notice is directed only to the party or parties who may be obligated to pay the indebtedness referred to in the attached Complaint.

2.   The amount of the debt is stated in paragraph one of the first claim of the Complaint attached hereto.

3.   The Plaintiff as named in the attached Summons and Complaint is the creditor to whom the debt is owed.

4.   The debt described in the Complaint attached hereto will be assumed to be valid by the creditor's law firm, unless the debtor, within thirty (30) days after the receipt of this notice, disputes, in writing, the validity of the debt or some portion thereof.

5.   If the debtor notifies the creditor's law firm in writing within thirty (30) days of receipt of this notice that the debt or any portion thereof is disputed, the creditor's law firm will obtain a verification of the debt and a copy of the verification will be mailed to the debtor by the creditor's law firm.

6.   If the creditor named as plaintiff in the attached Summons and Complaint is not the original creditor, the name and address of the original creditor will be mailed to the debtor by the creditor's law firm, if the debtor makes a written request for same to the creditor's law firm within thirty (30) days from the receipt of this notice.

7.   Written requests should be addressed to: Weltman, Weinberg & Reis Co., L.P.A., 323 W. Lakeside Ave., Suite 200, Cleveland, OH 44113-1099, Attn: Foreclosure Dept. This law firm is a debt collector attempting to collect the debt on behalf of the creditor and any information obtained will be used for that purpose.

# ADJUSTABLE RATE NOTE
(LIBOR Index-Rate Caps)

**TRUE AND CERTIFIED COPY**

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

**EXHIBIT A**

June 9th, 2000    Cincinnati    Ohio
                   [City]       [State]

1107 LAIDLAW AVENUE, CINCINNATI, Ohio 45237
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 64,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is FIRST FRANKLIN FINANCIAL CORPORATION, a Delaware Corporation. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 10.750 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on August 1, 2000. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on July 1st, 2030, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at 3 Ada Street, Irvine, CA 92618 or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 597.43. This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may change on the first day of July, 2002 and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average on interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Six and One-Eighth percentage point(s) ( 6.125 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than ___13.750___ % or less than __10.750__ %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than __One__ percentage point(s) ( 1.000 %) from the rate of interest I have been paying for the preceding six months; subject to the following limits: my interest rate willl never be greater than __16.750__ % nor less than __10.750__ %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of ___15___ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be __5.00__ % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

HP115

Document # L388AX

(page 2 of 3 pages)

### 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

\* THE PREPAYMENT NOTE ADDENDUM ATTACHED HERETO AND MADE A PART
HEREOF AMENDS THE PREPAYMENT PROVISIONS OF THIS NOTE _SB_
                                                     INITIAL INITIAL

                                                     _____ _____
                                                     INITIAL INITIAL

_/s/ Shirdenia Bryant_ ........................................... (Seal)
SHIRDENIA BRYANT                                          -Borrower

................................................................ (Seal)
                                                          -Borrower

................................................................ (Seal)
                                                          -Borrower

[Sign Original Only]

HP055                    Document # L389A                 (page 3 of 3 pages)