**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **SHIRDENIA BRYANT, et al.** | : | **Civil Action No. C-1-02-006** |
| **Plaintiffs** | : | **(Judge Spiegel)**<br>**(Magistrate Judge Sherman)** |
| **vs.** | : | |
| **PRESCOTT BIGELOW, IV, et al.** | : | **REPLY OF DEFENDANTS PRESCOTT BIGELOW, IV AND ROSEANNE CHRISTIAN TO PLAINTIFFS MEMORANDUM IN OPPOSITION TO DEFENDANTS' CONSOLIDATED MOTION FOR SUMMARY JUDGMENT** |
| **Defendants** | : | |

* * * * *

Defendants, Prescott Bigelow, IV ("Bigelow") and Roseanne Christian ("Christian"), hereby submit the following reply to Plaintiffs' memorandum in opposition to Defendants' consolidated motion for summary judgment. Bryant and Curtis have failed to come forward with evidence to present any jury question on the elements of their cases, on which they have the burden of proof. Specific evidentiary references to the record are conspicuously missing from Plaintiffs' memorandum. Plaintiffs' only specific references to the evidentiary record are to the unsworn declarations of Russell Paige (Doc. 46, p. 9 ), Curtis' deposition (Doc. 46, p. 15), and the deposition of Bigelow (Doc. 46, pp. 9, 10, 13, 14). Bigelow's deposition transcript is not part of the record before the Court, and any references to his "testimony" must be disregarded. Paige is not a party to this action. Paige's declaration has no evidentiary value because it has no relevance to Plaintiffs' claims and is otherwise inadmissible, as discussed in this Reply.

Plaintiffs have not responded to Defendant's argument that Bigelow owed no fiduciary duty to Plaintiffs, as alleged in Count V of the amended complaint (Doc. 40, p. 36). The evidence before the Court mandates summary judgment in favor of Defendants on all claims in the amended complaint.

**I    THE DECLARATIONS OF SHIRDENIA BRYANT AND HARRY CURTIS DO NOT COMPLY WITH FED. R. CIV. P. 56(e) AND MUST BE DISREGARDED BY THE COURT.**

Fed.R. Civ. P. 56(e) states:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

In response to the motion for summary judgment of the Defendants, Bryant and Curtis filed unsworn declarations with the Court. (Doc. 46, Parts 1, 2). Neither declaration is an affidavit under Rule 56(e). Although the Bryant declaration states that Bryant was "duly cautioned and sworn," her declaration is not a sworn affidavit. An affidavit must be sworn to before a notary public. Peters v. Lincoln Electric Co., 285 F.3d 456 (6th Cir. 2002). Bryant's declaration does not verify that the statements are true and correct, under penalties of perjury. Bryant's declaration states:

> "Shirdenia Bryant, after being duly cautioned and sworn, states:
>
> (1) I am one of the Plaintiffs in this lawsuit. I am making this declaration in opposition to the Defendants' Consolidated Motion for Summary Judgment, filed in this case. My statements in this declaration are made on personal knowledge, and I am capable of testifying to the facts here stated."

Although his declaration includes the term perjury, Curtis' declaration does not verify

that the statements are true and correct, under penalties of perjury. Curtis' declaration states:

> "I, Harry Curtis, make this Declaration on my own free will, without duress or compulsion, and under penalty of perjury.
>
> (1) I am one of the Plaintiffs in this lawsuit. I am making this declaration in opposition to the Defendants' Consolidated Motion for Summary Judgment. I am making this declaration based on my personal knowledge, and I am able to testify to the facts here stated."

The declarations of Curtis and Bryant do not meet the requirements of Fed. R. Civ. P. 56(e), and they must be disregarded by the Court. A Court may not consider unsworn statements when ruling on a motion for summary judgment. <u>Adickes v. S.H. Cress & Co.</u>, 398 U.S. 144, 158 n. 17 (1970).

