```
              UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF OHIO
                    WESTERN DIVISION
```

SHIRDENIA BRYANT, et al.,        :   NO. 1:02-CV-00006
                                 :
          Plaintiffs,            :
                                 :   **ORDER**
     v.                          :
                                 :
                                 :
PRESCOTT BIGELOW, IV,            :
          et al.,                :
                                 :
          Defendants.            :

This matter is before the Court on the Consolidated Motion of Defendants Prescott Bigelow IV and Roseanne Christian for Summary Judgment (doc. 40), Plaintiffs' Memorandum in Opposition (doc. 46), and Defendants' Reply (doc. 47).

**I. Background**

The basic facts of this case have been recited in previous Court Orders (docs 50, 20, & 13). This case involves allegations that Defendants perpetrated a number of separate but related schemes to swindle financially distressed homeowners facing foreclosure out of the equity in their real estate (doc. 14). Plaintiffs' Amended Complaint claims that Defendants (1) violated the Racketeer Influenced And Corrupt Organizations provisions (hereinafter, "RICO"), 18 U.S.C. § 1962(c), by conducting the affairs of enterprises under Defendants' management and control through a pattern of racketeering activity, using the U.S. mails to further the scheme, and acquiring funds that affected interstate commerce; (2) entered into a conspiracy to further the alleged

racketeering activity in violation of 18 U.S.C. § 1962(d); (3) made false representations to Plaintiffs constituting common law fraud; (4) entered into a conspiracy to defraud and deceive Plaintiffs; and (5) breached fiduciary duties owed to Plaintiffs (doc. 14). Plaintiffs allege that Defendant Christian would outline a "plan" to the homeowner under which the property would be sold by the homeowner; the liability or tax deficiency which gave rise to the foreclosure action would be satisfied; the homeowner would rent the property back from the new owner; and the property would later be sold back to the homeowner at the original purchase price (Id.). Plaintiffs allege that Defendants' real plan was to "acquire the property, to draw out all of the equity from the acquired property, to extract so-called rental payments from the homeowner through the use of the U.S. mails, to encumber the property, and then to eject the unsuspecting homeowner from his or her residence" (Id.).

Plaintiff Shirdenia Bryant avers that she faced foreclosure in 1997, during which time she had her first contact with Defendant Christian (doc. 40).  Christian allegedly told Bryant she knew someone who could help ( Id.).  Christian later introduced John Marfisi, who proposed that Bryant would sell her house, lease the house back, pay rent, and then buy the house again after several months (Id.).  Bryant agreed, and signed a purchase contract with Marfisi on January 7, 1998 (Id.).  The contract provided that Marfisi would pay Bryant $20,000.00, Marfisi would satisfy the mortgage lien in default, and Bryant could lease the property for $200.00 a month for one year, after which time Bryant

could repurchase the property (Id.).

Prior to closing, on January 27, 1998, Defendant Bigelow came to Bryant's property and had the purchase contract with him (Id.). Bryant did not know of Bigelow's role in the transaction at that time (Id.). However, at closing, Bigelow purchased the property from Bryant rather than Marfisi (Id.). Bigelow paid Bryant with a $1,000.00 check and a promissory note for $19,000.00 to be paid in sixty days, and Bryant signed a deed transferring ownership of the property to Bigelow (Id.). Bryant declares that Bigelow did not pay her the $19,000.00 within sixty days, and would not return phone calls from her about such payment (doc. 46). Ultimately, Bryant alleges that she was fraudulently induced into releasing Bigelow from his obligation to pay the $19,000.00, and that Marfisi disappeared, along with the money.[1] Unlike the other alleged victims of the scheme, after paying approximately $10,000.00 in rent under a lease to Bigelow, Bryant repurchased the property from Bigelow in June of 2000 (doc. 46). However, Bigelow had encumbered the property with a $56,000.00 second mortgage