The Sixth Circuit has held that documents submitted in support of a motion for summary judgment must satisfy the requirements of Rule 56(e); otherwise, they must be disregarded. <u>Moore v. Holbrook</u>, 2 F.3d 697, 699 (6th Cir. 1993). Thus, in ruling on a Rule 56 motion, the Court cannot consider unsworn statements, nor unsworn or uncertified documents. <u>Dole v. Elliot Travel & Tours, Inc.</u>, 942 F. 2d 962, 968-969 (6th Cir. 1991). In <u>Little v. B.P. Exploration & Oil Co.</u>, 265 F.3d 357 (6th Cir. 2001), the Sixth Circuit reiterated that a District Court must disregard unsworn statement(s) when ruling on a motion for summary judgment.

Although there is a provision under the United States Code for the use of unsworn declarations, the Curtis and Bryant declarations fail to meet the requirements of the statute. A statutory exception to Fed.R.Civ.P. 56(e) permits an unsworn declaration to substitute for a conventional affidavit if the statements contained in the declaration are made under penalty of perjury and verified as true and correct. 28 U.S.C. § 1746 states:

> "Wherever, under any law of the United States or under any rule, ... any matter is

> required or permitted to be supported, evidenced, established, or proved by the sworn ... affidavit, in writing of the person making the same ... such matter may, with like force and effect, be supported, evidenced, established or proved by the unsworn declaration ... or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
>
> (2) If executed within the United States, ... : I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).
>
> (Signature)".

The declarations of Curtis and Bryant fail to meet the requirements of 28 U.S.C. § 1746. Neither of the declarations include the necessary verification that the statements made therein are true and correct, under penalty of perjury.

The requirements of 28 U.S.C. § 1746 are mandatory. The statutory exception under 28 U.S.C. § 1746, which permits an unsworn declaration to substitute for a conventional affidavit applies if the statements contained in the declaration are made under penalty of perjury, certified as true and correct, dated, and signed. See, Pollock v. Pollock, 154 F.3d 601 (6th Cir. 1998). Accordingly, in Williams v. Browman, 981 F. 2d 901, (6th Cir. 1992), the Sixth Circuit held that a prisoner's signed complaint containing a statement declaring the truth of the allegations under penalty of perjury was sufficient under 28 U.S.C. § 1746. In Little v. B.P. Exploration & Oil Co., 265 F.3d 357 (6th Cir. 2001), the Sixth Circuit held that the District Court properly disregarded a letter which was not certified as true and correct, under the penalty of perjury.

In Nissho IWAI Am. Corp. v. Kline, 845 F.2d 1300 (5th Cir. 1988), the Fifth Circuit held that a statement which was not declared to be "true and correct" did not meet the requirements of 28 U.S.C. § 1746 and had to be disregarded as summary judgment proof. Similarly, in Ghazi v. Fiserv, Inc., 904 F. Supp. 823 (N.D. Ill. 1995), the District Court for the Northern District of

Illinois disregarded purported affidavits which did not contain declarations that the contents were true under the penalties of perjury, therefore the requirements of 28 U.S.C. § 1746 were not met.

## II  THE DECLARATIONS OF RUSSELL PAIGE AND MARK BURBRINK MUST ALSO BE DISREGARDED BY THE COURT

Plaintiffs' have also filed the unsworn declarations of Russell Paige and Mark Burbrink. Paige and Burbrink are not parties to this action. However, their declarations must be disregarded by the Court for the same reasons that the declarations of Curtis and Bryant must be disregarded. Neither the Paige declaration nor the Burbrink declaration contains the necessary verification under 28 U.S.C. § 1746 that the declarations were true and correct, under penalties of perjury. Further, Paige and Burbrink had no involvement in the transactions concerning Bryant and Curtis, and these declarations have no evidentiary value.

## III  BRYANT'S DECLARATION CONTAINS NUMEROUS HEARSAY STATEMENTS, WHICH MUST BE DISREGARDED BY THE COURT.

On a motion for summary judgment, the Court must disregard the inadmissible portions of a challenged affidavit (or declaration) and will consider only the admissible portions in determining whether to grant or deny the motion. United States v. Hodges X-Ray, Inc., 759 F. 2d 557, 561 (6th Cir. 1985). Under Fed. R. Civ. P. 56(e), affidavits submitted in opposition to a summary judgment motion "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Affidavits composed of hearsay and opinion evidence do not satisfy Rule 56(e) and must be disregarded. Hartsel v. Keys, 87 F. 3d 795, 799 (6th Cir. 1996); Monks v. General Elec. Co., 919 F.2d 1189, 1192 (6th Cir. 1990). "Thus, a party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to