---

[1] Bryant allegedly discussed with Marfisi and Bigelow ways that she could invest the $19,000.00 (doc. 40). Bigelow claims that Bryant instructed him to transfer the $19,000.00 obligation to Marfisi, a claim that Bryant denies (Id.). However, Bigelow avers that he did not transfer the obligation to Marfisi until the original promissory note Bigelow gave to Bryant was marked "paid in full," and signed by Bryant (Id.). Bryant alleges that she never signed the note as "paid in full," but that she did sign a "Release" on January 6, 1999, freeing Bigelow from his obligation to pay the amount (doc. 46). Bryant alleges that she was induced to sign the Release after Bigelow and Meckstroth represented to her that the obligation had been assigned to Marfisi, and if she did not sign she would be evicted (Id.).

(Id.).  Bryant paid $64,000.00 to repurchase the property, more than three times the amount for which she had sold it to Bigelow (Id.).  Bryant soon defaulted on her new mortgage and lost the home in foreclosure (Id.).

Plaintiff Curtis avers that he was facing foreclosure in mid-1999 due to a $4,500.00 delinquent property tax liability (docs. 40 & 46).  Curtis declares that Christian came to his home offering information about a friend, Bigelow, who could help Curtis with his tax foreclosure problem (doc. 46).  Curtis declares that Bigelow showed up at a later date and explained an arrangement under which Curtis could remain the owner of his home while the foreclosure problem would be resolved (Id.).  Curtis understood the proposal to be a land contract under which he would gain the property title back at the end of two years (Id.).  At closing on August 25, 1999, Curtis avers that he signed a number of papers, and understood that he and Bigelow also signed a land contract including conditions that Bigelow complete roof repairs to the property (Id.).  Bigelow proffers a signed purchase contract with handwritten terms indicating that Bigelow was to repair the roof, satisfy the tax delinquency, and lease the property to Curtis for two years, with option to repurchase for $37,000 at the end of the two-year period (doc. 40).

Curtis declares he received about $9,400.00 for the property (Id.)  When the roof repairs were not completed, and after leaving messages for Bigelow without response, Curtis withheld payment in November and December 1999 ( Id.).  Bigelow initiated

4

eviction proceedings against Curtis in December 1999 (Id.). Curtis avers that Bigelow denied the existence of a land contract (Id.). Curtis likewise avers that he had no signed copy of the land contract, contrary to his understanding at closing (Id.). Consequently, Curtis declares, Bigelow was successful in evicting Curtis from the property (Id.).  Curtis was terribly upset and started a fire at the property (Id.).  Curtis was found guilty of arson, and ordered to pay Bigelow almost $68,000.00 in restitution to the insurance company (Id.).  Curtis avers that as a result of his transactions with Bigelow, he received $9,400.00, while Bigelow received $700.00 in payment under their agreement, $67,420.00 from the insurance company, and $97,000.00 in sale proceeds from the house (Id.).

Plaintiffs proffer testimony from Mark Burbrink and Russell Paige, who similarly indicate that they lost their homes after dealing with Bigelow (doc. 46).  Paige, like Curtis, alleges that he was led to understand that he was dealing with an organization that helped people save their houses, but in the end, he lost his house and received only $2,000.00 in return (Id.). Burbrink declares that he made clear to Bigelow that he was not interested in selling his property, so Bigelow outlined a plan under which the property would be transferred to Bigelow, but Burbrink would retain ownership rights (Id.).  Burbrink understood that at the end of the year, Bigelow would arrange for financing so that Bigelow could be paid off and Burbrink would get a fresh start (Id.).   Burbrink was impressed with Bigelow's presentation, and

understood that the transaction was not a sale because the sale price was listed as zero (Id.).  At the subsequent closing, Burbrink alleges that the copy machine was broken, and John Meckstroth, Bigelow's lawyer, promised to send copies of the documents later (Id.).  When later the deal soured, and when Burbrink offered to pay Bigelow the balance of rent due, Burbrink declares Bigelow refused to arrange for financing, and instead initiated eviction proceedings (Id.).