create a genuine issue of material fact." Sperle v. Michigan Dept. of Corrections, 297 F. 3d 483, 495 (6th Cir. 2002), (quoting Weberg v. Franks, 229 F. 3d 514, 526 n. 13 (6th Cir. 2000). Regarding the Bryant declaration, it recites numerous statements allegedly made by John Meckstroth, an attorney involved in the closing the transaction, and John Marfisi, who signed the contract to purchase with Bryant. Neither Meckstroth nor Marfisi is a defendant in this action, nor are they named as conspirators in the amended complaint. No hearsay exception is applicable to their statements. The purported statements of Meckstroth and Marfisi referenced in the Bryant declaration are hearsay and cannot be considered by the Court. Specifically, in paragraph 7 of Bryant's declaration, all statements attributed to Marfisi are hearsay. Also, Bryant's statement in paragraph 7 that the buy-back price was "supposed to be around $20,000.00" is inadmissible speculation, in addition to being hearsay. In Declaration paragraphs 9, 13 and 14, all statements attributable to John Meckstroth are hearsay and must be disregarded.

**IV      THE STATEMENTS IN BRYANT'S DECLARATION THAT ARE CONTRADICTED BY BRYANT'S DEPOSITION TESTIMONY MUST BE DISREGARDED BY THE COURT.**

A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts their earlier deposition testimony. Reid v. Sears Roebuck & Co., 790 F. 2d 453, 460 (6th Cir. 1986); Biechele v. Cedar Point, Inc., 747 F. 2d 209, 215 (6th Cir. 1984). In Biechele, the Sixth Circuit quoted from Perma Research and Development Co. v. Singer Co., 410 F. 2d 572, 578 (2d Cir. 1969):

> "If a party who has been examined at length on deposition could raise an issue of fact by simply making an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Biechele, p.19.

Bryant's deposition transcript has been filed with the Court. (Doc. 39). Prior to the deposition in this case, Bryant gave deposition testimony in the Hamilton County case of Burbrink v. Bigelow. Bryant's prior deposition was identified as Exhibit #1 to Bryant's deposition in this case, also filed with the Court. Bryant's declaration includes several material statements which are contradicted by Bryant's previous deposition testimony.

In paragraph 4 of the Declaration, Bryant states that "on December 23, 1997, my home was appraised at $66,000.00 ...".[1] In paragraph 19, Bryant states that her home was worth $65,000.00-75,000.00. These statements are contradicted by Bryant's deposition testimony. Bryant testified that she did not know the fair market value of her property at the time of the foreclosure (Bryant depo. p. 55). Bryant also acknowledged that the Hamilton County Auditor's valuation of her property as of January 1, 1998 was $44,900.00, and Bryant testified that she had no reason to believe that valuation was not accurate (Bryant depo. p. 55).

In paragraph 8, Bryant states that she was first introduced to Bigelow at the real estate closing. Bryant states, "There I was first introduced to Defendant Prescott ('Pete') Bigelow, a man I had never met or talked to before." At her deposition, Bryant testified that she had met Bigelow at her property approximately a month prior to the closing (Bryant depo. p. 92). Bryant claimed that she saw Bigelow looking in her freezer at that time (Bryant depo. p. 93). In the Burbrink v. Bigelow deposition, Bryant also testified that Bigelow came out to her property before the closing and discussed an appraisal (Bryant depo., Ex. 1, p. 36). Also in paragraph 8,

---

[1] No such appraisal is in the record before the Court, and Bryant's statement is also hearsay.

Bryant states that "up until that time [closing], I had assumed that I would be doing business with John Marfisi." In her deposition, Bryant acknowledged that at a meeting with Marfisi, prior to the closing, she was told that Bigelow would be purchasing the house. (Bryant depo. p. 79). Bryant also testified in <u>Burbrink v. Bigelow</u> that prior to the closing, she was told Bigelow would be purchasing the house (Bryant depo., Ex. 1, p. 79).