On October 1, 2003, Defendants Bigelow and Christian filed their Motion for Summary Judgment, arguing that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law (doc. 40).  In support of their Motion, Defendants argue that (1) the Court must give res judicata effect to the prior state court forceable entry and detainer judgment against Curtis, (2) Curtis was required to raise his claims in this action as compulsory counterclaims in the state action, (3) Plaintiffs have produced no evidence of fraud, no evidence of a pattern of racketeering activity, and no evidence of a RICO enterprise separate from the RICO Defendants, (4) Plaintiffs' claims are barred by the Ohio Statute of Frauds, (5) Plaintiffs' claims are barred by the Parole Evidence Rule, (6) Curtis has no claims based on an unsigned land contract, (7) Bryant is bound by the Release in favor of Bigelow, and (8) Bigelow owed no fiduciary duty to Plaintiffs (Id.).

## II.   The Summary Judgment Standard

The narrow question that this Court must decide on a

motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

      The moving party bears the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. Id. at 321; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Guarino, 980 F.2d at 405.

      As the Supreme Court stated in Celotex, the non-moving party must "designate" specific facts showing there is a genuine issue for trial. Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-

7

moving party relies.'" Guarino, 980 F.2d at 405 (quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990)).

Summary Judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990). Furthermore, the fact that the non-moving party fails to respond does not lessen the burden on the moving party or the court to demonstrate that summary judgment is appropriate. Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991).

**III. Discussion**

Defendants first raise the argument that the state court's judgment against Curtis bars Curtis' present action as res judicata (doc. 40). The Court already devoted analysis to such argument when Defendants raised it in their Supplemental Motion to Dismiss (doc. 50). The Court finds no reason to revisit such argument or to change its holding that res judicata does not bar Curtis' action, as there was no final judgment in the civil money damages case against Curtis in the state court (Id.). Similarly, the Court already analyzed and found lacking in merit Defendants' argument that Ohio's compulsory counterclaim rule required Curtis to raise his present claims in the state court action (Id.).

Defendants next raise the argument that Plaintiffs have

produced no evidence of fraud, no evidence of a pattern of racketeering activity, nor evidence of a RICO enterprise separate from the RICO Defendants (doc. 40).  Defendants argue that Plaintiffs' fraud allegations are vague and insufficient as a matter of law (Id.).  Defendants argue that Plaintiffs must prove reasonable reliance upon Defendants' misrepresentations, under U.S. v. VanDyke, 605 F.2d 220, 225 (6th Cir. 1979)(Id.).  Defendants cite to Blount Financial Services, Inc. v. Heller and Co., 819 F.2d 151 (6th Cir. 1987) in which the Sixth Circuit found defendants' decision not reasonably calculated to deceive a business entity of ordinary prudence and comprehension, so that plaintiff's reliance and inaction were unreasonable (Id.).  Defendants apparently argue that the principles in Blount apply beyond sophisticated business entities to vulnerable homeowners in financial distress.  The Court does not find Blount applicable to the facts of this case.

Plaintiffs respond that the initial contacts by Christian were calculated to deceive them (doc. 46).  They argue that Christian pretended to be involved in an organization that helped people to save their homes (Id.).  Although Defendants argue that Plaintiffs have failed to demonstrate that Christian misrepresented who she was and what she was doing, the Court finds that Plaintiffs' affidavit testimony clearly shows that Plaintiffs understood Christian was part of an organization intended to help them rather than to profit from dealings with them.  Plaintiff Bryant states in her affidavit that she never signed the promissory note as "Paid in Full," and that her signature was forged on a land

9

contract between her and Bigelow (doc. 46). Curtis' affidavit states that Bigelow did not honor the purchase contract requirement that Bigelow repair the roof of the property, ignored Curtis' calls, and then instigated eviction proceedings against Curtis after Curtis withheld payment in protest (Id.). A reasonable jury could find that Curtis was misled into an arrangement whereby Bigelow could seize the property. The affidavits of Paige and Burbrink similarly raise questions as to what Bigelow represented his organization to be doing, in helping homeowners resolve their problems and refinance their mortgages, as opposed to what actually happened. Taken together, the affidavits proffered by Plaintiffs show more than conclusory allegations of fraud.