In paragraph 12, Bryant discusses a promissory note previously signed by Bigelow which contains her signature under a "Paid in Full" notation. Bryant's declaration states that "The document has my signature, but I do not know how it got there. I never signed that document under a 'Paid in Full' statement." These statements are contradicted by Bryant's deposition testimony. In Bryant's first deposition, she admitted signing the document: "I signed it. I did not write paid in full. I was told to sign it. I signed it" (Bryant depo., Ex. 1, p. 51). In Bryant's deposition in this case, she initially denied signing the document, stating: "Somebody else signed it. It could be transferred" (Bryant depo. p. 132). When confronted with her prior deposition testimony in which she admitted signing the document, Bryant then claimed that Marfisi had her sign the document, but that he [Marfisi] was hiding the contents of the document from her, so "it was like a blank piece of paper" (Bryant depo. p. 135). "I was asked to sign a paper. I did not see that part of the paper." ... "I did not see none of this part" (Bryant depo. p. 136).

In Declaration paragraph 19, Bryant states, "Mr. Bigelow led me to believe that, if I did the transaction with him, I would be paid $20,000.00 and would be able to repurchase my home (with Mr. Bigelow providing 100% financing) for the $20,000.00 plus the amount it took him to take care of the mortgage foreclosure." Bryant's deposition testimony contradicts these statements. The referenced transaction, the contract to purchase, was between Bryant and

Marfisi, not Bigelow (Bryant depo., Ex. 9). Bryant testified that the terms of the proposal were presented to her by Marfisi (Bryant depo. p. 82). Bryant testified that Marfisi told her she would be receiving the $20,000.00 (Bryant depo. p. 94-95). Bryant testified that Marfisi came up with the $20,000.00 figure and that Marfisi would help her finance the repurchase at 100 percent financing (Bryant depo. pp. 95-96). Bryant understood that her contract was with Marfisi (Bryant depo. p. 98). Bryant also understood that Marfisi was to pay her the $20,000.00 (Bryant depo. p. 99).

### V     THE STATEMENTS IN CURTIS' DECLARATION THAT ARE CONTRADICTED BY CURTIS' DEPOSITION TESTIMONY MUST BE DISREGARDED BY THE COURT.

The declaration of Curtis also contradicts his deposition testimony in several important respects. Curtis' deposition transcript has been filed with the Court ( Doc. 42 ). In describing his initial conversations with Christian, Curtis alleges in paragraph 4 that "she told me that she had a friend in the business of 'helping' people in financial distress to save their homes." In his deposition testimony, Curtis testified that Christian told him "she knew somebody that could probably help him out with it [the foreclosure]" (Curtis depo. p. 89).

Curtis states that the home was worth $80,000.00 to $95,000.00 in mid-1999 (Curtis Decl. ¶ 2). When questioned about an alleged value of $97,000.00, listed in his answers to interrogatories, Curtis testified that he is not sure how he arrived at the value of the home at $97,000.00 (Curtis depo. p. 122). Specifically, Curtis testified that he had no idea what the fair market value of the property was in 1999 at the time he transferred title to Bigelow (Curtis depo. p. 122). Curtis acknowledged that the Hamilton County Auditor valued the property in 1998 at $46,400.00 (Curtis depo. p. 123).

Curtis states in his declaration that "Mr. Meckstroth was supposed to represent me and prepare the land contract and handling the signing of the papers" (Curtis Decl. ¶ 7). In his deposition, Curtis testified that he did not have any discussions with Meckstroth about whom Meckstroth was representing (Curtis depo. p. 131). Curtis testified that he assumed that Meckstroth was Bigelow's attorney (Curtis depo. p 131). According to Curtis, Meckstroth never told Curtis that he was representing him (Curtis, depo. p. 131).

Curtis states in paragraph 7 that in August of 1999, he called Meckstroth's office about the land contract and was "assured that everything moving along without a hitch." In his deposition, Curtis was asked if he had any contact with Meckstroth before the closing on the transaction (Curtis depo. p. 124). Curtis testified that Meckstroth called him to get a "transfer of title, do a title search, or something like that." Curtis testified that he made one phone call to Meckstroth's office to find out when the closing was (Curtis depo. pp. 125-126). Curtis called Meckstroth's office and left a message for Meckstroth on August 18, 1999 (Curtis depo. pp. 125-126). Curtis at his deposition could not remember what message he left (Curtis depo. p. 126). It was just something about the closing (Curtis depo. p. 127). Curtis' deposition testimony conflicts with the statement in his declaration that, when he called Meckstroth's office about the land contract, he was "assured that everything was moving along without a hitch" (Curtis Decl. ¶ 7).