Defendants next raise arguments that they have committed no predicate acts of fraud under RICO (doc. 40). However, the Court already found that in this case that mail fraud can constitute a predicate offense for a RICO violation (doc. 20). The Plaintiffs have submitted affidavits that demonstrate that the U.S. mails and interstate wire were used to facilitate the Defendants' actions. As such, the Court does not find Defendants' argument on this point well-taken.[2]

---

[2] Defendants also argue in their Reply that Plaintiffs have not shown that Christian participated in the management or operation of the named businesses, and therefore cannot be held liable for RICO violations under Reves v. Ernst & Young, 507 U.S. 170 (1993). The Court finds that Plaintiffs have clearly alleged Christian's involvement with the enterprise, and that a jury can make the ultimate factual determination concerning who managed and operated the enterprise, thus attaching the proper amount of liability to Christian, if any, for RICO violations.

Defendants again raise the previously rejected argument that Plaintiffs have failed to produce evidence of a RICO enterprise separate and distinct from the RICO Defendants (doc. 20). The affidavit evidence in this case shows enterprises named Bigelow Properties, Tri-State Mortgage Services, Tri-State Mortgage Assistance, and an association-in-fact among the Defendants and John Marfisi and John Meckstroth. The Court rejects again Defendants' argument on this point.

Defendants argue that Plaintiffs' claims are barred by Ohio's Statute of Frauds (doc. 40). As for Curtis, Defendants argue that any verbal agreement that he understood to ensure the property would be transferred back to him is barred by the statute of frauds (Id.). As for Bryant, Defendants argue that the purchase contract was between her and Marfisi, so that any claim that she has against them is barred by the statute of frauds. Plaintiffs respond that Defendants take Curtis' deposition statements out of context, and that ultimately the purchase contract includes terms indicating that Curtis would have the right to reacquire the property at the end of two years for $37,000.00 (doc. 46). The Court finds Plaintiffs' position persuasive and does not find Curtis' claims barred by the statute of frauds.

Plaintiffs do not address Defendants' arguments as to Marfisi's contract with Bryant. However, the facts show that the property transfer in actuality went to Bigelow, as he signed the deed. Having signed the deed, Bigelow's part in the transaction clearly falls within the Ohio statute of frauds. Ohio Rev. Code §

1335.04.  Bigelow also signed the settlement statement, the January 6, 1999 lease, and the promissory note in favor of Bryant.  The Court finds Defendants' argument that they are protected by the statute of frauds meritless, as it is clear that they were inherently involved in the Bryant transaction from its inception.  Bryant's complaint is not merely rooted in the purchase contract with Marfisi, but rather in an allegation that an enterprise preyed on her starting with a knock on the door by Christian, continuing with a disappearing promissory note, threats, and forged signatures and documents.  Moreover, the facts as alleged by Plaintiffs show that Marfisi was merely a part of the association-in-fact that a jury could find operated in such a manner so as to take advantage of vulnerable homeowners.

   Defendants next argue that Plaintiffs' claims are barred by the parole evidence rule (doc. 40).  The parole evidence rule precludes the admission of prior or contemporaneous evidence that would serve to modify or contradict the terms of a final written agreement.  <u>Columbia Gas Transmission Corp. v. Ogle</u>, 51 F.Supp 2d 866, 871 (S.D. Ohio 1997).  Defendants argue that Christian is not a party to any contract or lease.  Defendants argue that Bryant cannot modify or contradict the terms of her signed Release, that she is bound by the terms of her purchase agreement with Marfisi, and the terms of her lease agreement with Bigelow (doc. 40).  Plaintiffs respond that Bryant was coerced into signing the Release, her own declaration indicates that it did not state "Paid in Full" when she signed it, and Plaintiffs allege that Bigelow