## VI    CURTIS' CLAIMS ARE BARRED BY RES JUDICATA

Defendants' summary judgment motion contains evidentiary references not included in Defendants supplemental motion to dismiss. Curtis' deposition testimony, discussed in Defendants' summary judgment motion, confirms that there was a trial in the Hamilton County Municipal Court, and that Curtis and Bigelow gave testimony on the same issues upon which his

10

amended complaint is based (Doc. 40, pp. 11-13). Curtis' deposition testimony also confirms that Curtis was ordered evicted for failure to pay rent, and that a judgment was entered against him and in favor of Bigelow, thereby resolving the issue of Bigelow's rights to possession of the Curtis property (Doc. 40, pp. 12, 14-15.)

### VII    PLAINTIFFS HAVE NOT SUBMITTED EVIDENCE UPON WHICH A JURY COULD FIND FOR THE PLAINTIFFS ON THE RICO CAUSES OF ACTION.

#### A.    Plaintiffs have produced no evidence of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension.

Under Rule 56(c), Fed. R. Civ. P., summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Canderm Pharmacal Ltd. v. Elder Pharmaceuticals, Inc. 862 F. 2d 597, 601 (6th Cir. 1988). As to materiality, "only disputes over facts that could effect the outcome of the suit under the governing law will properly preclude the entry for summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted". Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To be genuine, the dispute must concern evidence upon which "a reasonable jury could return a verdict for the non-moving party." Id.

The moving party need not support its motion with affidavits or other similar materials "negating" the opponents' claim. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden on the moving party may be discharged by pointing out to the District Court that there is an absence of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. This requires a determination of whether the party bearing the burden of proof has presented a jury

question on each element of its case. Celotex, 477 U.S. at 322; Taylor v. Medtronics, Inc., 861 F. 2d 980, 987 (6th Cir. 1988). In other words, the movant is challenging "the opposing party to "put up or shut up" on a critical issue". Street v. J.C. Bradford & Co., 886 F. 2d 1472, 1478 (6th Cir. 1989).

Under this standard, the Plaintiffs have failed to submit evidence to this Court demonstrating that there are genuine issues of material fact concerning the RICO causes of action. The Sixth Circuit requires that allegations of fraud in RICO cases be alleged in the complaint with particularity. Blount Financial Services, Inc. v. Walter E. Heller and Co., 819 F.2d 151, 153 (6th Cir. 1987). Bryant alleges in the Amended Complaint the following misrepresentations of material fact:

> (a) Christian stated to Bryant in the fall of 1997 that Bryant would lose all value or equity in her property if she did not engage in the transactions with Bigelow;
>
> (b) On January 6, 1999, Bigelow, directly and through his agent, John Meckstroth, told Bryant Bigelow had no obligation to pay Bryant a $19,000.00 promissory note that he executed in her favor;
>
> (c) That Bigelow, Christian and Meckstroth were assisting Bryant in these transactions to protect her from losing her home; and
>
> (d) That Bigelow's only compensation in connection with these transactions was a "small fee" (Doc. 14, ¶ 18).
>
> As to Curtis, the alleged misrepresentations are similar:
>
> (a) That Harry Curtis would lose all value in the 1966 Fairfax Avenue real estate if they did not engage in the transactions with Bigelow;
>
> (b) That Bigelow's proposal was more advantageous and cost effective for Harry Curtis than obtaining financing from a bank;
>
> (c) That Bigelow would permit Harry Curtis to live in the property for a year, before reselling the property to him at the same price at which it had been bought;

(d) That Bigelow, Christian and Meckstroth were assisting Harry Curtis in these transactions to protect him from losing his home; and

(e) That Bigelow's only compensation in connection with these transactions was a "small fee" (Doc. 14, ¶ 26).