manufactured a land contract and forged Bryant's signature on it (doc. 46).  Plaintiffs argue that in the Sixth Circuit and under Ohio law, fraud-in-the-inducement can be an exception to the parole evidence rule, citing <u>Coal Resources, Inc. v. Gulf & W. Indus., Inc.</u>, 756 F.2d 443, 446 n.2 (6th Cir. 1985), <u>Galmish v. Cicchini</u>, 90 Ohio St.3d 22, 27, 734 N.E.2d 782, 788-89 (2000), <u>Williams v. Edwards</u>, 129 Ohio App. 3d 116, 124, 717 N.E.2d 368, 374 (1997)(permitting claims of fraud despite the parole evidence rule when the promisor had no intention of honoring his promise and thus had actual fraudulent intent)(<u>Id</u>.).[3]  The Court finds Plaintiffs' arguments persuasive on this point, and rejects Defendants' contention that the parole evidence rule bars Plaintiffs' claims.

Defendants next argue Curtis' allegations that he was led to believe there was a land contract are irrelevant because under Ohio Rev. Code § 5313.07, Curtis could have been evicted whether or not a land contract had been executed (doc. 40).  Plaintiffs respond that neither Ohio nor federal law support the notion that a fraud scheme such as was allegedly perpetrated upon the Curtis family is insulated from liability (doc. 46).  The Court finds that the pertinent issue is correctly framed by Plaintiffs.  In any

---

[3] Defendants argue in their Reply that the parole evidence rule may not be avoided by a fraudulent inducement claim which alleges that the inducement to sign the writing was a promise, the terms of which are directly contradicted by the signed writing, citing <u>Marion Prod. Credit Assn. V. Cochran</u>, 40 Ohio St. 3d 265, 533 N.E.2d 325 (1988).  However, Plaintiffs do not allege they were induced by a contradictory promise, but rather threats and lies.

event, it appears that the purchase contract essentially contained elements of a land contract, fixing a monthly payment, and setting a repurchase price at the end of two years. The Court further finds Curtis' allegation relevant in that it comports with the affidavit of Mark Burbrink, in which he stated that he was not given copies of the documents at closing, but promised them at a later date. A reasonable jury could find a dubious business practice in the failure to provide complete sets of signed contracts to all parties at a closing.

Defendants argue next that Bryant is bound by the Release executed in favor of Bigelow. Whether a release operates upon a certain liability depends entirely upon the intention of the parties, which is to be gathered from the language of the release and the state of facts then existing. <u>Whit v. Hutchinson</u>, 43 Ohio St.2d 53, 58, 330 N.E. 2d 678, 682 (1975). The intention of the parties in this case is not at all clear, as Bryant argues she was induced by a misrepresentation of facts to sign the Release, and she faced the threat of eviction if she would not sign. The Court finds well-taken Plaintiffs' position that a reasonable jury could find that Bryant was deceived and compelled to sign the release. Accordingly, the Court rejects Defendants' argument as to this point.

Defendants final argument in their motion is that Bigelow owed no fiduciary duties to the Plaintiffs (doc. 40). Although the Court would not exclude the possibility that a fiduciary relationship could arise in a situation where vulnerable homeowners

14

are approached by a sophisticated enterprise purporting to help, Plaintiffs did not contest Defendants' argument with any citation to authority or argument, and the Court finds the point conceded. Bigelow may not have owed fiduciary duties to Plaintiffs, but this fact does not permit him to orchestrate an alleged scheme to defraud them.

Defendants also raise a number of issues in their Reply that the Court finds appropriate to address. Defendants argue that Bryant's affidavit contains numerous hearsay statements as well as statements contradicted by her deposition testimony (doc. 47). The Court has reviewed the statements in question and finds that its analysis has not relied on any such statements. The Court does not find Bryant's statements concerning the "Paid in Full" notation in her affidavit and in her deposition necessarily in contradiction. Bryant's affidavit statement indicates she never signed the document under a "Paid in Full" notation, while in her deposition testimony she states she signed the document. Bryant could have signed the document prior to the "Paid in Full" notation being written on the document, so that her statements are not in contradiction.