Plaintiffs have produced no evidence to support these alleged misrepresentations of material fact. The Bryant and Curtis declarations, even if they were admissible, are silent as to these alleged misrepresentations of fact. Bryant's declaration does not state that the "misrepresentations" in paragraphs (a), (c) or (d) were made by Christian or Bigelow.[2] Curtis' declaration does not state that the "misrepresentations" in paragraphs (a), (b), (c), (d) or (e) were made by Christian or Bigelow. Regarding (c), Curtis' Declaration refers to a $37,000.00 land contract price to be financed after a few months. Curtis has produced no evidence that Bigelow said he could live in the property for a year. This is material, because Curtis was evicted for non-payment of rent. There is no evidence in the record to support these alleged misrepresentations of fact.

The Sixth Circuit also requires in a civil RICO case that the Plaintiff allege and prove "some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." Blount Financial Services, Ins. v. Walter E. Heller & Company, 819 F. 2d 151, 153 (6th Cir. 1987). Mail fraud alleged in a RICO civil complaint must state with particularity the false statement of fact by the Defendant which the Plaintiff relied on and the facts showing the Plaintiffs' reliance on Defendants false statement of

---

[2] Bryant signed a release in favor of Bigelow concerning the obligation referenced in (b), as discussed in Defendants' motion for summary judgment (Doc. 40, p. 35).

facts.  Blount, 819 F. 2d at 152.

Defendants have demonstrated a lack of evidence in support of the allegations of fraud made by the Plaintiffs.  Defendants' summary judgment motion is fully supported by specific references to the deposition testimony of Bryant and Curtis, and the affidavits of Bigelow and Christian, which have been filed with the Court.  The burden on a party moving for summary judgment may be met by showing there is an absence of evidence to support the nonmoving party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the burden of production has so shifted, the party opposing summary judgment must present some type of evidentiary material in support of its position.  Celotex Corp., 477 U.S. at 324.  In this regard, Plaintiffs' memorandum fails totally.  Evidentiary references to the record are conspicuously missing from Plaintiffs' memorandum.  A district court is not obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.  InterRoyal Corp. v. Sponseller, 889 F. 2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990).  Further, Plaintiffs make a number of factual assertions which have absolutely no support in the record (Doc. 46, pp. 8-11).  For example, Plaintiffs allege that Christian "misrepresented who she was and what she was doing" (Doc. 46, p. 8).  Neither Bryant nor Curtis have produced evidence that any such misrepresentations were made to them by Christian.  Curtis' declaration states that "paragraph 2 of Roseanne Christian's affidavit is not consistent with her involvement with my property.  I dispute the statements in paragraph 8 of Roseanne Christian's affidavit" (Curtis Decl. ¶ 19).  Conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not enough to defeat a well-supported motion for summary judgment.  Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888 (1990).

Plaintiffs also make a number of unsubstantiated references to the "compensation structure" between Bigelow and Christian (Doc. 46, p. 9). Christian has filed an affidavit stating she was paid by Marfisi, not Bigelow, in the Bryant transaction (Christian affidavit, ¶ 6). Plaintiffs also make a number of accusations, wholly unsubstantiated by evidence. For example, Plaintiffs allege, "another fraudulent act was to create a 'Paid in Full' endorsement on the promissory note" (Doc. 46, p. 11); that "Bigelow was deeply involved in document falsification" (Doc. 46, p. 11); and that "Bigelow falsified a land contract" (Doc. 46, p. 11). Plaintiffs cite no evidence in support of these outrageous allegations. These unsupported, unfounded allegations must be disregarded by the Court.

Plaintiffs claim they "will prove that the Defendants made numerous false statements of material fact" as well as engaged in fraudulent conduct" (Doc. 46, p. 11). Plaintiffs cannot get issues to the jury on the basis of unsubstantiated allegations, "coupled with the hope that something may be developed at trial." First National Bank of Arizona v. City Service Co., 391 U.S. 253, 289-90 (1968). This is the "put up or shut up on a critical issue" discussed in Street v. J.C. Bradford & Co., 886 F. 2d 1472, 1478 (6th Cir. 1989).

### B. Plaintiffs have produced no evidence of a pattern of racketeering activity, nor the existence of a RICO enterprise.