Defendants similarly attack statements in Curtis' affidavit as contradictory (doc. 47). However, the Court does not find the distinctions raised by Defendants as critical to the underlying merits of Curtis' claims. For example, Defendants state that in Curtis' affidavit he stated that in his initial conversations with Christian she told him that she had a friend in

the business of helping people in financial distress to save their homes, while in his deposition he said she told him "she knew somebody that could probably help him out with" the foreclosure (Id.). Defendants' apparent beef with Curtis' statements are that they are not exactly the same, however, they are not contradictory. Curtis' claim is that Christian made an initial contact with him during which help was offered to him, but in reality the organization was targeting him and his house for exploitation. Curtis's deposition and affidavit statements support that theory. Defendants similarly question Curtis' valuation of the property, a question that in this case does not go to the merits of his claim. Finally, Defendants question Curtis' statements concerning Meckstroth's representation. Again, though Curtis' understanding of who was being represented might not have been clear, his underlying allegation stands, that he was intentionally misled into a losing transaction. The Court further notes that Defendants proffer no evidence to counter Curtis' allegation that he actually paid Meckstroth for representation in preparing the never-signed land contract.

Defendants use the balance of their Reply to reiterate arguments that the Court has rejected based on res judicata, the parole evidence rule, the statute of frauds, and the sufficiency of the RICO claims (doc. 47). Defendants argue that they have shown the absence of evidence to support Plaintiffs' case, so that the evidentiary burden has shifted to Plaintiffs to support their case (Id.). The Court, however, is not convinced that Defendants have

shown an absence of evidence supporting Plaintiffs' case. Plaintiffs proffer testimony from four different homeowners tending to demonstrate that they were duped out of the equity or ownership in their homes. Plaintiffs allege that the enterprise specifically targeted homeowners at risk of foreclosure, represented that the enterprise was there to help, while all along only intending to exploit the homeowners. Plaintiffs boil down the financial results to show that their outstanding mortgage or tax liens were a fraction of the value of their homes, that they were paid only a few thousand dollars for their homes, and that rather than helping them retain their homes, Bigelow sold the homes at handsome profits. Defendants are correct that the law does not necessarily protect people from bad business deals. However, these Plaintiffs allege more than just a bad deal, they allege they were misled and duped out of their homes.

**IV. CONCLUSION**

As previously held (doc. 50), the Court does not find it proper in this case to give res judicata effect to the prior state court forceable entry and detainer judgment against Curtis or to hold that Curtis was required to assert his current claims as compulsory counterclaims in the state proceeding. The Court does not find persuasive Defendants' arguments based on the Ohio Statute of Frauds, the Parole Evidence Rule, or that Bryant is bound by the Release she may have signed under duress. The Court finds no reason in Defendants' motion to change its opinion that Plaintiffs have adequately alleged and supported claims for a pattern of

racketeering activity, and evidence of a RICO enterprise separate from the RICO Defendants.  However, the Court does find that Plaintiffs have failed to defend their claims based on the theory that a fiduciary relationship arose between the parties, so that it is appropriate for the Court to decline jurisdiction over such claim.

The Court does not find well-taken Defendants' arguments that Plaintiffs have not adequately supported their claims of fraud.  The Court finds that a jury would be well-placed in this case to make credibility determinations as to what Defendants and the enterprise actually represented to the homeowners.  There are genuine issues of material fact as to what took place during the transactions, whether documents were signed or forged, whether Bigelow and Christian acted in good faith, and whether Plaintiffs' injuries were caused by Defendants.  Finally, the Court finds it appropriate for the jury to determine to what degree, if any, Christian participated in the operation or management of the enterprise.  For these reasons, the Court finds it improper to grant Defendants' Motion.

Accordingly, the Court DENIES the Consolidated Motion of Defendants Prescott Bigelow IV and Roseanne Christian for Summary

Judgment (doc. 40), while declining to exercise jurisdiction over Plaintiffs' state law claim for breach of fiduciary duties.

SO ORDERED.

Date: January 7, 2004        s/S. Arthur Spiegel
                             S. Arthur Spiegel
                             United States Senior District Judge