In order to recover under 18 U.S.C. § 1962 (c), a RICO Plaintiff must successfully prove 4 elements: "(1) conduct; (2) of an enterprise; (3) through a pattern; and (4) of racketeering activity." Sedima, S. DP. R. L. v. Impex Company, Inc., 473 U.S. 479, 497 (1985). Whether a RICO Defendant has engaged in racketeering activity is but another way of asking whether he committed "predicate acts." Grantham & Mann, Inc. v. American Safety Products, Inc., 831 F.

2d 596, 605 (6th Cir. 1987). A racketeering activity or predicate act is defined in part under RICO as "any act which is indictable under any of the following provisions of Title 18, U.S. Code "... section 1341 (relating to mail fraud). 18 U.S.C. § 1961 (1). The elements of mail fraud are "(1) a scheme to defraud; and (2) a mailing for the purpose of executing the scheme." Hofstetter v. Fletcher, 905 F. 2d 897, 902 (6th Cir. 1988). To satisfy the enterprise element, an association of fact must be demonstrated, which evidences an ongoing organization with its members functioning as a continuing unit. Frank v. D'Ambrosio, 4 F.3d 1378 (6th Cir. 1993).

Plaintiffs have wholly failed to produce any evidence that Christian or Bigelow participated in the conduct of an enterprise through a pattern of racketeering activity. In order to participate in the conduct of the enterprise affairs, one must have some part in directing those affairs. Reves v. Ernst & Young, 507 U.S. 170 (1993). Liability depends on showing that the Defendants conducted the enterprise's affairs, not just their own affairs. Id. Christian's Affidavit states that she did not participate in the management or operation of any of the named businesses (Christian Aff. ¶ 4). Further, in order to prove a RICO conspiracy under 18 U.S.C. 1962(d), Plaintiffs must prove the existence of an illicit agreement to violate the substantive RICO provision. United States v. Sinito 723 F. 2d 1250, 1260 (6th Cir. 1983), cert. denied, 469 U.S. 817 (1984). Plaintiffs must allege facts which evidence each defendant's agreement to participate in what he knew to be a collective venture toward a common goal. R.E. Davis Chem. Corp. v. Nalco Chem Co., 757 F. Supp. 1499, 1515 (N.D. Ill. 1990).

Plaintiffs' memorandum, on the production of evidence of a pattern of racketeering activity, states: "as indicated in the affidavits, attached, there were multiple transactions extending over several years. The affidavits indicate that the predicate acts caused injury to the

Plaintiffs" (Doc. 46, p. 12). On producing evidence of the existence of a RICO enterprise, separate and distinct from the RICO defendants, Plaintiffs simply refer the Court to the enterprises named in the complaint. Plaintiffs then state, "a good portion of the deposition of Defendant Prescott Bigelow IV focused on his operation of these enterprises" (Doc. 46, p. 13).[3]

Plaintiffs have failed completely to produce evidence to support the RICO claims under § 1962 (c) or (d), and summary judgment must be granted.

### C. **Plaintiffs have produced no evidence of justifiable reliance, nor causal connections between the claimed injuries and the alleged fraud.**

Plaintiffs must also establish justifiable reliance. Blount Financial Services, Inc. v. Walter E. Heller & Company, 819 F.2d 151, 153 (6th Cir. 1987). To allow recovery when persons of ordinary prudence and comprehension would not have been deceived would be tantamount to holding that any party to a signed contract who becomes dissatisfied with its terms can turn to RICO for treble damages against the other contracting party. Plaintiffs allege that Defendants said they were "assisting" Plaintiffs to "protect" Plaintiffs' from losing their homes; that their only compensation was a "small fee"; and that the proposal was "more advantageous and cost effective than obtaining financing from a bank" (Doc. 14, ¶ ¶ 18, 26). These alleged statements are not actionable misrepresentations upon which reasonable persons would have relied. Plaintiffs memorandum does not address or acknowledge their burden of proof on this issue.

Plaintiff must also establish that there is a causal connection between the alleged fraud and the claimed injury. Pursuant to § 1964 (c), a RICO Plaintiff must establish that the injury

---

[3] Bigelow's deposition transcript is not in the Court's record.

occurred "by reason of" the claimed violation of § 1962.  Grantham & Mann, Inc. v. American Safety Products, Inc., 831 F. 2d at 596, 605 (6th Cir. 1987).  The criminal conduct in violation of § 1962 must, directly or indirectly, have injured the Plaintiff's business or property.  Id.   Curtis' losses were not caused by Defendants.  Curtis lost his home because he decided to withhold his contract payments from Bigelow and litigate the eviction issue in the Hamilton County Municipal Court.  Further,  Curtis would have been evicted even if a land contract had been signed (See Defendants' motion, pp. 34-35).  Bryant lost her home when she lost her job, defaulted on the mortgage payments and lost her home through foreclosure.

Plaintiffs' memorandum responds to the causal connection issues with the statement that "The affidavits indicate that the predicate acts caused injury to the Plaintiffs" (Doc. 46, p.12).  Regarding the Curtis land contract issue, Plaintiffs respond, "Plaintiffs assert that neither Ohio nor federal law supports the notion that a fraud scheme such as was perpetrated against the Curtis family is insulated from liability" (Doc. 46, p. 16).

**VIII     PLAINTIFFS MAY NOT AVOID THE PAROL EVIDENCE RULE, THE STATUTE OF FRAUDS,  NOR THE BRYANT RELEASE BY SIMPLY ALLEGING FRAUD IN THE INDUCEMENT.**

Plaintiffs again make unsupported assertions of fact, in attempting to avoid application of the parol evidence rule, the statute of frauds and the release signed by Bryant.  As to Bryant, Plaintiffs state that  "Bigelow manufactured a land contract, forged Shirdenia Bryant's name on it, and signed that document" (Doc. 46, p. 14); and "We submit that Shirdenia Bryant was deceived the compelled [sic] to sign the release" (Doc. 46, p. 17).

The parol evidence rule may not be avoided by a fraudulent inducement claim which alleges that the inducement to sign the writing was a promise, the terms of which are directly

contradicted by the signed writing.  Marion Prod. Credit Assn. v. Cochran (1988), 40 Ohio St. 3d 265, 533 N.E.2d 325, paragraph three of the syllabus.  Plaintiff's unfounded, unsupported assertions have no support in the record, and they are contrary to established law.

As to Curtis, Plaintiffs state that "the signed writings support Curtis' claims in this action" (Doc. 46, p. 15).

On the statute of frauds issue, Plaintiffs' memorandum states that "the agreement between Curtis and Bigelow was embodied in a writing, signed by both parties" (Doc. 46, p. 13).  This statement is contradicted by Curtis' deposition testimony that the contract with Bigelow had nothing to do with what he was "supposed to be doing with Bigelow" (Curtis depo., p. 106).  Curtis clearly and unequivocally testified that he had a verbal agreement with Bigelow that a land contract would be signed (Curtis depo., pp. 110-112).

## CONCLUSION

Plaintiffs have failed to produce evidence which establishes any genuine issue of material fact.  Defendants respectfully request summary judgment in favor of Defendants on all claims in the amended complaint.

Respectfully Submitted,

Gary R. Lewis Co., L.P.A.

/s/ Gary R. Lewis
GARY R. LEWIS, #0017697
Attorney for Defendant Prescott Bigelow IV and
Defendant Roseanne Christian
Cincinnati Club Building, Suite 915
30 Garfield Place
Cincinnati, Ohio 45202
(513) 665-9222/(513) 721-7008 (FAX)

## CERTIFICATE OF SERVICE

I hereby certify that on November 10th, 2003, I electronically filed the foregoing Reply Of Defendants Prescott Bigelow IV And Roseanne Christian To Plaintiffs' Memorandum In Opposition To Defendants Consolidated Motion For Summary Judgment with the Clerk of the Court using the CM/ECF system and I hereby certify that the foregoing Reply Memorandum was served upon William H. Blessing, Esq. Attorney for Plaintiffs, 119 East Court Street, Suite 500, Cincinnati, Ohio 45202 by regular U.S. Mail, postage pre-paid this 10th day of November, 2003.

/s/ Gary R. Lewis
Attorney for Defendant Prescott Bigelow and
Defendant Roseanne Christian